IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01712-MSK-MEH

PETER GEORGACARAKOS,

    Plaintiff,

v.

WILEY, *et al.*,

    Defendants.

---

**RECOMMENDATION ON MOTION FOR PRELIMINARY INJUNCTION**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Plaintiff's Motion for Preliminary Injunction [doc #16]. In accordance with the Court's Order, Defendants filed a response and Plaintiff has filed a reply. By Order of Reference to United States Magistrate Judge, the motion has been referred to this Court to conduct proceedings in this civil action pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). The Court held a hearing on the motion on March 26, 2008, and the parties have filed supplementary materials in support and defense of the motion. For reasons set forth below, this Court recommends that the District Court **deny** the Motion for Preliminary Injunction.[1]

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate

## BACKGROUND

Plaintiff Peter Georgacarakos is a prisoner currently housed in the Administrative Maximum ("ADX") facility at the United States Penitentiary in Florence, Colorado. He was committed to the custody of the Bureau of Prisons in August 1992 following a conviction for Possession with Intent to Distribute Cocaine, and was designated to the ADX in February 1998. In February 2002, Plaintiff was indicted on charges of First Degree Murder for the killing of another prisoner. Later, on or about February 4, 2004, Plaintiff was found guilty of Murder in the Second Degree. On May 14, 2004, Plaintiff received a life sentence for his conviction. Response at 3. However, on March 8, 2006, following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), Plaintiff's life sentence was amended to 360 months, and his current projected release date is August 6, 2037. *Id.*

ADX has a stratified housing system which allows inmates to progress through a "step-down" program from the most restrictive to the least restrictive housing assignment. *See Ajaj v. United States*, 2006 WL 3797871, *5 (D. Colo. Dec. 22, 2006). Ordinarily, inmates are first housed in the general population unit, then progress into the intermediate/ transitional unit, and then progress into the pre-transfer unit before they are transferred out of ADX. Several factors are considered before an inmate can "step down," or progress, to a new housing assignment, such as whether the inmate has actively participated in and completed programs recommended by his unit team; and whether the factors which led to placement in ADX have been successfully mitigated. Moreover, the program requires that an inmate receive no "incident reports" for disciplinary issues for a period of twelve months before he can step down. Typically, a unit team recommends whether

---

Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

an inmate should be stepped down. An inmate who is denied a step down is provided notice of the denial, a written statement of reasons, and an additional review in six months. The inmate may appeal a step down denial using the appropriate administrative process.

Currently, Plaintiff is housed in the single-celled general population unit at the ADX and has been in that unit since he was released from the special housing unit in or about March 2004. According to Defendants, in the "general population" at the ADX, inmates are provided not only the basic necessities of food, clothing and shelter, but also with recreation, telephone calls, showers, leisure and law library access, educational programming, religious programming, psychology programming and drug abuse treatment. Plaintiff himself has also been provided mental health treatment.

The testimony at the hearing revealed that Plaintiff's housing status has been reviewed by his unit team periodically since 2004, including in early 2006, May 2007, October 2007 and as recently as March 2008. Plaintiff, however, has not been approved to "step down" due to several disciplinary incidents for which he has been cited in the last several years. His last incident occurred on or about April 14, 2007; therefore, under BOP procedures, he was eligible for review of his housing status again on or about April 14, 2008 (the record does not indicate whether this has occurred).

Plaintiff maintains that he is, and has been since 2003, classified at a "medium" security level. Motion at 5. However, the evidence reflects that the Bureau of Prisons (BOP) has classified Plaintiff at a "high" security level in accordance with Program Statement 5100.08, <u>Security Designation and Custody Classification Manual</u>, which states that a male inmate with more than 30 years remaining to serve shall be housed in a high security level institution (unless the Public Safety Factor Sentence Length is waived). Doc. #16 at 57, 69. On June 21, 2007, the BOP informed

Plaintiff that, as of January 2008, he would have less than 30 years remaining on his sentence and would be reviewed for a change in his security classification at that time. *Id.* Plaintiff testified at the March 26, 2008 hearing that he was "recently" classified again at a "high" security level.[2]

In this lawsuit, Plaintiff alleges that the Defendants have (1) conspired to violate Plaintiff's First (free exercise of religion), Fifth (due process), and Eighth (freedom from cruel and unusual punishment) Amendment rights by falsely classifying him as a "high" security custody inmate; (2) violated his First (free exercise of religion), Fourth (unlawful search and seizure), and Fifth (equal protection) Amendment rights by keeping him in "solitary confinement" at the ADX; (3) violated his Fifth Amendment right to due process and Eighth Amendment rights by keeping him in "solitary confinement," although his unit is designated as "general population"; (4) used "excessive force and torture" against him; (5) used disciplinary segregation in violation of his Fifth Amendment due process rights and as cruel and unusual punishment prohibited by the Eighth Amendment; and (6) violated his rights based on "unconstitutional restrictions on intellectual material." *See* Amended Prisoner Complaint, doc. #100.

Through the within motion, however, Plaintiff asks the Court "only to direct the Defendants to obey their own <u>regulations</u> and <u>programs statements</u>" (emphasis included) with respect to his classification and placement in the general population unit at the ADX. Motion at 3. That is, Plaintiff seeks a Court order directing the ADX to comply with its Program Statement 5100.08 (addressing calculation of prisoners' point scores to match with commensurate security level institutions), which would then presumably result in Plaintiff's "transfer to the high security penitentiary closest to his family." *Id.* at 24. Therefore, the only claims that are pertinent to this motion are Plaintiff's constitutional challenges to his security level classification and to his

---

[2]This recent re-classification has not been made a part of the instant action.

placement in the general population unit (claims 1, 2 and 3 of the Amended Complaint).

## DISCUSSION

To be entitled to a preliminary injunction or a temporary restraining order pursuant to Fed. R. Civ. P. 65, the moving party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir. 1991).

Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal quotation marks and citations omitted). "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier,* 427 F.3d at 1259.

Here, Plaintiff seeks a mandatory injunction requiring Defendants to change his security level classification so that he might "transfer to the high security penitentiary closest to his family." Motion at 24. The relief requested would alter rather than preserve the status quo. The relief sought would also provide Plaintiff substantially all of the relief he may recover after a full trial on the

merits. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.

## A. Irreparable Harm

Plaintiff must first show that he will suffer irreparable injury if his request for preliminary injunction is denied. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier,* 427 F.3d at 1267 (citation omitted). Even "serious or substantial harm is not irreparable harm." *Id.* (internal quotation marks and citation omitted). Therefore, to satisfy this factor of the preliminary injunction test, a movant must establish both that harm will occur, and that, when it does, such harm will be irreparable. "'[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990)).

Plaintiff has shown no present threat of irreparable harm. *See Schrier,* 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance"). Plaintiff claims that he has suffered, and will continue to suffer, mental and physical harm (such as sleep disorder, visual hallucinations, aural hallucinations, and vision and hearing loss) as a result of his incarceration at the ADX since 2003. Doc. #100 at 17-19. Crucially, this assertion is uncorroborated by independent evidence; Plaintiff provides no evidence demonstrating that he has been diagnosed with these disorders, and that such disorders are caused by his incarceration. And, although corroboration is not required as a matter of law, the record is suspect with regard to establishing these medical

6

conditions. Plaintiff's medical records reflect that over the course of his incarceration, he had suffered certain of the complained-of ailments, had been treated for them, and had reported feeling "well" or "better." Doc. #75 at 3-5 and 7-8; *see also* doc. #77, Exh D. In fact, it was not until May 2007 that Plaintiff started complaining about most of the ailments for which he now seeks recovery (inability to sleep, short-term memory and nervous system problems). *Id.* at 6; *see also Harris v. Bakeman*, 2007 WL 1840905, #2 n.1 (E.D. Cal. June 27, 2007) (unpublished) ("as a lay witness, plaintiff is not qualified to offer his opinion on his mental health condition or on the necessary treatment for his mental health needs"). There is no indication that the medical personnel who have examined and/or treated Plaintiff have concluded that he is in serious psychological or physical danger which would threaten his well-being. *See e.g. Seifullah v. Toombs*, 940 F.2d 662, *2 (6th Cir. 1991) (unpublished) (where medical personnel concluded that inmate was not in serious psychological danger, inmate failed to demonstrate that an injunction was necessary to prevent "irreparable" injury).

This evidence demonstrates that Plaintiff's injuries are neither actual nor certain to occur (or worsen), as required to secure a preliminary injunction. Therefore, Plaintiff fails to demonstrate that he will suffer irreparable injury without the injunctive relief he seeks. *Moore v. Cooksey*, 242 F.3d 389 (10th Cir. Dec. 14, 2000) (unpublished) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995) for the proposition that "conditions in ADX are within the range of confinement to be normally expected for one serving a federal prison sentence"). This Court recommends denying Plaintiff's Motion for Preliminary Injunction based upon his inability to prove irreparable harm.

**B.     Substantial Likelihood of Success on the Merits of the Case**

Even if the District Court were to find Plaintiff has suffered irreparable injury in this case, Plaintiff has failed to establish that he has a substantial likelihood of success on the merits.

7

Plaintiff's first, second, and third claims appear to challenge Defendants' conduct for the time period March 2003 to present.

      1.      <u>Claims Arising Before August 14, 2005</u>

Plaintiff brings his claims against Defendants pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action is subject to the limitation period for an action under 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues. *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007)(citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994)). In Colorado, the applicable statute of limitations is found in Colo. Rev. Stat. § 13-80-102, which provides for a two-year statute of limitations in such actions. *Appleby-El v. Catron*, 84 Fed. Appx. 9, 10 (10th Cir. Dec. 10, 2003) *(*citing *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993)).

Although somewhat unclear, Plaintiff appears to challenge both his placement in the special housing unit in April 2003 and his placement in the general population unit in or about March 2004. Motion at 5-6. Construing Plaintiff's claims liberally, I find that Plaintiff also challenges his placement in general population following a change in conditions (revocation of group recreation) in early 2005. In addition, Plaintiff challenges his security level classification, which occurred in or about March 2004. Plaintiff filed this lawsuit on August 14, 2007; therefore, unless equitable tolling applies to his claims, Plaintiff's claims arising before August 14, 2005 are barred by the statute of limitations.

In this Section 1983 action, Colorado's equitable tolling rules may apply. *Hardin v. Straub,* 490 U.S. 536, 539 (1989); *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995) (applying state

tolling rules in § 1983 cases); *see also Garrett v. Fleming*, 362 F.3d 692, 694 (10th Cir. 2004) (same, in *Bivens* case). The filing of a mandatory administrative grievance may toll the statute of limitations for § 1983 and *Bivens* cases. *Roberts*, 484 F.3d at 1238. Moreover, Colorado law allows equitable tolling where a defendant "engage[d] in fraudulent concealment of facts pertinent to the existence of a claim." *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 853 n.7 (Colo. 1992). Importantly, the burden lies with the Plaintiff to prove that the statute of limitations has been equitably tolled in this case. *See Roberts*, 484 F.3d at 1241.

Plaintiff has failed to meet his burden to prove that the statute of limitations in this case is equitably tolled on his claims arising before August 14, 2005. Plaintiff asserts that he was designated to the special housing unit ("SHU") in April 2003. Doc. #16 at 5. There is no evidence in the record demonstrating that Plaintiff filed an administrative grievance or that Defendants engaged in fraudulent concealment of facts pertinent to the existence of a claim in the two years following Plaintiff's designation in April 2003 to toll the statute of limitations.

Then, following his conviction in February 2004, Plaintiff alleges he was released from the SHU in March 2004 and immediately placed in the general population unit, where he has been since housed "illegally" (based on "improper" classification and his religion). Doc. #16 at 5; *see also* doc. #75 at 4-5. There is no evidence in the record reflecting an administrative grievance filed by Plaintiff regarding this March 2004 placement or that Defendants engaged in fraudulent concealment of facts pertinent to the existence of a claim in the two years following Plaintiff's placement in general population sufficient to toll the statute of limitations.

Further, Plaintiff alleges that the general population unit was improperly characterized as "general population" following the warden's removal of group recreation from the unit some time before June 1, 2005. The evidence reflects that on June 1, 2005, Plaintiff filed a Regional

Administrative Remedy Appeal, which typically follows a Request for Administrative Remedy addressed to the warden. Doc. #16 at 60. The evidence also reflects a response to the appeal dated July 3, 2005 signed by Michael Nalley, Regional Director, explaining that group recreation was temporarily suspended to maintain the security and orderly running of the institution. *Id.* at 61. There is no evidence that Plaintiff pursued an appeal of this response, as required by the grievance process. Moreover, Plaintiff did not provide a copy or the date of his original grievance in this regard. Thus, Plaintiff has failed to demonstrate that equitable tolling applies.

Finally, following Plaintiff's conviction and sentence in 2004, the BOP classified Plaintiff at a "high" security level pursuant to Program Statement 5100.7 [*see* doc. #122 at 6], which provides "[a] male inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) shall be housed in a High security level institution unless the PSF has been waived." Doc. #122-3 at 72.. The "high" designation refers to a "public safety factor" (PSF) which is applied to an inmate who is not appropriate for placement at an institution which would permit inmate access to the community. Doc. #122-3 at 18. There is no indication that the PSF has been waived in this case. "The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current and prior behavior." *Id.* Thus, according to the Program Statement in effect at the time of Plaintiff's classification, Plaintiff's classification would not be reviewed until he had less than 30 years remaining to serve, or until January 2008. Doc. #16 at 69. There is no evidence in the record demonstrating that Plaintiff timely filed an administrative grievance regarding this March 2004 classification or that Defendants engaged in fraudulent concealment of facts pertinent to the existence of a claim in the two years following Plaintiff's "high" security level classification sufficient to toll the statute of limitations. Moreover, any claims that might arise from Plaintiff's January 2008 classification

10

review have not been made part of this action.

Accordingly, for Plaintiff's failure to demonstrate that he filed timely administrative grievances or that Defendants engaged in fraudulent concealment of facts pertinent to his claims, this Court recommends finding that Plaintiff has not demonstrated a substantial likelihood of success on any alleged claims arising before August 14, 2005.

    2.    <u>Claims Arising After August 14, 2005</u>

Plaintiff's proffered evidence reflects that in September and October 2005, he filed administrative grievances concerning his position that the "general population" unit is no different than the "control" unit, and that he had been kept in the general population based on his religion. Doc. 16 at 53-56 & 64. In addition, Plaintiff submitted copies of administrative grievances filed in 2007 challenging his security level classification[3] and his continued placement in the general population unit. *See e.g.* doc. #16 at 34-73. In his Amended Complaint, Plaintiff implicates the First, Fourth, Fifth and Eighth Amendments in challenging his classification and placement. However, as demonstrated below, the Court finds that Plaintiff has not shown a substantial likelihood of success on these claims.

    a.    Due Process and Unlawful Search and Seizure

Construing the Plaintiff's pleading liberally, I find that Plaintiff alleges he has suffered deprivations of his due process rights and has been unlawfully seized as a result of his security level classification and continued placement in the general population unit at the ADX.

However, Title 18 U.S.C. § 3621(b) grants the Bureau of Prisons the authority and discretion to determine where an inmate should be housed. 18 U.S.C. § 3621(b) (2008). It is well settled that

---

[3]The evidence reflects that Plaintiff's Custody Classification Form was updated on January 10, 2007 and that Plaintiff filed a Central Administrative Remedy Appeal regarding his classification on January 30, 2007. *See* doc. #16 at 65-66.

11

the decision where to house inmates is at the core of prison administrators' expertise. *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). It is also established that a prisoner has neither a liberty nor a property interest in his security classification or in which prison he will be housed. *Id.* at 225 ("given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the [government] may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution"); *see also Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Reno v. Koray* 515 U.S. 50, 63 (1995) (finding that, under the legal custody of the BOP, the Bureau has full discretion to control many conditions of federal prisoners' confinement); *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976) ("Congress has given federal prison officials full discretion to control conditions of confinement, such as prisoner classification and eligibility for rehabilitation programs in the federal system"); *Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1976) (holding that classification of federal prisoners lies within the sound discretion of the Attorney General and remains a necessary tool in the management and control of the penal and correctional institutions). Inmates are not entitled to any "particular degree of liberty." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

With respect to an inmate's classification and housing, only that which imposes an "atypical, significant" hardship in relation to the ordinary incidents of prison life violate the due process clause. *Sandin*, 515 U.S. at 485. The Tenth Circuit has ruled that a move from a less restrictive to a more restrictive unit within the general population at the ADX does not implicate due process concerns, as such placement is not an atypical, significant hardship in relation to the ordinary incidents of prison life as required by *Sandin. See Muhammad v. Hood*, 100 Fed. Appx. 782, 783 (10th Cir. June 7, 2004) (unpublished). Here, Plaintiff was moved from a more restrictive control unit to a less restrictive general population unit; thus, it is highly unlikely he suffered due process

deprivations necessary to allege a *Bivens* claim. Moreover, the Tenth Circuit has ruled that the BOP's program statements "do not contain the 'mandatory' language required to give [an inmate] a liberty interest in his prison classification." *Sule v. Story*, 82 F.3d 427 (table), 1996 WL 170156, at **2 (10th Cir. April 11, 1996) (unpublished).

Therefore, the Court recommends finding that Plaintiff has not demonstrated his claims for violation of due process or unreasonable seizure are substantially likely to succeed at trial.

        b.        Cruel and Unusual Punishment

Construing Plaintiff's pleading liberally, I find that Plaintiff alleges his continued placement in the general population unit at the ADX itself constitutes a violation of the Eighth Amendment. Plaintiff does not challenge his medical care at the ADX; instead, he alleges that being confined in what he terms "solitary confinement" has caused him both mental and physical deterioration.

Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety. *Barney v. Pulsipher*, 143 F.3d 1299, 1310-11 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33(1994)). In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. First, the deprivation alleged must be objectively "sufficiently serious," depriving the inmate of " 'the minimal civilized measure of life's necessities.' " *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Second, the official must have a "sufficiently culpable state of mind," which in this context means the official must exhibit "deliberate indifference" to a substantial risk of serious harm to an inmate. *Farmer,* 511 U.S. at 834; *Wilson,* 501 U.S. at 297. Thus, the deliberate indifference standard in a prison-conditions case is a "subjective" and not an "objective" requirement. That is, a prison official is liable only if

13

the "official knows of and disregards an excessive risk to inmate health and safety." *Farmer,* 511 U.S. at 837. It is not enough to establish that the official should have known of the risk of harm. *Id.*

Here, Plaintiff has failed to demonstrate a substantial likelihood of success on his Eighth Amendment claim. As mentioned above, his incarceration in the "general population" unit at the ADX is not itself an atypical, significant hardship in relation to the ordinary incidents of prison life; in his unit, Plaintiff receives the basic necessities of food, clothing and shelter, as well as recreation, telephone calls, showers, leisure and law library access, educational programming, religious programming, psychology programming and drug abuse treatment. Plaintiff himself has also been provided mental health treatment. Thus, Plaintiff has failed to show that his confinement alone is objectively sufficiently serious depriving him of the minimal civilized measure of life's necessities. Moreover, Plaintiff proffers no evidence indicating that Defendants knew of and disregarded an excessive risk to his health and safety. Plaintiff does not challenge the medical care he is receiving for his complained-of physical ailments. Therefore, the Court recommends finding that Plaintiff has failed to show he has a substantial likelihood of success on his Eighth Amendment claim.

    c.  Free Exercise of Religion and Equal Protection

Construing his pleadings liberally, I find that Plaintiff claims that he has been kept in the "general population" unit at the ADX "because of [his] religion, nothing more." *See* doc. #16 at 53. Based on this assertion, Plaintiff raises claims under the First (free exercise of religion) and Fifth (equal protection) Amendments.

The Equal Protection Clause does not require that all people be treated identically. *Hendking v. Smith*, 781 F.2d 850, 851 (11th Cir. 1986) (quoting *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981)); *see also United States v. MacCollom*, 426 U.S. 317 (1976) (neither the Equal Protection Clause of the Fourteenth Amendment, nor the counterpart equal protection requirement embodied

14

in the Fifth Amendment, guarantees "absolute equality or precisely equal advantages"). With regard to an equal protection claim, the Plaintiff must demonstrate that he was treated differently as compared to a similarly situated person. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff has failed to allege any facts, or facts from which it can be inferred, to demonstrate that he was similarly situated to others who were treated differently. Plaintiff references other Muslim individuals who, in the past, have been released into a less restrictive prison; however, not only has Plaintiff failed to allege sufficient facts demonstrating that he was similarly situated to these individuals, but also he fails to identify any similarly situated individuals who have allegedly been treated differently within the two years prior to filing his lawsuit.

Additionally, "a plaintiff in an equal protection action has the burden of demonstrating discriminatory intent. It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988) (citations omitted). Plaintiff has failed to provide any factual basis to demonstrate a discriminatory intent by Defendants. Accordingly, the Court recommends finding that Plaintiff has failed to show he is substantially likely to succeed at trial on his First and Fifth Amendment claims.

C.     **Balance of Parties' Interests and Whether Adverse to the Public Interest**

Finally, Plaintiff must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier,* 427 F.3d at 1258. Other than making conclusory statements regarding the harm he has suffered, Plaintiff has not addressed or demonstrated whether the alleged harm to him outweighs the potential damage the injunction may cause Defendants. With respect to whether an injunction would not be adverse to the public's

15

interest, Plaintiff states only that he seeks "rehabilitation," since he "is sociable and well-liked by all, enjoys all athletic activities, has assisted numerous illiterate prisoners with legal work, and has worked on a book." Doc. #16 at 20. Plaintiff asserts that "no disservice whatsoever would be thrust upon the internal security of the system" by his release into a different facility.

However, the public has an interest in seeing that federal prisons are operated safely and efficiently. Prison officials are afforded broad discretion in managing their correctional facilities, particularly concerning issues of prison security. *Turner v. Safley*, 482 U.S. 78, 90 (1987). The United States Supreme Court requires deference to the Bureau of Prisons on security matters. *Turner*, 482 U.S. at 90; *see also Hewitt v. Helms*, 459 U.S. 460, 472-74 (1983). Therefore, the Court recommends finding that the Plaintiff has failed to demonstrate any potential injury outweighs the damage an injunction would cause Defendants and that an injunction, if issued, would not be adverse to the public interest.

## **CONCLUSION**

Because Plaintiff has failed to satisfy the requirements necessary to issue a preliminary injunction in this matter, his request for a preliminary injunction and or a temporary restraining order is properly denied. Accordingly, IT IS RECOMMENDED that Plaintiff's Motion for Preliminary Injunction [filed October 26, 2007; doc. #16] be denied.

Dated at Denver, Colorado, this 1st day of May, 2008.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge