IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01712-MSK-MEH

PETER GEORGACARAKOS,

    Plaintiff,

v.

WILEY, *et al.*,

    Defendants.

---

## RECOMMENDATION ON MOTION TO INTERVENE

---

Pending before the Court is a Motion for Permissive Intervention filed by Ralph Gambina [docket #429]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motions have been referred to this Court for recommendation. The matter is briefed, and oral argument would not materially assist the Court in the adjudication of this matter. The Court recommends that, for the reasons stated herein, the motion be **denied**.[1]

## CASE BACKGROUND

Plaintiff Peter Georgacarakos initiated this action on August 14, 2007. The operative

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

pleading in this matter is the Amended Complaint filed November 28, 2007 [docket #100]. In an Opinion and Order dated September 12, 2008, Judge Krieger set forth a concise description of the allegations raised in Plaintiff's 43-page pleading, which is helpful to this Court's analysis. In Claim One, the Plaintiff alleges that the Defendants[2] conspired to deprive him of rights secured by the First, Fifth, and Eighth Amendments to the U.S. Constitution. Specifically, the Plaintiff contends that the "general population" unit at ADX is effectively indistinguishable from the control unit, and that according to Bureau of Prison ("BOP") Regulation 5100.08, he should be classified as a "Medium Custody Prisoner" eligible for transfer to a lower-security institution.

Claim Two alleges that the Defendants have engaged in religious discrimination by classifying the Plaintiff's religion – Paganism – as "white supremacy" in order to justify keeping the Plaintiff "in solitary confinement" for years although they have released similarly-situated prisoners with more extensive criminal histories who practice other religions.

In Claim Three, the Plaintiff alleges that Defendants Martinez, Javernick, Helm, Wiley, the BOP, the U.S. Department of Justice, and the United States "deprived Plaintiff of all his religious property in August 2006," without just cause or due process, and in violation of various BOP regulations. The Amended Complaint describes the property at issue as "thousands of pages of original research, art, and creative writing" that was "deemed unworthy of religious protection." This claim also alleges that, in an attempt to prevent the destruction of his property, the Plaintiff engaged in a "disruptive protest" for which he was disciplined with a year of solitary confinement.

Claim Four alleges that Defendants Wiley, Cruz, Javernick, Collins, Sudlow, Madison, Fenlow, the BOP, the Department of Justice, and the United States have "created and propagated 'control units' – i.e. solitary confinement units – but have circumvented all due process and

---

[2] In the September 12, 2008 Opinion and Order, Judge Krieger dismissed Defendants Baxter, Denny, Lappin, Nalley and Watts for lack of personal jurisdiction.

2

humanitarian protective guidelines by fraudulently asserting on paper that these units are 'general population." Plaintiff asserts that these "general population" units are "24/7 'lock-down' units" that amount to solitary confinement. The Plaintiff contends that "it is unlawful to leave prisoners suffering from clinical depression" (such as himself) in such isolation units. The Plaintiff further alleges that the Defendants have shown deliberate indifference to his medical needs in violation of the Eighth Amendment. He contends that his isolation has caused him to suffer a variety of ailments, but that the Defendants "steadfastly insisted that since his total isolation is called 'general population,' they are not responsible."

Claim Five alleges that the Plaintiff was subjected to the use of excessive force in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution based on an incident in the summer of 2006, when he protested the destruction of his property by engaging in "nonviolent civil disobedience," namely, going "into an open 'common' area during his time to shower and refus[ing] to return to his cell." He alleges that Defendants Church, Wiley, and Doe "engaged two fully-armored and armed riot control squads" and unlawfully used "nonlethal firearms and chemical agents" to return him to his cell. He contends that after being subdued, he was "subjected to two days of physical torture by being 'four-pointed' to a slab of concrete" in violation of various regulations governing the use of restraints. The same claim also appears to invoke a separate issue in which the Plaintiff was placed on "disciplinary segregation status" for a year in March 2007. He contends that the designation was without due process and exceeded the maximum 60-day period permitted for such designation. In addition, he contends that Defendants Church and Doe "used a machine to subject him to 'pepper spray'" which he claims was "outlawed in 1972 by the U.N. Biological Weapons Convention."

Claim Six asserts that Defendants Wiley and Hershberger "allowed the removal of radios

3

from cells in solitary confinement, even though they are required" under BOP regulations. He contends that "at the ADX, a cell without a radio is, by definition, 'disciplinary segregation,'" and that the imposition of such discipline must be pursuant to a determination by a disciplinary hearing officer. He also contends that "a radio and a television are specifically provided at the ADX because isolation for a prolonged period causes severe mental deterioration," but that Defendant Wiley "removed all t.v./radio sets from [the Special Housing Unit], thus subjecting Plaintiff to disciplinary segregation over and over, when his detention was only Administrative." He asserts that "the Defendants have recently invented 't.v.-radio restriction,' a nonexistent sanction that effectively enables the imposition of years of disciplinary segregation at a time for any trivial offense."

Finally, Claim Seven asserts that Defendants Wiley, BOP, the Department of Justice, and the United States "have placed arbitrary and capricious restrictions on intellectual material without any required balancing of penological needs and free expression." Plaintiff alleges both a prohibition on "paperback and even unbound material" and "a systemic obstruction of his every attempt to prepare and submit manuscripts for publication." He asserts that he has been deprived of access to a typewriter in violation of BOP regulations, that ADX staff refuse to make photocopies he proposes to pay for, and that the mailroom "reject[s] his own writings [because] they are 'publications not received by a publisher.'" He contends that this rendered him "unable to publish a book from the time it was written in 1998 until just months ago." He further alleges that a new policy was recently enacted that prohibits receipt of "every book unless purchased retail by prisoners," but that such policy lacks any meaningful security justification. He states that "research texts are the most expensive," and that "the more intelligent one's pursuits, the more stifled one's capacity."

In this action, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against all Defendants. On November 21, 2008, this Court granted Plaintiff's Motion to Supplement Claims Two and Three based upon Defendant Wiley's alleged denial of Plaintiff's attempt to enter the "step-down program" in June 2008.

On December 1, 2008, Ralph Gambina, another inmate housed at the ADX Facility in Florence, Colorado, filed the within motion requesting permission to intervene in this case.

## DISCUSSION

### I. Standard of Review

#### A. Permissive Intervention

Rule 24(b)(1)(B) provides that, upon a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. *See* Fed. R. Civ. P. 24(b) (2008). In exercising its discretion whether to allow intervention, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3) (2008); *see also Wilderness Soc'y, Ctr. For Native Ecosystems v. Wisely*, 524 F. Supp.2d 1285, 1294 (D. Colo. 2007). In addition, once the threshold requirement of a common question of law or fact is satisfied, courts may consider such factors as: (1) whether the would-be intervenor's input adds value to the existing litigation; (2) whether the petitioner's interests are adequately represented by the existing parties; and (3) the availability of an adequate remedy in another action. *See Lower Arkansas Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 690-91 (D. Colo. 2008); *see also Wildearth Guardians v. National Park Serv.*, No. 08-cv-00608-MSK-CBS, 2008 WL 2668479, *4 (D. Colo. June 30, 2008) (matters that may be considered are the sufficiency of existing representation, concerns of efficiency, and so on).

B.  *Pro Se* Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

**II.  Mr. Gambina's Motion**

On December 1, 2008, Ralph Gambina filed the within motion requesting that he be permitted to intervene in the case since (1) his civil rights have been violated due to Defendants' alleged false claim that the unit where he is housed is a "general population" unit, in that the Defendants are allegedly running solitary confinement units without due process and in violation of the Eighth Amendment; (2) Defendants have allegedly used excessive force in the use of gas and guns on inmates who are not armed and posing no immediate threat; (3) Defendants are allegedly wrongfully placing him in disciplinary segregation by removing his television and radio; and (4) Defendants violated his due process rights when they eliminated group recreation, thus transforming his unit into a "control" unit. Docket #429 at 2-3. Mr. Gambina believes that his claims demonstrate common questions of law and fact between him and the Plaintiff, and that he is entitled to the same relief from the same Defendants.[3] *Id.*

Defendants counter arguing that Mr. Gambina's intervention would unduly delay the progress of this litigation. Docket #498 at 3. Defendants assert that this litigation was initiated in

---

[3]Mr. Gambina's claim (1) appears to be similar to Plaintiff's Claim One, Mr. Gambina's claim (3) appears similar to Plaintiff's Claim Six, and Mr. Gambina's claim (4) appears similar to Plaintiff's Claim Four. In his claim (2), Mr. Gambina asserts no injury to himself; therefore, it appears he has no standing to bring the claim.

6

August 2007, discovery has been extended once at the Plaintiff's request to March 2, 2009, and has now been completed, and the parties are preparing dispositive motions, which are due to be filed April 2, 2009. *Id.* Defendants also contend that Mr. Gambina has not exhausted his claims, and therefore, should not be allowed to intervene. *Id.* at 4. Finally, Defendants argue that Mr. Gambina's interest will not be impaired if he is not permitted to intervene, since he has not exhausted and may file his own lawsuit if and when he does. *Id.* at 5.

Mr. Gambina replies, in conclusory fashion, that his intervention would not cause unnecessary delay or prejudice to Defendants, would be in the Government's best interest, and would aid in the existing litigation. Docket #555 at 1-2. Furthermore, Mr. Gambina contends that he has, in fact, exhausted his claims, and has attached documents supporting his contention. *Id.* at 2. The supporting documents reflect a grievance initiated on November 3, 2002 and completed through the grievance process on March 13, 2003. *Id.* at 5-11. Mr. Gambina complained that, rather than transferred to a different facility, he had been assigned to the General Population and step-down program at the ADX after having spent nearly 11 years in the Control Unit. *Id.* The BOP denied Mr. Gambina's grievance appeal finding his assignment appropriate in light of his history of planned and attempted escapes. *Id.*

First, the Court agrees with Defendants that Mr. Gambina's intervention would cause undue delay and prejudice. The case was initiated in August 2007 and has seen more than 500 docket entries, most of which are pleadings and motions filed by the Plaintiff. Discovery has nearly concluded and a Final Pretrial Conference is scheduled to be heard by Judge Krieger in June 2009, almost two years after the litigation commenced. Defendants would suffer prejudice in likely facing a motion to reopen discovery to allow Mr. Gambina to participate. Moreover, Mr. Gambina's motion was filed in December 2008, nearly 16 months after the litigation commenced, although his

7

claims had arisen well before 2007. Mr. Gambina articulates no reason for his delay.

Furthermore, the Court disagrees with Mr. Gambina that he has successfully exhausted his claims in this matter. First, the grievances he filed in 2002 and 2003 assert that he should have been transferred to another facility following his time in the Control Unit, but rather, was placed in General Population at the ADX. This complaint does not implicate the claims he raises now regarding whether General Population is actually solitary confinement, whether Defendants have allegedly used excessive force in the use of gas and guns on inmates, whether Defendants are allegedly wrongfully placing him in disciplinary segregation by removing his television and radio, or whether Defendants violated his due process rights when they eliminated group recreation.

Even if it did, however, Mr. Gambina has failed to raise his claims in a timely manner. Mr. Gambina's grievance was completed through the appeal process in March 2003. Any constitutional claims raised pursuant to 42 U.S.C. § 1983 are subject to a two-year statute of limitations. *See Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994). Therefore, Mr. Gambina must have raised any claims related to his grievance in or before March 2005.[4]

Consequently, the Court respectfully recommends that Mr. Gambina's motion to intervene be denied.

## **CONCLUSION**

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Motion for Permissive Intervention filed by Ralph Gambina [filed December 1, 2008; docket #429] be **denied**.

---

[4]Mr. Gambina makes conclusory statements that he has been refused additional grievance forms in light of the grievance made in 2002-2003. However, this does not explain Mr. Gambina's failure to move to intervene in the litigation sooner than 16 months after it commenced.

Dated at Denver, Colorado, this 17th day of March, 2009.

                        BY THE COURT:

                        s/ Michael E. Hegarty
                        Michael E. Hegarty
                        United States Magistrate Judge