IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01712-MSK-MEH

PETER GEORGACARAKOS,

  Plaintiff,

v.

WILEY, *et al.*,

  Defendants.

## RECOMMENDATION ON MOTION TO INTERVENE

Pending before the Court is a Motion to Intervene as a Plaintiff under Rule 24(b) filed by Shane McMillan [docket #540]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation. The matter is briefed, and oral argument would not materially assist the Court in the adjudication of this matter. The Court recommends that, for the reasons stated herein, the motion be **denied**.[1]

## CASE BACKGROUND

Plaintiff Peter Georgacarakos initiated this action on August 14, 2007. The operative

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

pleading in this matter is the Amended Complaint filed November 28, 2007 [docket #100]. In an Opinion and Order dated September 12, 2008, Judge Krieger set forth a concise description of the allegations raised in Plaintiff's 43-page pleading, which is helpful to this Court's analysis. In Claim One, the Plaintiff alleges that the Defendants[2] conspired to deprive him of rights secured by the First, Fifth, and Eighth Amendments to the U.S. Constitution. Specifically, the Plaintiff contends that the "general population" unit at ADX is effectively indistinguishable from the control unit, and that according to Bureau of Prison ("BOP") Regulation 5100.08, he should be classified as a "Medium Custody Prisoner" eligible for transfer to a lower-security institution.

Claim Two alleges that the Defendants have engaged in religious discrimination by classifying the Plaintiff's religion – Paganism – as "white supremacy" in order to justify keeping the Plaintiff "in solitary confinement" for years, although they have released similarly-situated prisoners with more extensive criminal histories who practice other religions.

In Claim Three, the Plaintiff alleges that Defendants Martinez, Javernick, Helm, Wiley, the BOP, the U.S. Department of Justice, and the United States "deprived Plaintiff of all his religious property in August 2006," without just cause or due process, and in violation of various BOP regulations. The Amended Complaint describes the property at issue as "thousands of pages of original research, art, and creative writing" that was "deemed unworthy of religious protection." This claim also alleges that, in an attempt to prevent the destruction of his property, the Plaintiff engaged in a "disruptive protest" for which he was disciplined with a year of solitary confinement.

Claim Four alleges that Defendants Wiley, Cruz, Javernick, Collins, Sudlow, Madison, Fenlow, the BOP, the Department of Justice, and the United States have "created and propagated 'control units' – i.e. solitary confinement units – but have circumvented all due process and

---

[2]In the September 12, 2008 Opinion and Order, Judge Krieger dismissed Defendants Baxter, Denny, Lappin, Nalley and Watts for lack of personal jurisdiction.

humanitarian protective guidelines by fraudulently asserting on paper that these units are 'general population." Plaintiff asserts that these "general population" units are "24/7 'lock-down' units" that amount to solitary confinement. The Plaintiff contends that "it is unlawful to leave prisoners suffering from clinical depression" (such as himself) in such isolation units. The Plaintiff further alleges that the Defendants have shown deliberate indifference to his medical needs in violation of the Eighth Amendment. He contends that his isolation has caused him to suffer a variety of ailments, but that the Defendants "steadfastly insisted that since his total isolation is called 'general population,' they are not responsible."

Claim Five alleges that the Plaintiff was subjected to the use of excessive force in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution based on an incident in the summer of 2006, when he protested the destruction of his property by engaging in "nonviolent civil disobedience," namely, going "into an open 'common' area during his time to shower and refus[ing] to return to his cell." He alleges that Defendants Church, Wiley, and Doe "engaged two fully-armored and armed riot control squads" and unlawfully used "nonlethal firearms and chemical agents" to return him to his cell. He contends that after being subdued, he was "subjected to two days of physical torture by being 'four-pointed' to a slab of concrete" in violation of various regulations governing the use of restraints. The same claim also appears to invoke a separate issue in which the Plaintiff was placed on "disciplinary segregation status" for a year in March 2007. He contends that the designation was without due process and exceeded the maximum 60-day period permitted for such designation. In addition, he contends that Defendants Church and Doe "used a machine to subject him to 'pepper spray'" which he claims was "outlawed in 1972 by the U.N. Biological Weapons Convention."

Claim Six asserts that Defendants Wiley and Hershberger "allowed the removal of radios

3

from cells in solitary confinement, even though they are required" under BOP regulations. He contends that "at the ADX, a cell without a radio is, by definition, 'disciplinary segregation,'" and that the imposition of such discipline must be pursuant to a determination by a disciplinary hearing officer. He also contends that "a radio and a television are specifically provided at the ADX because isolation for a prolonged period causes severe mental deterioration," but that Defendant Wiley "removed all t.v./radio sets from [the Special Housing Unit], thus subjecting Plaintiff to disciplinary segregation over and over, when his detention was only Administrative." He asserts that "the Defendants have recently invented 't.v.-radio restriction,' a nonexistent sanction that effectively enables the imposition of years of disciplinary segregation at a time for any trivial offense."

Finally, Claim Seven asserts that Defendants Wiley, BOP, the Department of Justice, and the United States "have placed arbitrary and capricious restrictions on intellectual material without any required balancing of penological needs and free expression." Plaintiff alleges both a prohibition on "paperback and even unbound material" and "a systemic obstruction of his every attempt to prepare and submit manuscripts for publication." He asserts that he has been deprived of access to a typewriter in violation of BOP regulations, that ADX staff refuse to make photocopies he proposes to pay for, and that the mailroom "reject[s] his own writings [because] they are 'publications not received by a publisher.'" He contends that this rendered him "unable to publish a book from the time it was written in 1998 until just months ago." He further alleges that a new policy was recently enacted that prohibits receipt of "every book unless purchased retail by prisoners," but that such policy lacks any meaningful security justification. He states that "research texts are the most expensive," and that "the more intelligent one's pursuits, the more stifled one's capacity."

4

In this action, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against all Defendants. On November 21, 2008, this Court granted Plaintiff's Motion to Supplement Claims Two and Three based upon Defendant Wiley's alleged denial of Plaintiff's attempt to enter the "step-down program" in June 2008.

On March 3, 2009, Shane McMillan, another inmate housed at the ADX Facility in Florence, Colorado, filed the within motion requesting permission to intervene in this case.

## **DISCUSSION**

**I.      Standard of Review**

   A.      Permissive Intervention

Rule 24(b)(1)(B) provides that, upon a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. *See* Fed. R. Civ. P. 24(b) (2008). In exercising its discretion whether to allow intervention, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3) (2008); *see also Wilderness Soc'y, Ctr. For Native Ecosystems v. Wisely*, 524 F. Supp.2d 1285, 1294 (D. Colo. 2007). In addition, once the threshold requirement of a common question of law or fact is satisfied, courts may consider such factors as: (1) whether the would-be intervenor's input adds value to the existing litigation; (2) whether the petitioner's interests are adequately represented by the existing parties; and (3) the availability of an adequate remedy in another action. *See Lower Arkansas Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 690-91 (D. Colo. 2008); *see also Wildearth Guardians v. National Park Serv.*, No. 08-cv-00608-MSK-CBS, 2008 WL 2668479, *4 (D. Colo. June 30, 2008) (matters that may be considered are the sufficiency of existing representation, concerns of efficiency, and so on).

B. *Pro Se* Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II. Mr. McMillan's Motion

On March 3, 2009, Shane McMillan filed the within motion requesting that he be permitted to intervene in the case since (1) Defendants Wiley, Collins, Madison, Fenlon and the BOP have conspired to violate Mr. McMillan's Fifth, Eighth and Fourteenth Amendment rights as set forth in "claim 3"; (2) Defendants Wiley, Collins, Madison, Fenlon and the BOP have "fraudulently" characterized certain units in the facility as "General Population," although they are allegedly operated as "solitary confinement"; and (3) Defendants Wiley, Collins, Madison, Fenlon and the BOP have denied him the psychiatric care typically mandated for long-term solitary confinement. Docket #540-2 at 2-3. Mr. McMillan believes that his claims demonstrate common questions of law and fact between him and the Plaintiff, and that he is entitled to the same relief from the same Defendants.[3] *Id.*

Defendants counter that Mr. McMillan's intervention would unduly delay the progress of this litigation. Docket #580 at 3. Defendants assert that this litigation was initiated in August 2007, discovery has been extended once at the Plaintiff's request to March 2, 2009 and has now been completed, and dispositive motions are due to be filed April 2, 2009. *Id.* Defendants also contend

---

[3]Mr. McMillan's Claim (1) appears to be similar to Plaintiff's Claim One, and his Claims (2) and (3) appear similar to Plaintiff's Claim Four.

that Mr. McMillan's intervention will not add value to the case. *Id.* at 4. Finally, Defendants argue that Mr. McMillan's interest will not be impaired if he is not permitted to intervene, since the resolution of this case will not be *res judicata* for the movant. *Id.* at 5.

Mr. McMillan replies that Defendants will suffer no undue delay or prejudice since he will waive his right to file motions or conduct discovery. Docket #610 at 2. Moreover, Mr. McMillan states that his request to intervene is not untimely since he waited until the resolution of the pending motion to dismiss and has had difficulty communicating with the Plaintiff regarding the case. *Id.* at 1. He contends that his interest will be impaired without intervention, since he will be required to start all over with the same claims and motions filed by the Plaintiff in this case. *Id.* at 3.

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) (quoting *Sanguine Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)).

Here, the Court recommends finding that Mr. McMillan's motion is untimely in this action. He argues that, because he originally filed a motion to intervene in October 2008, his request is timely. While Mr. McMillan did, in fact, file a motion to intervene on October 17, 2008, this Court denied it without prejudice for failure to comply with Fed. R. Civ. P. 24(c) requiring both notice and a pleading. Docket #344. Mr. McMillan re-filed his motion on November 6, 2008, but again failed to provide a proposed pleading with his motion. This Court denied Mr. McMillan's second motion without prejudice the following day explaining that his motion needed to be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Docket #384. It was not until March 3, 2009 that Mr. McMillan filed the within motion to which he attached a proposed

pleading. Mr. McMillan articulates no reason for the nearly four-month delay in filing his latest motion.

Instead, Mr. McMillan argues that he waited until October 17, 2008 to file his original motion, which was filed after Judge Krieger's September 12, 2008 Order on the Motion to Dismiss, "to be sure there would ultimately be a case to intervene in." Mr. McMillan asserts that the Tenth Circuit condones such wait, citing *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001). In *Utah Ass'n*, the Tenth Circuit noted that it was proper for the proposed intervenors in that case to wait until the resolution of the Government's dispositive motion to move for intervention. *Id.* at 1251 n.2. At the same time, the court found intervention timely because the case was still in its early stages, in that no scheduling order had been issued, no trial date set and no deadlines for motions set. *Id.* at 1251.

In this case, to the contrary, discovery ended on March 2, 2009 (the day before the within motion was filed) and the dispositive motions deadline has just been extended eighteen days to April 20, 2009. Moreover, a Final Pretrial Conference is scheduled to take place on June 4, 2009 before Judge Krieger, nearly two years after the litigation commenced. Although Mr. McMillan attests that he waives any right to file motions or conduct discovery in this case, Defendants may desire to re-open discovery to seek information from him, which could further unduly delay this case.

Finally, the Court perceives no prejudice to Mr. McMillan if intervention is denied here. Mr. McMillan is certainly free to bring his claims in a separate lawsuit pursuant to 42 U.S.C. § 1983, to which the requirements of the Prison Litigation Reform Act will apply. Further, Mr. McMillan fails to demonstrate how his intervention would add value to this case. Consequently, the Court respectfully recommends that Mr. McMillan's motion to intervene be denied.

## **CONCLUSION**

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Motion to Intervene as a Plaintiff under Rule 24(b) filed by Shane McMillan [filed March 3, 2009; docket #540] be **denied**.

Dated at Denver, Colorado, this 6th day of April, 2009.

                        BY THE COURT:

                        s/ Michael E. Hegarty
                        Michael E. Hegarty
                        United States Magistrate Judge