IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01712-MSK-MEH

PETER GEORGACARAKOS,

    Plaintiff,

v.

WILEY, *et al.*,

    Defendants.

_____

**ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY, MOTION FOR HEARING AND MOTION FOR SANCTIONS**
_____

Pending before the Court is Plaintiff's Motion to Compel Discovery [filed March 23, 2009; docket #583] and Motion for Discovery Sanctions [filed April 23, 2009; docket #650]. The matters are briefed and have been referred to this Court. Oral argument would not materially assist the Court in adjudicating the motions; therefore, Plaintiff's Motion for Hearing on Motion to Compel [filed April 23, 2009; docket #649] is **denied**. For the reasons stated below, the Court **grants in part** and **denies in part** the Motion to Compel and **denies** the Motion for Discovery Sanctions.

**I.     Background**

Plaintiff Peter Georgacarakos initiated this action on August 14, 2007. The operative pleading in this matter is the Amended Complaint filed November 28, 2007 [docket #100]. In an Opinion and Order dated September 12, 2008, Judge Krieger set forth a concise description of the allegations raised in Plaintiff's 43-page pleading, which is helpful to this Court's analysis for

purposes of the within discovery motion. In Claim One, the Plaintiff alleges that the Defendants[1] conspired to deprive him of rights secured by the First, Fifth, and Eighth Amendments to the U.S. Constitution. Specifically, the Plaintiff contends that the "general population" unit at ADX is effectively indistinguishable from the control unit, and that according to Bureau of Prison ("BOP") Regulation 5100.08, he should be classified as a "Medium Custody Prisoner" eligible for transfer to a lower-security institution.

Claim Two alleges that the Defendants have engaged in religious discrimination by classifying the Plaintiff's religion – Paganism – as "white supremacy" in order to justify keeping the Plaintiff "in solitary confinement" for years, although they have released similarly-situated prisoners with more extensive criminal histories who practice other religions.

In Claim Three, the Plaintiff alleges that Defendants Martinez, Javernick, Helm, Wiley, the BOP, the U.S. Department of Justice, and the United States "deprived Plaintiff of all his religious property in August 2006," without just cause or due process, and in violation of various BOP regulations. The Amended Complaint describes the property at issue as "thousands of pages of original research, art, and creative writing" that was "deemed unworthy of religious protection." This claim also alleges that, in an attempt to prevent the destruction of his property, the Plaintiff engaged in a "disruptive protest" for which he was disciplined with a year of solitary confinement.

Claim Four alleges that Defendants Wiley, Cruz, Javernick, Collins, Sudlow, Madison, Fenlow, the BOP, the Department of Justice, and the United States have "created and propagated 'control units' – i.e. solitary confinement units – but have circumvented all due process and

---

[1] In the September 12, 2008 Opinion and Order, Judge Krieger dismissed Defendants Baxter, Denny, Lappin, Nalley and Watts for lack of personal jurisdiction.

2

humanitarian protective guidelines by fraudulently asserting on paper that these units are 'general population.'" Plaintiff asserts that these "general population" units are "24/7 'lock-down' units" that amount to solitary confinement. The Plaintiff contends that "it is unlawful to leave prisoners suffering from clinical depression" (such as himself) in such isolation units. The Plaintiff further alleges that the Defendants have shown deliberate indifference to his medical needs in violation of the Eighth Amendment. He contends that his isolation has caused him to suffer a variety of ailments, but that the Defendants "steadfastly insisted that since his total isolation is called 'general population,' they are not responsible."

Claim Five alleges that the Plaintiff was subjected to the use of excessive force in violation of the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution based on an incident in the summer of 2006, when he protested the destruction of his property by engaging in "nonviolent civil disobedience," namely, going "into an open 'common' area during his time to shower and refus[ing] to return to his cell." He alleges that Defendants Church, Wiley, and Doe "engaged two fully-armored and armed riot control squads" and unlawfully used "nonlethal firearms and chemical agents" to return him to his cell. He contends that after being subdued, he was "subjected to two days of physical torture by being 'four-pointed' to a slab of concrete" in violation of various regulations governing the use of restraints. The same claim also appears to invoke a separate issue in which the Plaintiff was placed on "disciplinary segregation status" for a year in March 2007. He contends that the designation was without due process and exceeded the maximum 60-day period permitted for such designation. In addition, he contends that Defendants Church and Doe "used a machine to subject him to 'pepper spray'" which he claims was "outlawed in 1972 by the U.N. Biological Weapons Convention."

3

Claim Six asserts that Defendants Wiley and Hershberger "allowed the removal of radios from cells in solitary confinement, even though they are required" under BOP regulations. He contends that "at the ADX, a cell without a radio is, by definition, 'disciplinary segregation,'" and that the imposition of such discipline must be pursuant to a determination by a disciplinary hearing officer. He also contends that "a radio and a television are specifically provided at the ADX because isolation for a prolonged period causes severe mental deterioration," but that Defendant Wiley "removed all t.v./radio sets from [the Special Housing Unit], thus subjecting Plaintiff to disciplinary segregation over and over, when his detention was only Administrative." He asserts that "the Defendants have recently invented 't.v.-radio restriction,' a nonexistent sanction that effectively enables the imposition of years of disciplinary segregation at a time for any trivial offense."

Finally, Claim Seven asserts that Defendants Wiley, BOP, the Department of Justice, and the United States "have placed arbitrary and capricious restrictions on intellectual material without any required balancing of penological needs and free expression." Plaintiff alleges both a prohibition on "paperback and even unbound material" and "a systemic obstruction of his every attempt to prepare and submit manuscripts for publication." He asserts that he has been deprived of access to a typewriter in violation of BOP regulations, that ADX staff refuse to make photocopies he proposes to pay for, and that the mailroom "reject[s] his own writings [because] they are 'publications not received by a publisher.'" He contends that this rendered him "unable to publish a book from the time it was written in 1998 until just months ago." He further alleges that a new policy was recently enacted that prohibits receipt of "every book unless purchased retail by prisoners," but that such policy lacks any meaningful security justification. He states that "research texts are the most expensive," and that "the more intelligent one's pursuits, the more stifled one's

capacity."

In this action, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against all Defendants. On November 21, 2008, this Court granted Plaintiff's Motion to Supplement Claims Two and Three based upon Defendant Wiley's alleged denial of Plaintiff's attempt to enter the "step-down program" in June 2008.

## II.     Procedural History

On September 18, 2008, this Court held a Scheduling Conference at which Plaintiff was instructed regarding discovery limits and deadlines. Docket #287. The Court informed Plaintiff that he would be granted 25 interrogatories, 25 requests for production of documents and 25 requests for admission, and the Plaintiff indicated his understanding and agreement. Docket #359 at 5. However, on November 3, 2008, Plaintiff filed a "Motion to Compell [sic] Compliance with Discovery," alleging that he was never instructed that his requests for admissions and requests for production of documents were limited to 25 each. Docket #360. The Court denied without prejudice Plaintiff's motion for failure to comply with D.C. Colo. LCivR 7.1A and 37.1. Docket #372. On November 6, 2008, Plaintiff filed another "Motion to Allow Plaintiff Full Discovery and to Compell [sic]," which the Court denied without prejudice for Plaintiff's failure to show good cause for demanding 75 requests for admission and 40 requests for production of documents. Dockets #379 and #401.

On November 25, 2008, Plaintiff filed a Motion Concerning Discovery, alleging that this Court's orders regarding discovery had been clearly erroneous, and on November 28, 2008, he filed a Motion for Discovery Sanctions, alleging that Defendants "pretended" to believe that requests for admissions were limited to 25. Dockets #414 & #421. The Court held a hearing on these motions

on December 10, 2008, and granted Plaintiff's request for 25 additional requests for production of documents, and for 254 total requests for admissions from various Defendants. Docket #445. The Court denied Plaintiff's motion for sanctions. *Id.* There was no discussion regarding the number or limit on interrogatories. *Id.*

On January 29, 2009, Plaintiff filed another "Motion to Compell [sic] Defendants' Compliance with Discovery Rules," alleging that certain Defendants who are former employees of the Bureau of Prisons (BOP) should have access to records in Colorado and be able to respond to his requests for admissions. Docket #490. The Court denied the motion without prejudice for Plaintiff's failure to comply with D.C. Colo. LCivR 37.1. Docket #495. Plaintiff then filed a Supplemental Motion to Compel Discovery on February 9, 2009, providing additional information in support of his original motion; after briefing on the motion, the Court denied it finding that the responses propounded by Defendants complied with Fed. R. Civ. P. 36. Dockets #502 & #565. There was no briefing on the number or limit on interrogatories.

Meanwhile, on February 18, 2009, Defendants filed a Motion for Protective Order requesting protection from responding to 337 interrogatories propounded by Plaintiff in addition to the 25 interrogatories he was granted at the September 18, 2008 scheduling conference. Docket #510. Plaintiff responded on March 12, 2009 claiming that this Court clarified during the December 10, 2008 hearing that Plaintiff could propound 25 interrogatories on each Defendant. Docket #554. The Court granted Defendants' motion on March 17, 2009 finding that Plaintiff had stipulated to 25 interrogatories during the scheduling conference, then made no mention of expanding the number during the December 10, 2008 hearing or any time since then. Docket #567. Plaintiff also filed a Motion for Discovery Sanctions, dated March 18, 2009, making the same arguments [docket #582];

however, the motion apparently crossed in the mail with the March 17, 2009 order, and the Court denied it instructing the Plaintiff that, if he wished to amend the Scheduling Order to request additional discovery, he may do so in an appropriate motion. Docket #588.

In the meantime, Plaintiff filed the instant motion on March 23, 2009 alleging that Defendants failed to respond to his requested interrogatories beyond the 25 number limit; that certain responses to interrogatories propounded to Defendant Fenlon are incomplete; that objections to certain requests for production of documents to the BOP are improper; and that certain responses to requests for admissions from Defendants Church and Wiley are incomplete. Docket #583. On April 14, 2009, Defendants responded to the motion by amending certain responses based upon the representations made by the Plaintiff in the motion, and arguing that certain objections to requests are legitimate. Docket #638. Plaintiff replied on April 23, 2009. Docket #646.

**III.    Legal Standard**

In his motion, Plaintiff challenges certain objections made by Defendants to Plaintiff's discovery requests, including claims of attorney-client privilege, work-product doctrine, potential violations of the Privacy Act for non-parties, responding would be unduly burdensome and the requests are irrelevant.

> The scope of evidence that is subject to discovery under the federal rules is broad:
>
> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1). The party objecting to discovery must establish that the requested discovery

does not fall under the scope of relevance as defined in Fed. R. Civ. P 26(b)(1). *Simpson v. University of Colo.*, 220 F.R.D. 354, 359 (D. Colo 2004).

The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable. *See In re Grand Jury Proceedings (Dorokee Co.)*, 697 F.2d 277, 279 (10th Cir. 1983) (burden on party asserting a privilege); *United States v. Bump,* 605 F.2d 548, 551 (10th Cir. 1979) (burden is on party asserting that communication is protected by attorney-client privilege). Rule 26(b)(3) of the Federal Rules of Civil Procedure provides, in pertinent part, that absent the requisite showing, a party may not obtain discovery of documents or other tangible things otherwise discoverable that were "prepared in anticipation of litigation or for trial"by that party or its representatives.

Case law broadly defines the parameters of the "anticipation of litigation" element. Application of the work product doctrine does not turn on whether litigation actually ensued. *Kent Corp. v. NLRB,* 530 F.2d 612, 623 (5th Cir. 1976), *cert. denied,* 462 U.S. 19 (1983). "Documents should be deemed prepared for litigation and within the scope of [Rule 26(b)(3) ] if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *State of Maine v. United States Dep't of Interior,* 298 F.3d 60, 68 (1st Cir. 2002). *Cf. National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992) (a document is "prepared in the anticipation of litigation if 'the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation'"); *Nesse v. Pittman,* 202 F.R.D. 344, 349 (D.D.C. 2001) (holding that the requirements of Rule 26(b)(3) are met whenever materials are prepared in light of a lawyer's subjective and objectively reasonable belief that

8

litigation is a "real possibility").

The Privacy Act provides a private right of action against a government agency when records pertaining to an individual have been improperly disclosed by that agency. 5 U.S.C. § 552a; *Lee v. Dep't of Justice*, 413 F.3d 53, 55 (D.C. Cir. 2005). Specifically, the Privacy Act prohibits agencies of the executive branch from disclosing "any record which is contained in a system of records" to an unauthorized party. 5 U.S.C. § 552a(b). "When a court finds that an agency made such a disclosure 'in a manner which was intentional or willful,' the United States is liable for damages plus attorney's fees and costs." *Lee,* 413 F.3d at 55 (citing 5 U.S.C. § 552a(g)(4)).

With these legal precepts in mind, the Court will address each discovery request in turn.

**IV.    Motion to Compel**

   A.    <u>Fenlon Interrogatories</u>

In Defendants' response to the motion, they provided amended responses to the interrogatories addressed to Defendant Fenlon in light of certain objections made by Plaintiff in his motion. In his Reply, however, Plaintiff argues that Fenlon failed to respond properly to Interrogatories 20 and 22.

Interrogatory No. 20 asks: "What is the difference between Georgacarakos' 'white supremist [sic] activities' and his religion, in regard to your job as Case Manager?" Docket #638-2 at 5-6. Fenlon responded: "Objection, vague. Without waiving that objection, Defendant responds as follows: an inmate's religion does not have any bearing on the Defendant's duties as Case Manager." *Id.* Plaintiff contends that the response is insufficient in that Fenlon "must explain what - other than religion - is the basis of this 'activity' claim." The Court agrees with Fenlon that the interrogatory is vague and does not articulate Plaintiff's intended question regarding the basis for

Fenlon's alleged "white supremacist activity" characterization. Therefore, Fenlon's response is appropriate and the Court denies Plaintiff's motion to compel regarding Interrogatory #20.

Interrogatory #22 asks: "Other than CIM Coordinator Javernick, who in the BOP is officially involved in these CIM rulings?" Docket #638-2 at 6. Fenlon responded: "The answer to Plaintiff's request can be ascertained by perusal of the releasable [sic] portion of Program Statement 5180.05, attached hereto." *Id.* Plaintiff objects asserting that "Fenlon must list the names of those he has worked with in designating Plaintiff a 'white supremacist.'" However, the Court finds the term "these CIM rulings" vague and does not discern from the interrogatory propounded that Plaintiff is requesting the names of persons who allegedly designated the Plaintiff a "white supremacist"; therefore, the Court denies Plaintiff motion to compel regarding Interrogatory #22.

B.     BOP Production of Documents

With respect to Plaintiff's requests for production of documents numbers 4-8, 13, 15, 20, 24 and 25, Defendants provided the Declaration of Deborah Locke, a Senior Attorney Advisor at the Bureau of Prisons (BOP) to inform the Court that Ms. Locke had instructed Plaintiff to contact her for the review of documents responsive to his discovery requests. *See* docket #638-3. Ms. Locke declares that she provided Plaintiff "with approximately 1200 pages of responsive documents on bright yellow pages for his review." *Id.* at 3. She states that "Plaintiff has yet to make copies of those documents or return them to me or my office." *Id.* In reply, Plaintiff states that "neither Garcia nor Locke has ever contacted Plaintiff about discovery in any way," and that he sent three letters to Ms. Locke in the past three months, but received no answer. Docket #646 at 1-2.

Therefore, because it appears that Plaintiff has not received the documents to which Ms. Locke refers, the Court grants Plaintiff's motion to compel as to the production of the documents

identified by Defendants that are responsive to the above-listed request numbers. Defendants shall ensure that Plaintiff is provided the documents, which have been identified as copied onto "bright yellow pages," **on or before May 7, 2009**.

With respect to the additional requests for production, it is important to note that any information requested by Plaintiff regarding other inmates must relate to his religious discrimination claim; no other claims made by Plaintiff relate to, or are made on behalf of, other inmates at the ADX.

With this in mind, the Court finds that Plaintiff's Request No. 1 requesting the names and numbers of every inmate discharged from the ADX control unit since 1996 [*see* docket #583 at 17] is overly broad and not calculated to lead to the discovery of admissible evidence pertaining to his discrimination claim. Moreover, the privacy interests of non-parties in the information requested outweighs its value in this litigation. *See Gottlieb v. Wiles*, 143 F.R.D. 235, 239-40 (D. Colo. 1992) (where non-parties received no notice that documents in which they may have a privacy interest were sought by plaintiffs, the Court was "loathe to order production of such materials without affording persons who might be adversely affected notice and an opportunity to be heard"). Therefore, the Court denies Plaintiff's motion to compel regarding Request No. 1.

For the same reasons, the Court denies Plaintiff's motion to compel regarding Requests No. 2 and No. 3 requesting medical information of other inmates, and regarding Requests No. 10, No. 14 and No. 20 requesting information for other inmates receiving discipline and participating in the stepdown program. *See* docket #583 at 18, 20, 22.

Regarding Request No. 9, Plaintiff seeks documents concerning an investigation into a tort claim. Defendants assert that such is information is protected under the attorney work-product

11

doctrine as the claim was reviewed in anticipation of litigation. Despite Plaintiff's conclusory assertion that the privilege does not apply, the Court finds that the internal work product of the Legal Services Department investigating a tort claim would be protected from disclosure under the work-product doctrine. Thus, the Court denies Plaintiff's motion to compel regarding Request No. 9.

In addition, the Court denies Plaintiff's motion to compel regarding Request No. 16 requesting names and numbers of inmates kept at the ADX "solely for Administrative purposes." Docket #583 at 22. According to Defendants, no documents exist that respond to his question. Notably, the Court also finds that Plaintiff's request is not reasonably calculated to lead to the discovery of admissible evidence.

With respect to Requests No. 17 and No. 23 requesting documents in the possession of other Defendants, the BOP states that it does not have the documents. *See* docket #583 at 22, 24. As previously explained to Plaintiff by this Court, he may only request documents in the possession, custody or control of the party to which the request is addressed. Plaintiff's motion to compel is denied as to Requests No. 17 and No. 23.

In Request No. 19, Plaintiff requests information that is for "limited official use only," and would compromise security at the ADX [*see* dockets #583 at 23 and #638-3 at 9]; therefore, the motion to compel is denied as to Request No. 19.

Request No. 22 asks for copies of all Administrative Remedies filed at the ADX since 2005 "over issues raised in this complaint." Docket #583 at 24. The Court finds that this request is overly broad and not calculated to lead to the discovery of admissible evidence and, thus, denies Plaintiff's motion to compel regarding Request No. 22.

For the same reasons, the Court denies Plaintiff's motion to compel regarding Request No.

25, which asks for copies of all J unit referral forms in which admission to the stepdown program was granted or denied (presumably meaning all of them) since 2005.

  C. <u>Church Admissions</u>

With respect to Request No. 28 asking Defendant Church to admit or deny that "disciplinary segregation in B Unit is the same cell without a TV/Radio," the Defendants objected to the request as vague and ambiguous. However, the Court agrees with Plaintiff that the request clearly seeks an admission that when an inmate in B unit is placed on disciplinary segregation status, he is kept in the same cell but the television/radio set is removed, and the request is neither vague nor ambiguous. Therefore, the Court grants Plaintiff's motion to compel a response from Defendant Church to Request No. 28.

However, the Court finds that Church's response to Request No. 31 requesting an admission that "Georgacarakos was not armed" is appropriate and, thus, denies Plaintiff's motion to compel regarding Request No. 31.

  D. <u>Wiley Admissions</u>

Regarding Request No. 14 asking for Warden Wiley to admit that he reduced the number of inmates allowed to associate in J and K units to half of what they had allowed for ten years, Wiley objected to the request as vague and states that he is without sufficient knowledge regarding "association" of the inmates prior to his becoming warden. *See* docket # 638-4 at 3-4. The Court agrees that the request is vague and ambiguous as to the terms "reduced," "associate" and "what 'they' had allowed." Consequently, the Court finds that the response is appropriate and denies Plaintiff's motion to compel regarding Request No. 14.

Regarding Request No. 23 seeking an admission that Wiley prohibited growing plants at the

ADX following an incident report against Plaintiff for growing plants in his cell [docket #638-4 at 6], the Court finds that Wiley's amended response is appropriate and, thus, denies Plaintiff's motion to compel as to Request No. 23.

Finally, with respect to Requests No. 30-33 requesting admissions regarding alarms at the ADX, the Court finds that the requests are not calculated to lead to the discovery of admissible evidence as to any of Plaintiff's claims; in fact, Plaintiff fails to demonstrate how any of them relate to the Plaintiff at all. *See* dockets #638-4 at 7-8; *see also* docket #646 at 4. Therefore, the Court denies Plaintiff's motion to compel as to Requests No. 30-33.

## V. Motion for Discovery Sanctions

Plaintiff moves the Court for an order "sanctioning" the Defendants for failing to provide copies of documents responsive to his requests for production propounded to the BOP. Plaintiff does not specify any type of sanction in his motion. Nevertheless, in light of this Court's order for immediate production of the "yellow" colored documents responsive to Plaintiff's requests for production (*see supra* at IV.B.) and finding no bad faith or improper conduct by the parties, the Court determines that sanctions are not appropriate in this matter. Therefore, the Court denies Plaintiff's Motion for Discovery Sanctions.

## VI. Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Motion to Compel Discovery [filed March 23, 2009; docket #583] is **granted in part** and **denied in part** as specified herein, the Motion for Discovery Sanctions [filed April 23, 2009; docket #650] is **denied**, and the Motion for Hearing on Motion to Compel [filed April 23, 2009; docket #649] is **denied**.

Dated at Denver, Colorado, this 30th day of April, 2009.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge