IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

PETER GEORGACARAKOS,

     Plaintiff,

v.

WILEY,
CRUZ,
JAVERNICK,
COLLINS,
SUDLOW,
MADISON,
CHURCH,
LT. JOHN DOE,
HEIM,
MARTINEZ,
FENLON,
PUGH,
HOOD,
HERSCHBERGER,
BUREAU OF PRISONS,
DEPT. OF JUSTICE, and
UNITED STATES,

Defendants.

---

## DECLARATION OF TODD JAVERNICK

---

     I, Todd Javernick, pursuant to 28 U.S.C. § 1746, and based upon my

personal knowledge and information made known to me from official records

reasonably relied upon by me in the course of my employment, hereby make the

following declaration relating to the above entitled matter.

     1.     I am the Complex Case Management Coordinator at the United States

Department of Justice, Federal Bureau of Prisons ("Bureau"), Federal Correctional

Exhibit A-2

Complex ("FCC") in Florence, Colorado.   I have been so employed as a Case Management Coordinator since October 12, 2004, and the Complex Case Management Coordinator since August 22, 2007. I have been employed with the Bureau in positions of increasing responsibility since November 1992.

2.      The Federal Correctional Complex, Florence, consists of a minimum security Federal Prison Camp ("FPC"), a medium security Federal Correctional Institution ("FCI"), the United States Penitentiary-High Security ("USP"), and the United States Penitentiary-Administrative Maximum ("ADX").

3.      As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau, including, but not limited to, inmate Central Files, inmate property and attendant forms, Program Statements, institution supplements, and information maintained in the SENTRY[1] database.

4.      My duties include supervision of staff who work in the mail and property rooms in the Correctional Systems Departments at each of the four (4) institutions.   As part of their official duties, these staff are responsible for the processing of inmates who are being released from and arriving at each of the institutions.

5.      An inmate's possession of personal property is governed by Title 28 Code of Federal Regulations section 553.10 *et seq.* and primarily by Bureau Program Statement ("PS") 5580.07, *Personal Property, Inmate.*   Pursuant to PS

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

2

5580.07, an inmate may ordinarily only possess that property which he is authorized to retain upon admission to the institution, which is issued while he is in custody, which he purchases in the commissary, or which is approved by staff to be mailed to, or otherwise received by the inmate.   28 C.F.R. § 553.10.   The property rules allow for the management of inmate personal property in the institution, and contribute to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems related to inmate personal property.   *Id.*   Thus, consistent with the mission of each institution, each Warden has identified the type and amount of personal property an inmate has been approved to retained at his or her institution in addition to the property that has been approved by the Director for retention at all Bureau institutions.   *Id.* and § 553.11 and Attachment 1 (a true and accurate copy of Bureau Program Statement 5580.07, *Personal Property, Inmate*).

6.   There are two types of contraband, "hard contraband" and "nuisance contraband."   28 C.F.R. § 553.12.

7.   Nuisance contraband is "any item other than hard contraband . . . which previously has been authorized for possession by an inmate, but whose possession is prohibited when it presents a threat to security or its condition or excessive quantities of it present a health, fire, or housekeeping hazard.   Examples of nuisance contraband include: . . . altered personal property; excessive accumulation of commissary, newspapers, letters, or

3

magazines which cannot be stored neatly and safely in the designated area
. . .."  28 C.F.R. § 553.12(b)(2).

8.     The Warden may set local limits on the amount of commissary items, newspapers, magazines, etc. each inmate may retain.   Att. 1 at 11. At all relevant times from March 2006 through July 2006, Institution Supplement FLM 5580.06, *Personal Property, Inmate*, remained in effect and identified the type and quantity of personal property an inmate was allowed to possess at the ADX.   Attachment 2 (a true and accurate copy of Institution Supplement FLM 5580.06E, *Personal Property, Inmate*).

9.     In accordance with 28 C.F.R. § 553.13(a), staff are to seize any items which have been identified as contraband whether the items is found in the physical possession of the inmate, in his living quarters, or in common areas of the institution.   28 C.F.R. § 553.13(a).   Staff are to dispose of items seized as contraband, including those items found in the property of inmates processed through Receiving and Discharge ("R&D"), in accordance with § 553.13(b) and section 10 of PS 5580.07.   *See* § 553.13(b) and Att. 1 at pgs. 11-14.

10.     Items of personal property confiscated as contraband are inventoried and stored.   § 553.13(b).   Following an inventory of the confiscated items, staff provide the inmate with a copy of the inventory as soon as practicable and, if the inmate establishes ownership of the item, but the items has been identified as

4

contraband, staff mail such item(s), other than hard contraband, at the inmate's expense, to a destination of the inmate's choice.   § 553.13(b)(2)(i)-(iii).

11.     Where the inmate has insufficient funds and no likelihood of receiving new funds, or when the item has not been altered and had been originally permitted for admission to the institution or had been purchased from commissary, the Warden or designee may authorize the institution to pay the cost of such mailings.   § 553.13(b)(2)(iii).   The Correctional Systems Managers at each of the institutions and myself have been authorized to pay mailing costs.

12.     Staff are required to prepare and to retain written documentation describing any items destroyed and the reasons for such action.
§ 553.13(b)(2)(v).

13.     The following steps are taken when destroying contraband:

a.   Ordinarily, the ISM [2] (for R&D only) Captain or designee receives the inmate's proof of ownership and determines if an items is contraband.

b.   When it is determined that the items is to be destroyed, the ISM (for R&D only) Captain or designee will prepare the written documentation describing the item(s) destroyed and the reasons for this action.

c.   Ordinarily, property is held for 120 days before it is destroyed. This delay allows the inmate the opportunity to obtain proof of ownership and/or appeal the decision through the Administrative Remedy Procedure.

---

[2] The "ISM" title has been changed to the Correctional Systems Manager.   However, the Program Statement has yet to be updated to reflect this change; therefore, for the purposes of this declaration, when quoting policy, if the term "ISM" is used, it will be left unchanged.

      d. The employee who actually destroys the property, and at least one staff witness to the disposal, will state in writing that they have witnessed the destruction.

      e. Records of disposal of property will remain on file for at least two years to ensure the availability of information necessary to an investigation of a subsequent tort claim.

Att. 1 at 13-14.

14.    The personal property of inmates departing the institution on writ is inventoried and placed in storage in R&D during the inmate's absence.   Att. 2 at 8. This inventory is documented on Bureau form BP-383 - Inmate Personal Property Record ("BP-383").

15.    The Plaintiff, Peter Georgacarakos (Federal Register Number 03029-036), was released from the ADX on March 2, 2006, as a result of a federal writ.   Attachment 3 (a true and accurate copy of SENTRY Inmate History ADM-REL).

16.    Prior to his release on this writ, on March 1-2, 2006, staff completed the inventory of the Plaintiff's personal property and documented the inventory on four BP-383 forms.   Attachment 4 (true and accurate copies of BP-383 - Inmate Personal Property Records).   His property was then stored in the R&D storage area while he was on writ.

17.    Review of the relevant BP-383 form reveals the Plaintiff's property

6

contained the following property in excess of that allowed by national and/or institution policy: (a) a total of 18 inches of personal papers; (b) one altered book; (c) 17 pamphlets; (d) 11 books; and (e) 172 photos.   *Id.*   All of this excess property is nuisance contraband.

18.   While Plaintiff had the opportunity to identify any of his excess property as "religious" in the BP-383 form, he never did so.   *Id.*

19.   Pursuant to section 4(G) of Institution Supplement FLM 5580.06E, an inmate's personal compositions, manuscripts and correspondence filed in authorized folders, were required to be properly organized and were limited to two (2).   Att. 3 at 4.   Personal papers and correspondence was not to exceed one cubic foot.   *Id.*

20.   The Plaintiff returned to the ADX from the writ on March 16, 2006. Att. 3.   On March 20, 2006, staff reviewed the inventory of the Plaintiff's personal property with him.   Att. 4.   The Plaintiff signed section 10(b) of each of the forms without noting any discrepancies in the quantities or description of the property, thereby certifying the accuracy of the inventory.   *Id.*

21.   In the BP-383 form, he did indicate, however, he wanted the excess books, pamphlets, and altered book to be disposed of as trash.   *Id.*   The excess photographs he requested to be mailed to a Geri Bernier in Florida.   *Id.*   He requested the books be mailed to a Roy Kosonen in Danbury, Connecticut.   *Id.* He asked that the excess 18 inches of personal papers be stored.   *Id.*

7

22.     When the Plaintiff's property was inventoried, he was notified he had until July 18, 2006 (120 days from March 20, 2006), to provide an address and stamps if he wanted to mail the 18 inches of personal papers, the excess property. In accordance with policy, Plaintiff was informed that the excess property constituted nuisance contraband and that it could not be stored.   Attachment 5 (a true and accurate copy of Response to Inmate Request to Staff Member dated August 22, 2006).

23.     Plaintiff failed to provide an address of postage to mail the excess 18 inches of personal papers on or by July 18, 2006.   He also did not appeal through the administrative remedy the determination that the excess 18 inches of personal papers were nuisance contraband.

24.     On July 18, 2006, Correctional Systems Officer Martinez completed an Abandoned Inmate Property form (BP-S515) requesting permission to destroy the abandoned contraband in accordance with policy.   Attachment 6 (a true and accurate copy of Abandoned Inmate Property form dated July 18, 2006).   Acting Warden John Shartle approved the request.   *Id.*

25.     After receiving approval, in accordance with Bureau policy, Correctional Systems Officer Martinez and Correctional Systems Officer Roy destroyed the abandoned contraband on July 14, 2006.   *Id.*

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 28th day of April, at Florence, Colorado.

Todd Javernick
Complex Case Management Coordinator
Federal Correctional Complex
Florence, CO

9

# ATTACHMENT 1

P5580.07   PERSONAL PROPERTY, INMATE



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD/CSB
**NUMBER:** P5580.07
**DATE:** 12/28/2005
**SUBJECT:** Personal Property, Inmate

1.   **[PURPOSE AND SCOPE §553.10.  It is the policy of the Bureau of Prisons that an inmate may possess ordinarily only that property which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, which the inmate purchases in the institution commissary, or which is approved by staff to be mailed to, or otherwise received by an inmate.  These rules contribute to the management of inmate personal property in the institution, and contribute to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems which relate to inmate personal property.  Consistent with the mission of the institution, each Warden shall identify in writing that personal property which may be retained by an inmate in addition to that personal property which has been approved by the Director for retention at all institutions.]**

2.   **SUMMARY OF CHANGES.**  This revision includes the following:

◆     Limits on property which will be transported by the Bureau of Immigration and Customs Enforcement for detainees who will be deported.

◆     Clarifies the amount of personal photos an inmate may retain.

◆     Recording property transferring between institutions on the Transfer Receipt (BP-283).

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

3.   **PROGRAM OBJECTIVES.**   The expected results of this program are:

a.   Inmates will be permitted to retain and store authorized personal property.

b.   Contraband items found in the possession of inmates or in inmate living or work areas will be properly identified, processed, and discarded.

4.   **DIRECTIVES AFFECTED**

a.   **Directive Rescinded**

P5580.06   Inmate Personal Property (7/19/99)

b.   **Directives Referenced**

P1315.07   Legal Activities, Inmate (11/5/99)
P1330.13   Administrative Remedy Program (12/22/95)
P2000.02   Accounting Management Manual (10/15/86)
P4400.05   Property Management Manual (5/26/04)
P4500.04   Trust Fund/Warehouse/Laundry Manual (12/15/95)
P5266.10   Incoming Publications (1/10/03)
P5270.07   Inmate Discipline and Special Housing Units (12/29/87)
P5360.09   Religious Beliefs and Practices (12/31/04)
P5370.10   Recreation Programs, Inmate (2/23/00)
P5500.11   Correctional Services Manual (10/10/03)
P5540.06   Prisoner Transportation Manual (4/20/00)

c.   Rules cited in this Program Statement are contained in 28 CFR 553.10-15.

5.   **STANDARDS REFERENCED**

a.   American Correctional Association 4th Edition Standards for Adult Correctional Institutions:   4-4164, 4-4285, 4-4292, 4-4293, 4-4294, and 4-4446

b.   American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:   3-ALDF-2E-11, 3-ALDF-4A-01, 3-ALDF-4A-04, and 3-ALDF-4G-07

c.   American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies:   None

6.   **PRETRIAL/HOLDOVER PROCEDURES.**   Procedures required in this Program Statement apply to pretrial and holdover inmates.

7.   [**LIMITATIONS ON INMATE PERSONAL PROPERTY §553.11**

   a.   **Numerical Limitations.   Authorized personal property may be subject to numerical limitations.   The institution's Admission and Orientation program shall include notification to the inmate of any numerical limitations in effect at the institution and a current list of any numerical limitations shall be posted on inmate unit bulletin boards.**

   b.   **Storage Space.   Staff shall set aside space within each housing area for use by an inmate.   The designated area shall include a locker or other securable area in which the inmate is to store authorized personal property.   The inmate shall be allowed to purchase an approved locking device for personal property storage in regular living units.   Staff may not allow an inmate to accumulate materials to the point where the materials become a fire, sanitation, security, or housekeeping hazard.]**

   The amount of space provided depends upon the number of inmates assigned to that housing area.

   ◆      Allowing an inmate to retain excess personal property increases the likelihood that property will be damaged or lost, and thereby increases the risk to the Bureau of liability claims.

   ◆      By providing secured space, and adhering to guidelines on retention of property, the individual inmate has responsibility for securing personal property.

   [c.   **Clothing.   Civilian clothing (i.e., clothing not issued to the inmate by the Bureau or purchased by the inmate from the commissary) ordinarily is not authorized for retention by the inmate.   Civilian clothing which previously had been approved for retention may not be retained after August 6, 1999.   Prerelease civilian clothing for an inmate may be retained by staff in the Receiving and Discharge area during the last 30 days of the inmate's confinement.]**

   ◆   **Blue/Black/Red/Camouflage Clothing.**   No inmates may be issued, permitted to purchase, or have in their possession **any** clothing items, or pieces of cloth, in the aforementioned colors.

◆ **Civilian Clothing.** All inmates are prohibited from wearing any clothing not government issued or purchased in the commissary.

(1) **Commissary Clothing Inventory.** Wardens will ensure that commissaries eliminate restricted colors from their clothing inventories.

> ◆ Only gray and/or white clothing may be sold in institutions for males and only pastel green, gray, and/or white may be sold in institutions for females.
>
> ◆ The only exception is for religious headgear.

(2) **Shoes.** Inmates, may not have more than the authorized five pairs of commissary-purchased shoes.

> ◆ One pair of athletic type shoe, (see Attachments A and B)
> ◆ One pair of specialty type shoe (see Attachment B),
> ◆ One pair of dress or casual shoes,
> ◆ One pair of slippers, and
> ◆ One pair of shower thongs.

Commissaries will be the sole source for inmates to purchase athletic shoes and only supply shoes that sell for $100 or less.

[d. **Legal Materials**. **Staff may allow an inmate to possess legal materials in accordance with the provisions on inmate legal activities (see § 543.11 of this chapter).**

e. **Hobbycraft Materials**. **Staff shall limit an inmate's hobby shop projects within the cell or living area to those projects which the inmate may store in designated personal property containers. Staff may make an exception for an item (for example, a painting) where size would prohibit placing the item in a locker. This exception is made with the understanding that the placement of the item is at the inmate's own risk. Staff shall require that hobby shop items be removed from the living area when completed, and be disposed of in accordance with the provisions of part 544, subpart D of this chapter.]**

Part 544, Subpart D refers to the Program Statement on Inmate Recreation Programs, which sets limits on the amount of materials which can be purchased quarterly.

**[f.  <u>Radios and Watches</u>.  An inmate may possess only one
approved radio and one approved watch at a time.  The inmate must
be able to demonstrate proof of ownership.  An inmate who
purchases a radio or watch through a Bureau of Prisons commissary
is ordinarily permitted the use of that radio or watch at any
Bureau institution if the inmate is later transferred.  If the
inmate is not allowed to use the radio or watch at the new
institution, the inmate shall be permitted to mail, at the
receiving institution's expense, the radio or watch to a
destination of the inmate's choice.  Where the inmate refuses to
provide a mailing address, the radio and/or watch may be disposed
of through approved methods, including destruction of the
property.]**

Each radio will be engraved with the inmate's register number
for appropriate identification and accountability.

◆ Any radio which does not bear the possessing inmate's
correct register number, or on which the register number has
been altered, is contraband and will be disposed of in
accordance with Section 10 of this Program Statement.

◆ The engraving of the radio must be done at time of purchase.

Inmates may not retain other audio equipment, such as tape
players/recorders, or radios with tape players/recorders, except
as provided for the Program Statement on Legal Activities,
Inmate.

Where appropriate, certain department heads (e.g., Supervisor of
Education, Supervisory Chaplain and/or Unit Manager) may provide
this type of equipment for use by inmates participating in self-
study courses or other programs.

◆ Such equipment will only be used in the program area and
will not be permitted in inmate living quarters, except in
medical centers where inmates are medically confined to the
unit.

Wardens will take steps to reasonably accommodate inmates with
disabilities in conformance with the Rehabilitation Act of 1973,
which prohibits discrimination on the basis of disability in
Federally-assisted programs.

◆ In such cases, appropriate security procedures must be
developed, and both tape players and tapes be limited to
those available through state and Federal agencies providing
these services to the disabled.

P5580.07
12/28/2005
Page 6

◆ A Warden may determine that it is more appropriate to accommodate an inmate in another manner (for example, by providing volunteer readers).

Watches permitted to be retained by inmates must have a declared value of less than $100, and cannot have stones or sophisticated electronic functions, such as being able to send or receive signals.

Language translators are permitted to inmates who have displayed a need.

**[g.  Education Program Materials.  Education program materials or current correspondence courses may be retained even if not stored as provided in paragraph (b) of this section.]**

Only those education, religious study materials, and correspondence materials pertaining to current course work may be retained.

◆ Once an educational course is completed, associated books and materials must be removed from the living area or be included as part of an inmate's correspondence and reading materials.

**[h.  Personal Photos.  An inmate may possess photographs, subject to the limitations of paragraph (b) of this section, so long as they are not detrimental to personal safety or security, or to the good order of the institution.]**

Ordinarily, photographs, particularly those of family and friends, are approved, since they represent meaningful ties to the community.

◆ A personal photograph is defined as a photograph intended for individual viewing, as opposed to a photograph published for commercial use.

◆ Personal photographs may be stored or displayed in the housing units according to local sanitation and housekeeping guidelines.

◆ Inmates may not retain Polaroid photos.

◆ Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's

P5580.07
12/28/2005
Page 7

relative, friend, or acquaintance or could reasonably be perceived as such.  For these reasons, an inmate may not be permitted to retain, receive, or possess a personal photograph in which the subject is partially nude or nude, or when the photograph depicts sexual acts such as intercourse, fellatio, or sodomy.
These materials will be returned to the sender upon receipt at the institution.

◆ An inmate may possess 25 loose photos.  In addition to these photos, an inmate may possess a photo album containing photos provided they are properly stored in the photo album.

I.  **Religious Items.**  Each inmate, upon commitment, will be permitted to retain religious items approved by the Warden.

◆ Ordinarily, inmates will be permitted to retain one religious medallion and chain with no stones, non-metallic. The item will not be valued more than $100.
◆ The Warden will authorize retention of religious items unless they pose a threat to the security and orderly running of the institution.
◆ Inmates may not receive these items from home.

Items of religious wearing apparel include, but are not limited to:

• Prayer shawls and robes,
• Kurda or ribbon shirts,
• Medals and pendants (as noted above),
• Medicine pouches, and
• Various types of approved headwear.

Personal religious property may be purchased only from commissary stock or from a Chaplain-approved catalogue using the Special Purchase Order process.

◆ The inmate must have prior approval from the Chaplain.  The Religious Beliefs and Practices Institution Supplement must include proper acquisition procedures for those items not available through a catalogue.

Religious headwear is permitted in all areas of the institution, subject to normal considerations of security and good order, including inspection by staff.

◆ Guidance for approved religious headwear and attire is found in the Program Statement titled, Religious Beliefs and Practices.

◆ Religious headwear and/or attire which has been altered
without staff approval is contraband.

j.  **Consumable Awards.**  Bureau entities such as Education,
UNICOR, and Recreation Departments may provide consumables as
awards to recognize inmate achievements.  Consumables such as
soda, cookies, hygiene items, small cash awards, and paper
certificates etc., are to replace property awards.

◆ Property awards such as trophies, hats, tee shirts, mugs,
pens, etc. are not authorized at any institution.

k.  **Packages From Home.**  The only packages an inmate may
receive from home are those containing release clothing and
authorized medical devices.

◆ Release clothing packages may only be received within the
last 30 days of confinement.  This clothing will be stored
in R&D and not released to the general population.

◆ Medical devices such as hearing aids, eyeglasses, dentures,
wheelchairs, braces, orthopedic/prescription shoes and
artificial limbs are authorized if medically required and
approved by the Health Services Administrator.

8.  **PERSONAL PROPERTY LIST AND RECORDS.**  The Inmate Personal
Property List (Attachment A), includes all personal property that
an inmate can retain at every institution, including non-
government property approved for use at all Bureau institutions
and permitted for transfer between institutions.

◆ This includes any medical device which is either issued or
approved by the Health Services Unit (HSU) prior to it being
added to the inmate's personal property list.

◆ Should an inmate transfer to another institution, this
property may be sent along with the inmate or his or her
property at the discretion of the sending and receiving
institutions' Warden.

While the institution may set a limit on the number of specific
items that the inmate may retain, this limit may not exceed the
capacity of the local specified area or container designated for
inmate clothing.

a.  **Additional Property Items.**  The Warden must approve any
item of inmate property not found in Attachment A and then only
for local and short-term retention.

◆ Items that are added to an inmate's property list may vary
by institution due to climatic, cultural, or other reasons.
All such property will be clearly identified when sold at
Commissary as "for local use only."

Property approved for local use will be mailed home at the
inmate's expense upon transfer or release.  If abandoned by the
inmate, the property will be disposed of in accordance with
Justice Management Regulations.

◆ An example of items identified for possession at the
Warden's discretion are listed in Attachment A.

b.  **Personal Property Record.**  A copy of the Inmate Personal
Property Record (BP-383 [hard copy] or BP-S383 [in BOPDOCS]) will
be given to the inmate during the initial property inventory or
any subsequent inventory.  This form and/or a commissary receipt
constitutes proof of ownership, not proof of value.

c.  **Inmate Property Inventory Records.**  The BP-383 will be used
to inventory all inmate property except when:

◆ The Authorization to Receive Package or Property
(BP-331) will be used to inventory release clothing received
from an outside source.

◆ The Special Purpose Order Request (BP-200) will be used to
inventory special purchase items.

◆ The Warden elects to use a local form instead; for instance,
when an inmate moves from Administrative Detention to
Disciplinary Segregation or from Disciplinary Segregation to
Administrative Detention.

Regardless of the form used, a written record of that inventory
will be retained in the Special Housing Unit (SHU) for at least
two years.  A copy of the inmate Personal Property Record form
will also be kept in the Inmate Central File.

◆ The Request-Authorization to Mail Inmate Package (BP-329),
must be used to inventory property which is authorized for
retention, but not authorized for shipment at Bureau expense
(the inmate incurs the cost of mailing).

9.  **[CONTRABAND §553.12**

**a.  Contraband is defined in §500.1 (h) of this chapter.  Items
possessed by an inmate ordinarily are not considered to be**

P5580.07
12/28/2005
Page 10

**contraband if the inmate was authorized to retain the item upon
admission to the institution, the item was issued by authorized
staff, purchased by the inmate from the commissary, or purchased
or received through approved channels (to include approved for
receipt by an authorized staff member or authorized by
institution guidelines).]**

Contraband includes material prohibited by law, or by
regulation, or material which can reasonably be expected to cause
physical injury or adversely affect the security, safety, or good
order of the institution.

◆ For example, a manual describing the operation of the
  Bureau's data processing equipment would be considered
  contraband if possessed by an inmate because of the threat
  it would pose to the security, safety, and good order of the
  institution.

**[b.   For the purposes of this subpart, there are two types of
contraband.**

**(1)   Staff shall consider as hard contraband any item which
poses a serious threat to the security of an institution and
which ordinarily is not approved for possession by an inmate or
for admission into the institution.   Examples of hard contraband
include weapons, intoxicants, and currency (where prohibited).]**

Other examples of hard contraband include:

• Tools which may be used to aid in an escape (e.g., rope),
• Ammunition or explosives,
• Combustible or flammable liquids,
• Knives or tools not provided in accordance with the
  Correctional Services Manual, and
• Hazardous or poisonous chemicals and gases.

Narcotics or other controlled substances not dispensed or
approved by the institution HSU are also hard contraband.

◆ Medicine the HSU dispensed or approved is hard contraband if
  not possessed by the inmate for whom it was prescribed or if
  not consumed or used in the manner prescribed.

Staff must consult the institution pharmacist or other health
services staff member in any case involving questions whether a
prescribed medication represents contraband.

Medicines the inmate carries into the institution at the time
of commitment (e.g., voluntary commitment) will be forwarded to
the institution medical staff for disposition.  If appropriate,
this medicine will be returned to the inmate.

**[(2)   Staff shall consider as nuisance contraband any item
other than hard contraband, which has never been authorized, or
which may be, or which previously has been authorized for
possession by an inmate, but whose possession is prohibited when
it presents a threat to security or its condition or excessive
quantities of it present a health, fire, or housekeeping hazard.
Examples of nuisance contraband include: personal property no
longer permitted for admission to the institution or permitted
for sale in the commissary; altered personal property; excessive
accumulation of commissary, newspapers, letters, or magazines
which cannot be stored neatly and safely in the designated area;
food items which are spoiled or retained beyond the point of safe
consumption; government-issued items which have been altered, or
other items made from government property without staff
authorization.]**

The Warden may set limits locally, based on available storage
space, on the amount of commissary items, newspapers, magazines,
etc., each inmate may retain.

10.   **[PROCEDURES FOR HANDLING CONTRABAND §553.13**

**a.   Staff shall seize any item in the institution which has
been identified as contraband whether the item is found in the
physical possession of an inmate, in an inmate's living quarters,
or in common areas of the institution.**

**b.   Staff shall dispose of items seized as contraband in
accordance with the following procedures.]**

Exceptions to these procedures may occur only upon written
authorization of the Warden or designee.

◆ The procedures described in this section apply to and
   include property found in the inmate's physical possession,
   in an inmate's living quarters, or in common areas of the
   institution.

◆ These procedures also encompass the property of inmates
   processed through Receiving and Discharge (R&D), such as new
   commitments and inmates received through transfer.

◆ When religious items are confiscated the chaplain must be
consulted as to the validity of the items.

**[(1)   Staff shall return to the institution's issuing authority
any item of government property seized as contraband, except
where the item is needed as evidence for disciplinary action or
criminal prosecution.   In such cases, staff may retain the seized
property as evidence.]**

Seized government property, if not altered, may be placed in
normal stock for reissue.

◆ Altered government property, including items an inmate
made from government property, without staff
authorization, will be destroyed at the Warden's
discretion.

◆ The Warden may delegate the authority to determine if
altered government property is to be destroyed.

The chaplain must be consulted regarding the disposition of
religious items confiscated.

**[(2)   Items of personal property confiscated by staff as
contraband are to be inventoried and stored pending
identification of the true owner (if in question) and possible
disciplinary action.   Following an inventory of the confiscated
items, staff shall employ the following procedures.**

**(I)   Staff shall provide the inmate with a copy of the
inventory as soon as practicable.   A copy of this inventory shall
also be placed in the inmate's central file.]**

Placing a copy of the inventory in the Inmate Central File
will assist staff in the investigation of possible tort claims.

**[(ii)   The inmate shall have seven days following receipt of
the inventory to provide staff with evidence of ownership of the
listed items.   A claim of ownership may not be accepted for an
item made from the unauthorized use of government property. Items
obtained from another inmate (for example, through purchase, or
as a gift) without staff authorization may be considered nuisance
contraband for which a claim of ownership is ordinarily not
accepted.**

**(iii)   If the inmate establishes ownership, but the item is
identified as contraband, staff shall mail such items (other than**

hard contraband), at the inmate's expense, to a destination of
the inmate's choice.  The Warden or designee may authorize the
institution to pay the cost of such mailings when the item had
not been altered and originally had been permitted for admission
to the institution or had been purchased from commissary, or
where the inmate has insufficient funds and no likelihood of new
funds being received.  Where the inmate has established ownership
of a contraband item, but is unwilling, although financially able
to pay postage as required, or refuses to provide a mailing
address for return of the property, the property is to be
disposed of through approved methods, including destruction of
the property.]

The Confiscation and Disposition of Contraband form
(BP-S402) (found on BOPDOCS) will be completed.

◆ Ordinarily, the Inmate Systems Manager (ISM) is responsible
   for authorizing the institution to pay mailing costs.

**[(iv)  If the inmate is unable to establish ownership, staff
shall make reasonable efforts to identify the owner of the
property before any decision to destroy the property is made.**

**(v)  Staff shall prepare and retain written documentation
describing any items destroyed and the reasons for such action.]**

Destroying contraband will be accomplished as follows:

◆ Ordinarily, the ISM (for R&D only) or Captain or designee
   receives the inmate's proof of ownership and determines
   if an item is contraband.

◆ When it is determined that the item is to be destroyed,
   the ISM (for R&D only) or Captain or designee will
   prepare the written documentation describing the item(s)
   destroyed and the reasons for this action.

◆ Ordinarily, property is held for 120 days before it is
   destroyed.  This delay allows an inmate the opportunity
   to obtain proof of ownership and/or appeal the decision
   through the Administrative Remedy Procedure.

◆ The employee who actually destroys the property, and at
   least one staff witness to the disposal, will state in
   writing that they have witnessed the destruction.

◆   Records of disposal of property will remain on file for
    at least two years to ensure the availability of
    information necessary to an investigation of a subsequent
    tort claim.

**[(vi)   Where disciplinary action is appropriate, staff shall
delay disposition of property until completion of such action
(including appeals).**

**c.   Staff shall retain items of hard contraband for
disciplinary action or prosecution or both.   The contraband items
may be delivered to law enforcement personnel for official use.
When it is determined that the item is not needed for criminal
prosecution, the hard contraband shall be destroyed as provided
in paragraph (b)(2)(v) of this section.   Written documentation of
the destruction shall be maintained for at least two years.**

**d.   Staff may not allow an inmate to possess funds in excess of
established institutional limits.   Staff shall deliver to the
cashier any cash or negotiable instruments found in an inmate's
possession which exceed the institution's allowable limits.
Funds determined to be contraband shall be confiscated for
crediting to the U.S. Treasury.]**

Unauthorized money is contraband.

◆  If the inmate cannot show that the funds are appropriately
   his or hers, the money will be confiscated, and turned over
   to the cashier for deposit to the "miscellaneous receipts"
   account for crediting to the U.S. Treasury.

Pending written determination of disposition by the Warden or
designee, money will be deposited in the Suspense Account.

◆  The officer confiscating the funds will document his or her
   actions in a memorandum to the Warden.

**[(1)   Where disciplinary action against the inmate is
appropriate, staff shall delay final disposition of the funds
until such action (including appeals) is completed.**

**(2)   Prior to a decision on the disposition of funds, staff
shall allow the inmate a reasonable amount of time to prove
ownership.]**

**11.   [INMATE TRANSFER BETWEEN INSTITUTIONS AND INMATE RELEASE
§553.14.**

   a.  **Except as provided for in paragraphs(a)(1) through (3) of this section, authorized personal property shall be shipped by staff to the receiving institution.**

   **(1) The Warden ordinarily shall allow an inmate transferring to another institution to transport personal items determined necessary or appropriate by staff and, if applicable, legal materials for active court cases.**

   **(2) The Warden may require or allow an inmate who is transferring to another institution under furlough conditions to transport all the inmate's authorized personal property with him or her.**

   **(3) An inmate who is being released or who is transferring to a Community Corrections Center may arrange to ship personal property at the inmate's expense.  The inmate is responsible for transporting any personal property not so shipped.**

   b.  **If the inmate's personal property is not authorized for retention by the receiving institution, staff at the receiving institution shall arrange for the inmate's excess personal property to be mailed to a non-Bureau destination of the inmate's choice.  The inmate shall bear the expense for this mailing.**

   c.  **Whenever the inmate refuses to provide a mailing address for return of the property or, when required, refuses to bear the expense of mailing the property, the property is to be disposed of through approved methods, including destruction of the property.]**

   This property determination is to be made in the receiving institution's R&D unit when the inmate's property is processed i.e., inventoried, in the inmate's presence.  Bureau institutions will accept for each inmate the property approved in this Program Statement as authorized for retention and transfer between Bureau institutions.   Staff will adhere to the procedures that follow with respect to an inmate's property while he or she is in transfer between institutions.

   d.  Sending institution staff will ship authorized property of inmates transferring via bus, van, or airlift directly to receiving institutions.  Ordinarily, no more than two boxes of property, size 14" x 14" x 19", will be shipped at government expense for each inmate.  The inmate may elect to pay for expenses related to the shipment of authorized personal property beyond the two boxes.

P5580.07
12/28/2005
Page 16

Institutional clothing and shoes for an inmate with special needs (i.e., large sizes, small sizes, orthopedic designs, etc.), may be shipped at government expense in addition to the two box maximum when the inmate transfers to another Bureau institution.

Property of inmates transferring on furlough will also be handled in this same manner.

Additionally, inmates will be authorized to transfer one pair of Bureau issued shoes.

Legal property will be exempt from this two box limit.

e.  Bureau buses and vans will accept two standard size (14" x 14" x 19") boxes for transport with the inmate when the same bus or van delivers the inmate to the final destination.  This shipment will be in lieu of the two boxes which would normally be mailed at government expense.

f.  Essential Daily Prayer items, as authorized by the Warden, must be delivered to transporting officials, upon the inmate's removal.  The inmate is responsible for production of the items, in the authorized container (authorization affixed by Chaplain), to the R&D Officer.  The items will be re-issued to the inmate for daily use at all holdover points.

The Chaplaincy Services Branch, Central Office, will provide sample authorization forms and a sample container to each location for use in the issuance of essential daily prayer items.]

g.  R&D staff will use Transfer Receipt (BP-283), for receipting all packages delivered to transporting officials in accordance with above changes.

◆ A separate entry will be made for the package containing essential Daily Prayer items.

h.  An inmate who is to be assigned as a holdover while enroute to a new institution will be limited in the amount of personal property that may accompany him or her.

◆ Such property is limited to the necessary personal items and legal materials for active court cases.

I.  All property which accompanies the inmate must be listed on the Inmate Personal Property Record form.

◆ Property inadvertently omitted from the form may not be given to the transporting officer or to any other staff for the purpose of having the item(s) taken to the new institution (either holdover or designated).

◆ This property must be listed on a new Inmate Personal Property Record form and shipped to the receiving institution.

j.  Inmates being released or transferring to a Community Corrections Center will be encouraged to ship their property home at their expense prior to release.  If they choose not to, they will take their personal property with them.

k.  Property which is authorized for retention at Bureau institutions, but not authorized for shipment at Bureau expense, may be shipped by each inmate incurring the cost.

◆ These packages will be inventoried using a Request-Authorization to Mail Inmate Package form (BP-329).  Inmates will affix the correct postage.

12.  **VOLUNTARY-SURRENDERS.**  When an inmate voluntarily surrenders to Bureau custody he or she will be permitted to retain only the following items:

◆ Plain wedding band (no stones or intricate markings),

◆ Earrings for females only (no stones) with a declared value of less than $100,

◆ Medical or orthopedic devices,

◆ Legal documents,

◆ Social Security card and other forms of identification (drivers license, passport, etc.) to be retained in the Inmate Central File until the inmate's release,

◆ Religious items approved by the Warden as long as they do not present a threat to the security of the institution (religious medallions and chains must have a declared value of less than $100, male or female),

◆ Prescription glasses, and

◆ Cash/negotiable instruments.

◆ The institution will only pay for the shipping costs of clothing the inmate wears upon initial commitment, ie pants, shirt, underwear, shoes, coat, etc

All other property will be rejected and shipped to the inmate's home at the inmate's expense.

13.   **[LIMITATIONS ON PERSONAL PROPERTY – MEDICAL TRANSFERS §553.15.   The Warden shall set a limit on the amount of personal property that may accompany an inmate transferring to a medical facility.   For purpose of this rule, a medical facility is one which provides observation and/or treatment of a medical, surgical, or psychiatric nature, or any combination of these. Such medical transfers are ordinarily of a short-term duration (30-120 days).]**

Patients transferring to a medical facility for medical, surgical, or psychiatric treatment are ordinarily limited to the amount of personal property which can be placed in a box approximately 14" x 14" x 19."

The amount of clothing and other personal effects (for example, watches, rings, orthopedic devices, personal letters, religious articles) are limited to the items which can be appropriately placed within this container.

**[a.   The Wardens of the sending and receiving institutions shall allow the inmate to retain those legal materials specifically needed in respect to on-going litigation.   Questions as to the need for such material may be referred to Regional Counsel.]**

If an inmate claims the need to take what can be considered an excessive amount of legal materials on a transfer, staff at the sending institution, ordinarily the ISM, will contact Regional Counsel to determine if the inmate has any pending court litigation or a hearing set to occur during the inmate's expected absence from the institution that would justify taking these legal materials.

**[b.   The Warden of the sending institution shall designate a secure location for storage of all inmate personal property not accompanying the inmate.]**

Minimum guidelines for storage will include accurate record keeping indicating:

◆ the number of boxes,

◆  the inmate's name,
◆  registration number, and
◆  the institution to which the inmate is being transferred for
   treatment.

[c.  **Personal property permitted in the sending institution,
but not in the receiving institution, shall either be retained at
the sending institution or be mailed to a destination of the
inmate's choice.**

(1)  If the inmate is expected to return to the sending
institution within 120 days of transfer, staff shall advise the
inmate that property not allowed in the medical facility may be
held at the sending institution or sent to a destination of the
inmate's choice (other than the medical facility), at the
inmate's expense.  Where lack of space prevents retention of the
inmate's property at the sending institution, that institution
shall pay postage costs connected with mailing the inmate's
property to a destination of the inmate's choice.  Where lack of
space prevents the retention of the inmate's property at the
sending institution, and the inmate refuses to provide a mailing
address for return of the property, the property is to be
disposed of through approved methods, including destruction of
the property.

(2)  The inmate's property may be sent with the inmate to the
medical facility when the inmate is not expected to return to the
sending institution, will be at the medical facility over 120
days, or for any other justified reason.  The Warden at the
sending institution shall prepare and place in the inmate's
central file written documentation for forwarding the inmate's
personal property.

d.  The Warden of the medical facility shall return an inmate's
personal property ordinarily in the same or equivalent size
container as originally used by the sending institution.
Property accumulated over that amount, at the option of the
inmate, will either be sent to a destination selected by the
inmate, at the inmate's expense, donated, or destroyed.  If the
inmate is financially able but refuses to pay for the mailing, or
if the inmate refuses to provide a mailing address for forwarding
of the property, the property is to be disposed of through
approved methods, including destruction of the property.]

Exhibit A-2

On occasion, staff may allow an inmate to retain more property than he or she brought to the institution.  Situations when this might be permitted include when the inmate has been at the institution over three months or when a transfer is unexpectedly effected immediately after the inmate has made significant commissary purchases.

If the inmate is re-designated after completing medical treatment to an institution other than the sending institution, the medical facility is to notify the sending institution of this fact via BOPNet GroupWise.

- ◆ The medical institution will send this message when treatment has been completed and the inmate is ready for transfer.

- ◆ Upon receiving the GroupWise message, the institution retaining the inmate's property will arrange for the property to be forwarded to the institution to which the inmate was transferred.

Ordinarily, once every 30 days, staff will inspect the stored property to guard against tampering or pilferage.

14.  BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) DETAINEES.  ICE has placed limitations on the amount of personal property for detainees who will be deported.  Consequently, detainees who transfer to other facilities should have their property limited to the following items:

- ◆ Wedding Band (plain, no stones)
- ◆ Prescribed Medication
- ◆ Legal Materials (ongoing case)
- ◆ Cigarettes (2 packages, unopened)
- ◆ Photographs (10, no Polaroids)
- ◆ Shoes (1 pair)
- ◆ Currency/Negotiable Instruments
- ◆ Religious Medal and/or Medallion
- ◆ Watch (value less than $100.00)
- ◆ Prescription Eyeglasses
- ◆ Personal Letters (5)
- ◆ Soft-back Bible

Any items not authorized for transport by BICE must be mailed at the inmate's expense.  If abandoned by the inmate, the property will be disposed of in accordance with Justice Management Regulations.

15.  **INSTITUTION SUPPLEMENT.**  All institutions will develop an
Institution Supplement describing that institution's procedures
regarding inmate personal property.

◆  A copy of the Institution Supplement will be forwarded for
approval to the appropriate Regional Director prior to
initial issuance or any change.

Each Institution Supplement must cover at least the following
areas:

◆  Identification of personal property which the inmate may
retain.  Inmates will be advised as part of the admission
and orientation program what personal property they may
keep.

◆  Identification of areas within the institution for property
storage.  Such storage areas are to be secured, with limited
staff access and no access by inmates.

◆  Property storage may not be in offices of the unit team or
the correctional supervisor except in temporary emergency
situations.

◆  When an inmate leaves on writ or furlough or is placed in
SHU status, staff will place the inmate's property in a
secured storage area without frequent access by staff or
inmates.

◆  Establishment of a procedure to ensure a property inventory
whenever an inmate's status requires such action (for
example, admission, placement in special housing, transfer,
release).  At a minimum, this will include completion of the
Inmate Personal Property Record form for identifying
property and documenting valuables, particularly property
valued over $100.

Specificity is necessary when completing inventory forms.  For
example, instead of identifying a package of books as "1 lot
books" the items should be identified as "three hardback legal
books and two paperback books".

An exception is allowed for new inmates received in the R&D area
and placed in a SHU.  Then, R&D staff must inventory the property
and forward the property to the SHU officer who will inspect the
property for contraband and not re-inventory it.

◆   Establishment of a procedure to retain the Inmate Personal
    Property Record form for two years in the R&D unit, and,
    when applicable, in the SHU.

    It is suggested that Inmate Personal Property Record forms
    be kept chronologically, thereby allowing easy
    identification of those forms over two years old.

◆   Establishment of a procedure to ensure documentation in the
    Inmate Central File of all major items:

    ◆   purchased from the institution commissary,
        received through the mail, or
    ◆   received from any other approved source (e.g.,
        radios, watches, arts and hobbycrafts).

16.   **REVIEW AND OVERSIGHT PROCEDURES.**  Program Review staff in
the Inmate Systems and Correctional Services sections, during
scheduled Program Reviews, must review personal property
procedures.  Regional Inmate Systems Administrators and Regional
Correctional Services Administrators, as part of their regular
staff assistance visits, must review each institution's personal
property handling procedures regularly.


                              /s/
                              Harley G. Lappin
                              Director

P5580.07
12/28/2005
Attachment A, Page 1

## INMATE PERSONAL PROPERTY LIST – NATIONAL LIMIT

### AUTHORIZED FOR RETENTION & TRANSFER BETWEEN INSTITUTIONS

```
B = Black
W = White
BW = Black/White Combination
GRY = Gray
GRN = Green (pastel)
c = Commissary Only
I = BOP Issue
```

**\*\*ITEMS APPLY TO ALL INMATES UNLESS OTHERWISE NOTED\*\***

**CLOTHING:**
Bathrobe
  Males - W GRY (no hoods) c (1)
  **Females - W GRN (no hoods) c (1)**
Cap, Baseball
  Males - W GRY (no logos) c (1)
  **Females - W GRN (no logos) c (1)**
Handkerchief, W  c (5)
Shoes, Athletic/Specialty, B W BW ($100 value maximum/no pumps/no
  pockets) court, turf, running shoe c (2 pr)
Shoes, Casual, c (1 pr)
Shoes, Shower, c (1 pr)
Shoes, Slippers, c (1 pr)
Shoes, Work, c, (1 pr), (I)
Shorts, Gym
  Males - W GRY c (2)
  **Females - W GRN GRY c (2)**
Socks, Tube, (w) c (5)
Stockings/Pantyhose
  **Females - skintone c (5)**
Sweatshirt
  Males - GRY (cotton/pullover/no hoods/no logos) c (2)
  **Females - W GRN GRY (cotton/pullover/no hoods/no logos) c (2)**
Sweatpants
  Males - GRY (cotton/no logos) c (2)
  **Females - W GRN GRY (cotton/no logos) c (2)**
T-Shirts/Sleeveless Undershirts
  Males - W GRY (no pockets/no logos) c (5)
  **Females - W GRY (no pockets/no logos) c (5)**
Underwear
  Males - W GRY (boxers or briefs) c (7)
  Females - W (bras/panties) c (7)

P5580.07
12/28/2005
Attachment A, Page 2

**PERSONALLY OWNED ITEMS:**

Address Book, c (1)
Alarm Clock (non-electric), c (1)
Bag, Athletic Tote (no logo), c (1)
Barrettes/Clips/Bows
  **Females - c (5)**
Batteries (not including batteries stored in electronic items),
  c (4)
Blush Kit
  **Females - c (1)**
Books (hard/soft), (5)
Book/Reading Light, c (1)
Bowl (plastic/24 oz. or less), c (1)
Calculator, small (electronically unsophisticated, inexpensive,
  non-print feature/battery or solar operated) c (1)
Calendar, small, c (1)
Comb/Pick (plastic), c (2)
Combination Lock, c (1)
Cosmetic Bag
  **Females - c (1)**
Cup (plastic), c (1)
Dentures (1 set)
Earplugs, c (1 set)
Earrings
  **Females - 1 pr**
Envelopes, c (1 box)
Eyeglasses (no stones), (2 pr)
Eyeglass Case (2)
Eyeliner/Pencil
  **Females - c (2)**
Eye Shadow
  **Females - c (2)**
Hairbrush, c (1)
Hangers (plastic), c (5)
Headphones, c (1)
Jug (plastic/up to 1 gal), c (1)
Language Translator, (small, electronically unsophisticated,
  inexpensive, non-print feature/battery, or solar operated), c
  (1)
Laundry Bag (mesh), c (1)
Letters (25)
Lipstick
  **Females - c (3)**
Makeup/Foundation/Base
  **Females - c (2)**
Mirror (small/plastic), C (1)
Pen, Ballpoint, c (2)

P5580.07
12/28/2005
Attachment A, Page 3

Pencils, c (2)
Photo Album/Scrapbook with photos, c (1)
Photos (single-faced) (25)
Picture Frame, (clear plastic) c (2)
Playing Cards, c (2 decks)
Radio with Earplugs (walkman-type), c (1)
Shaving Bag
  Males - c (1)
Stamps (total value equivalent to 60, 1st Class), c
Sunglasses (non-reflective), c (1)
Towel (white/large), c (1)
Watch ($100 maximum value, no stones, electronically
  unsophisticated, i.e., inability to send signals), c (1)
Watchband, c (1)
Wedding Band (plain - no stones/white/yellow metal) (1)
Writing Tablet, c (2)

**HYGIENE ITEMS:**

Dental Floss and/or Pick (unwaxed) c (1 container)
Denture Adhesive, c (1)
Denture Brush, c (1)
Denture Cleaner/Powder, c (1)
Denture Cup, c (1)
Deodorant, c (2)
Lens Cloth, c (1)
Nail Clippers (no file), c (2)
Razor, c (1)
Scissors, Mustache
  Males - (blunt tip), c (1)
Sewing Kit, c (1)
Soap, Bar, c (3)
Soap Dish, c (1)
Toothbrush, c (1)
Toothbrush Holder, c (1)
Toothpaste, c (2 tubes)
Tweezers (blunt tip), c (1)

**RECREATIONAL ITEMS:**

Athletic Supporter
  Males - c (2)
Bra, Jogging
  **Females - c (2)**
Eye Protection, c (1)
Gloves (fingerless/athletic), c (1)
Gloves (handball), c (2)
Harmonica, c (1)
Headbands/Sweatbands, W  c (2)

P5580.07
12/28/2005
Attachment A, Page 4

Knee Wraps, c (2)
Knitting/Crochet Needles, c (1)
Mouth Piece, c (1)
Racquetballs (2 cans of 2), c (4)
Softball Glove, c (1)
Tennis Balls (can of 3), c (1)
Tools for Bead Work, c (1)
Weightlifting Belt, c (1)
Weightlifting Gloves, c (1)
Weightlifting Wraps, c (2)
Yarn, Embroidery, Hoops/Needles, c (1 set)

**APPROVED RELIGIOUS ITEMS:**

ITEMS AUTHORIZED IN RELIGIOUS AND PRACTICES, TRM, T5360.01

**APPROVED MEDICAL DEVICES:**

**OTHER ITEMS:**

Cigarettes c (2 cartons)
Cigars c (1 box)
Chocolate (instant) c (10 packets)
Coffee (instant/jar/container, unopened) c (1)
Coffeemate (jar/container, unopened) c (1)
Pipe Cleaners/Filters c (1 package)
Pipes c (2)
Tea (instant/jar/container, unopened) c (1)
Tobacco (smokeless) c (1 roll up to 10 cans)

**Non-perishable commissary items sealed in unopened, original
containers may also be transported or shipped.**

P5580.07
12/28/2005
Attachment A, Page 5

**GOVERNMENT ISSUED ITEMS WHICH MAY NOT BE TRANSFERRED FROM
INSTITUTION TO INSTITUTION
LIMITS TO BE ESTABLISHED BY LOCAL WARDEN**

```
Belt
Blouses - Females
Bras - Females
Cap (stocking)
Coat (over)
Dress - Females
Gloves (work)
Pajamas
Jacket
Pants/Slacks
Scarf
Shirts
Shoes (low heel skimmer) - Females
Skirts - Females
Slips - Females
Socks
T-Shirts
Underwear
Underwear (insulated)
```

● **EXCEPTIONS** are government issued/personal medical equipment
to include orthopedic shoes, appliances, clothing, insulin
testing kits, etc. especially made for obese or extremely
petite inmates which if not mailed to the new facility would
incur additional expense for the Bureau.

Any item of inmate property not on this list must be
approved for retention by the local Warden and be of a
"short term duration" nature.  Variations can arise due to
climatic, cultural or other reasons.  All such property
would clearly be identified when sold at commissary as "for
local use only."

P5580.07
12/28/2005
Attachment A, Page 6

**ITEMS FOR POSSESSION AT THE DISCRETION OF THE LOCAL WARDEN
WHICH MAY NOT BE TRANSFERRED BETWEEN INSTITUTIONS
MAY BE MAILED HOME AT INMATE'S EXPENSE OR ABANDONED**

**PERSONALLY OWNED ITEMS:**

Books (in excess of 5)
Bucket (ice)
Coins (not to be shipped)
Curlers (hair) - Females
Earrings - Females
Fan (battery/windup)
Gloves
Magazines
Matches (postal regulations prohibits mailing)
Newspapers

**FOOD ITEMS:**

Soda (cans)
Fruit

**ITEMS FOR POSSESSION.AT THE DISCRETION.OF THE LOCAL WARDEN.WHICH.
MAY BE TRANSFERRED BETWEEN INSTITUTIONS**

**HYGIENE ITEMS:**

Brushless Shave
Conditioner/Hair
Face Cream - Females
Hair Oil/Gel (non-flammable, non-alcoholic) c (1)
Laundry Detergent
Lotion, Skin (moisturizing) c (1)
Mouthwash
Powder/Body/Foot
Shampoo
Shaving Cream/Lotion - Males
Shoe Polish/Wax


Additional items may be authorized by CEOs.

P5580.07
12/28/2005
Attachment B, Page 1

## APPROVED ATHLETIC/SPECIALTY SHOE

I.  Court Shoe

   A. Description

      1.  Ankle support (high or three quarter)
      2.  Smooth surface/tread design/traction
      3.  Arch/heel support

   B. Type of Activity

      1.  Basketball
      2.  Racquetball
      3.  Handball
      4.  Volleyball
      5.  Walking
      6.  Tennis
      7.  Aerobics

II. All Turf Shoe

   A. Description

      1.  Traction
      2.  Rubber Cleats
      3.  Thick Padded Tongue

   B. Activity

      1.  Softball
      2.  Flag Football
      3.  Soccer
      4.  Field Hockey

III. Running Shoe

   A. Description

      1.  Arch Support
      2.  Light Weight
      3.  Heel Pad/Shock Absorption
      4.  Higher Heel Back

   B. Activity

      1.  Running
      2.  Jogging
      3.  Sprinting
      4.  Jump Rope

# ATTACHMENT 2



**UNITED STATES PENITENTIARY**
ADMINISTRATIVE MAXIMUM FACILITY
**Florence, Colorado  81226**

| | |
|---|---|
| **INSTITUTION SUPPLEMENT** | **Number** : **FLM** 5580.06E |
| | **Date** : **February 2, 2005** |
| | **Subject** : **Inmate Personal Property** |

1.  **PURPOSE AND SCOPE:**  It is the policy of the Bureau of Prisons and United States Penitentiary, Administrative Maximum, that inmates may possess only such property as authorized for retention as defined in the national program statement. This supplement must be read in conjunction with national directives for a clear understanding of policy. This supplement provides guidelines for inmate personal property.

2.  **DIRECTIVES AFFECTED:**

    A.  Directives Rescinded:

    *       Institution Supplement FLM 5580.6D, Inmate Personal Property, dated August 29, 2003.                                                                                      *

    B.  Directives Referenced:

    Program Statement 1315.07, Inmate Legal Activities, dated November 5, 1999.

    Program Statement 5270.07, Inmate Discipline and Special Housing Units, dated December 29, 1987.

    Program Statement 5350.27, Inmate Manuscripts, dated July 27, 1999.

    Program Statement 5580.06, Inmate Personal Property, dated July 19, 1999.

3.  **STANDARDS REFERENCED:**

    *   American Correctional Association Standards 4-4163, 4-4164, 4-4166, 4-4268, 4-4269, 4-4336.                                                                                 *

4.    **LIMITATIONS ON INMATE PERSONAL PROPERTY:**

\*     A.    <u>Storage Space</u>: Each individual cell shall be furnished with a concrete bed, in addition to a concrete stool, desk and TV shelf. No other furnishings or shelves are authorized. Beds will be made hospital style.

The amount of personal property allowed each inmate will be limited to those items which can be neatly and safely placed in storage. Inmates housed in K-A Unit will be issued lockers for storage. Under no circumstances will any materials referred to in this policy be accumulated to the point where they become a fire, sanitation, security, or housekeeping hazard.                                                    \*

In order to define what a "reasonable" amount of property is, it shall be interpreted narrowly as meaning <u>all authorized items that can be neatly stored in the inmate's cell, not to exceed the authorized limits (see Attachment 1).</u>

The amount of personal property allowed inmates admitted to the institution hospital will be limited to current legal cases and approved hygiene articles. Any other items of personal property will have to be approved by the Health Services Administrator, Captain or their designee.

Inmates will not be permitted to possess steel toe shoes of any kind. Safety shoes issued to UNICOR inmates will be worn and maintained in the UNICOR area only.

B.    <u>Institution Issue Clothing</u>: Refer to Attachment 1, Section 1 of this supplement or Institution Supplement entitled Laundry Procedures.

C.    <u>Special Purpose Items</u>: Special purpose items will be authorized only to the point where they can be contained in the storage area provided for personal property. All requests for special purpose items, which are ordered from outside sources, must be approved and signed by the approving official. Individual vendor orders shall not exceed more than three per inmate per month.

\*     Requests to purchase watches (no metal backs), shoes (white, black or black and white), and other items must be approved by the appropriate Unit Manager. After the initial purchase, additional purchases will be made on an exchange basis only. An inmate may possess or own only one (1) approved watch at any time. Proof of ownership through the Inmate Personal Property Form, BP-383, and/or commissary receipts will be required. All excess watches must be turned in for disposition (mailed home at the inmate's expense or otherwise disposed of).                       \*
When an inmate desires to purchase one of the above items, he will submit an Athletic Shoe, Watch and Headphone Order Form to the Unit Counselor. The Unit

FLM 5580.06E
Inmate Personal Property
Page 3

Counselor will determine if the inmate is eligible to purchase the item, by reviewing the inmate's property forms.  If eligible, the form may be approved by the Unit Manager. If the inmate is not eligible to purchase the item, the Unit Counselor will return the form to the inmate stating why he cannot make the purchase.  All special purchase orders over $100 must be approved in writing by the Warden.  A copy of all major items purchased from the institution commissary, received through the mail or received through any other approved source, will be maintained in the inmate's central file or in the commissary.

D.   Legal Material: Inmates may be allowed to maintain legal material necessary for current legal actions.  Personal legal books may be retained if they are not available in the institution's legal library or cannot otherwise be obtained by the institution for the use of the inmate population. The amount of storage space provided for legal materials is dependent upon the total storage space available,  and legal materials will be limited to the amount that can be neatly stored in the inmate's cell. Ordinarily, the total amount of legal materials will be limited to a level of three (3) cubic feet per inmate.  Personal legal books will count toward this limitation.  In no case shall the amount of personal legal materials be such as a to pose a fire, sanitation, security, or housekeeping hazard.

*       An inmate who claims a need for additional storage space in connection with current legal activities, may be provided space by his unit team on a temporary basis. The institution attorney should be consulted if there is a question concerning excess legal material.                                                                                        *

E.   Hobby Craft: Hobby craft projects, authorized by the Education Department, Unit Managers and the Captain, will be limited to two (2) projects at a time. The projects must be mailed home at the inmate's expense immediately upon completion. Purchase of approved hobby craft materials will be requested by submitting a Weekly (or Quarterly) Hobby Craft Order Form to the Unit Manager.  Prohibited colors (dark blue, black, red, camouflage) for clothing items outlined in the national directive will also be applied to hobby craft yarn.

F.   Commissary Items:  Each inmate will be issued an inmate account card which will be used to identify the inmate when commissary purchases are delivered to or picked up by the inmate.  Commissary items found in excess of the amounts established on this commissary slip or not in their original containers will be considered contraband and confiscated.  All items sold by the commissary are subject to the approval of the Warden.

One (1) box of sugar cubes is authorized to be purchased at one time and only one (1) box is authorized in the cell.  The total amount of consumable commissary that

an inmate is allowed in his assigned cell will not exceed the current possession and/or spending limit (Attachment 1), including new arrivals with commissary items from their previous institution.

G.    Correspondence and Reading Materials: Education materials for current correspondence courses are exempt from property limits.   However, once completed, all associated books and materials will be removed from the housing units and returned to the Education Department, or if personal, mailed out at the inmate's expense. Education books and materials are to be limited to those issued to him, or approved by the Education Department. Books will also be provided by the Education Department on an exchange basis and will be limited to the amount approved by that department.

Institution copies of newspapers may be issued in the housing units, with select magazines and books available for checkout upon request.  Copies may also be provided for inmates confined in the institution hospital, upon request.

Personally owned books should be purchased pursuant to the Institution Supplement on Incoming Publications.

Personal compositions, manuscripts and correspondence filed in authorized folders, must be properly organized and limited to two (2). Contraband materials concealed in such folders will result in confiscation of the entire folder and its contents. Personal papers and correspondence will be limited to one (1) cubic foot. Manuscripts must not create a fire hazard, a housekeeping problem, or a security concern because of excess paper.

H.    Religious Items: In cooperation with the Captain, Religious Services will make the final determination concerning authorized items as they relate to religious practice (i.e. medallions, pamphlets, etc). Hobby craft, or items utilized for other than their intended purpose, will not be considered authorized, although religious in nature. See Attachment 1, Section 5, for authorized items. Inmates do not have to prove a religious preference in order to possess most religious items, such as bandannas. Religious medallions must be non-metallic, with the exception that all metallic items already in possession of an ADX inmate are authorized while housed at this facility. New inmate arrivals will be permitted non-metallic medallions only.

I.    Radios and Televisions:   Inmates are issued one radio/television unit, one headset/earphone, one headphone extension cord (if needed), and one headphone adapter (if needed).

Radio/television units will only be utilized with headsets/earphones. Inmates who abuse radio and television privileges will be subject to disciplinary action and suspension of these privileges.

Inmates in Disciplinary Segregation status will <u>NOT</u> be issued a radio or television, regardless of their actual housing assignment.

J.    <u>Eyeglasses</u>: Inmates may possess only two pairs of corrective eyeglasses, unless a <u>written</u> exception, is provided by health services staff. Due to security concerns, eyeglass frames must be made of plastic and not contain metal reinforcement. However, if an inmate arrives with eyeglasses containing metal, he will be allowed to retain these glasses until new eyeglasses are received. Staff will note the inmate is in possession of metal-containing eyeglass frames in the medical record and personal property form.

During intake screening, health services staff will determine if eyeglasses need to be replaced. If eyeglasses must be replaced, an appointment for examination by the optometrist will be scheduled at that time. If an inmate has a prescription for eyeglasses which is not more than 6 months old, an appointment will not be scheduled and the replacement glasses will be ordered from the existing prescription. Upon receipt of the new pair, health services staff will deliver and exchange the eyeglasses. The frames containing metal will be given to R&D staff for disposition.

Any staff member who identifies an inmate who has altered his eyeglass frames should notify health services staff. Medical staff will interview the inmate and new frames will be ordered for replacement. The inmate will be informed that any future altering of eyeglasses will result in an incident report. If the altered frames appear to be weapon-like or other security threat, they will be confiscated immediately and an incident report prepared.

Broken frames should be confiscated and returned to the health services department. Discretion is urged when enforcing this policy. If the frames appear to be temporarily mended, the inmate or medical staff are to be queried to determine if health services staff have allowed him to keep the glasses until the new frames arrive, which should be documented on a Medical Duty Status form.

K.    <u>Restrictions</u>:

1.    No unauthorized item will be used as a shower curtain, floor covering or hung from cell bars. Cell bars will be kept clear of all items.

2.      Items such as metal or thick plastic notebook covers/rings/binding, paper clips, paper fasteners, rubber bands, plastic wrapping, etc., will not be issued or in the possession of inmates.  Such items will be considered contraband, and be disposed of, when discovered.

3.      No item of any type will be taped, pasted or otherwise affixed to walls, doors, windows or bars.

4.      Accumulation of institutional condiments, paper cups, food, etc., will not be tolerated.  All accumulated items will be considered nuisance contraband and taken.  Disciplinary action may be taken, as deemed appropriate, by staff.

5.      All altered institution-issued or personally owned items, such as clothing, toothbrushes, etc., will be confiscated and an incident report written.

6.      Maps showing specific or detailed routes within the North American Continent will be reviewed on a case-by-case basis for suitability by ISM or Correctional Services staff, with special concern for any maps showing detail of areas housing any federal correctional facilities.  For example, a map of Colorado may be considered for approval, but a detailed map of Fremont County would likely be unauthorized.

7.      No liquid materials considered to be fire hazards will be kept in the cell.

8.      Empty containers or containers with something other then what was originally in them, such as milk or juice cartons, ice cream containers, plastic bottles, plastic bags, etc. are considered as nuisance contraband and will be disposed of.

9.      Ball-point ink pens having a metal filler are not permitted.   Only pens approved and sold in the Commissary are authorized for inmate use.

*       10.     Personal clothing to include ball caps, sweat suits, will be plain gray or white in color.  Tennis shoes must be predominately white or black.  All other colors will be considered contraband with the exception of religious headgear, which is subject to the approval of the Chaplain, in conjunction with the Captain.                                                                          *

11.     Local area phone books (Fremont, Pueblo and El Paso counties) with residential listings or area maps will not be permitted.  Yellow pages

(business listings) with a demonstrated need may be retained upon approval of unit staff.

12.   Any individual item with a value of $100.00 or more must have written authorization by the Warden.

13.   The selling, trading, borrowing, loaning, passing, or presenting of any items of personal property to an inmate by a staff member or other inmate is prohibited.

14.   Personal locks are not authorized in the institution.

15.   Cards, dominoes, checkers, chess, etc., are the property of the Recreation Department and are to be issued by the Unit Officer.  They are not to be retained in an inmate's property if his property is packed up.

L.   Completion of BP-383, Inmate Personal Property Record:  When completing the BP-383, staff shall be precise in the description of property items, i.e.; instead of a "lot" of letters, 15 personal letters; instead of one watch, one plastic Timex watch. This form should be completed anytime an inmate's housing (except within same unit) or admission/release status changes.

5.   **CONTRABAND:**

A.   Definition: Contraband will be defined in accordance with the national directive on Inmate Personal Property.

B.   Items of Value: Confiscation of articles, such as excess/unauthorized watches or cigarettes, will normally result in an incident report. In such cases, the item(s) will be retained for 120 days to allow for an appeal.

All items of value will be tagged with the inmate's name and register number, and then stored in the Captain's designated area until destroyed or mailed. If the property is mailed, the inmate will sign for the property and furnish the name and address of the recipient in the space provided.

C.   Evidence: Contraband, such as narcotics and weapons which are to be retained for evidence in prosecutable cases, will be stored in the evidence section of the Captain's Office during non-business hours; however, during normal working hours, evidence will be turned over to the SIS Office for retention by the SIA.  All contraband held as evidence will be coordinated through the Special Investigative Agent.

_____6.    **DOCUMENTATION AND STORAGE**:

*        Receiving and Discharge and the Special Housing Unit will maintain a copy of all completed BP-383's for a period of two years, after the inmate's transfer or release. These forms shall be filed chronologically, allowing easy identification of those forms over two years old. For SHU only, the initial inventory will be completed on the BP-383, then all other subsequent property transactions will be completed on Attachment 2.        *

The personal property of inmates departing the institution on writ or medical transfer will be inventoried and placed in storage in Receiving and Discharge during the inmate's absence.

7.    **DEATH OF AN INMATE**:

Upon notification of the death of an inmate, Correctional Services staff will collect all personal property, inventory it and record all the property on the BP-383. The property will be forwarded to R&D, then packed and mailed to the individual listed as next-of-kin in the inmate's central file. The completed property form will be placed in the inmate's central file. Receiving and Discharge will maintain a copy of the completed BP-383 for a period of two years. The Unit Manager will be responsible for preparing a letter for the Warden's signature which will be sent before the property is mailed. Property belonging to a deceased inmate with no next-of-kin or whose property is returned will be treated as voluntarily abandoned.

8.    **AUTHORIZED PROPERTY STORAGE AREAS:**

The only authorized storage areas for inmate personal property will be the property rooms in the Receiving and Discharge and Special Housing areas.

Specifically, when inmates are admitted to the Special Housing Unit, personal property not authorized for retention in the Special Housing Unit will be stored in the Special Housing Unit property room. The issuing staff member will be responsible for ensuring accountability and storage of the property.

9.    **OFFICE OF PRIMARY INTEREST:**  Inmate Systems Manager

_____**Robert A. Hood, Warden**                              **Date**

**DISTRIBUTION:**

**Directives Libraries**                              **Correctional Services, NCR**

**FLM 5580.06E**
**Inmate Personal Property**
**Page 9**

**All Department Heads**
**Associate Warden (Programs)**
**Associate Warden (Operations)**

**Inmate Systems, NCR**
**AFGE**

# APPROVED PROPERTY LIST FOR ALL HOUSING UNITS
### AN ASTERISK (*) DENOTES A CHANGE, ADDITION, OR CLARIFICATION IN WORDING

\* **Part 1 - INSTITUTION ISSUE (In addition to personally owned items) - Clothing must be moved with any inmate transferring from one unit to another, with the exception of a move to the Special Housing Unit. Laundry will provide a bed roll for inmates moving from one unit to another** \*

| | | | |
|---|---|---|---|
| 1 | Adapter, TV (for headphones, if needed) | 1 | Pillow |
| 1 | Belt **(K Unit Only)** | 2 | Pillow Cover |
| 3 | Blanket (wool or limit 2 thicker non-wool) | 1 | Radio Unit **(SHU A/D only)** |
| 1 | Box, Cardboard (3'x1'x1', for legal paperwork only) | 4 | Sheets, Bed |
| 6 | Envelopes (pre-stamped with return address) | 1 | Shoes, Deck (pair) **(SHU, B and H Units only)** |
| 1 | Cup (brown plastic) | 1 | Shoes, Safety (pair) **(KA Unit UNICOR only, maintained in UNICOR factory)** |
| 1 | Fork/Spoon Combo (plastic) | | |
| 1 | Ice Bucket | 1 | Shoes, Velcro/Lace-up (pair) |
| 1 | Gloves (pair, white, full-fingered, winter only) | 1 | Shower Curtain |
| 1 | Headphone Cord Extension | 1 | Shower Mat |
| 2 | Jump Suit (orange, no snaps) **(H Unit only)** | 5 | Socks (pair) |
| 3 | Khaki Shirt **(4 for K Unit)** | 1 | Television/Radio Unit **(except SHU)** |
| 3 | Khaki Pants **(4 for K Unit)** | 4 | Towels |
| 1 | Knit Hat | 1 | Trash Can |
| 2 | Laundry Bag | 5 | Undershorts (boxer) |
| 3 | Library Book | 5 | Undershirt |
| 1 | Mattress (excess with signed medical slip only) | 4 | Wash Cloth |
| 2 | Mattress Cover | 1 | Winter Coat (winter only, kept in unit, not in cell) |
| 1 | Pencil **(SHU only)** | 1 | Window Covering |

**Part 2 - PUBLICATIONS, CORRESPONDENCE & PAPERWORK - See section 4, paragraphs D and G of supplement**

| | |
|---|---|
| 8 | Book (leisure, religious, reference, etc.) **(limit of 3 in SHU)** (See note at end of attachment for cover policy. Personal legal books are not included in this limit, but counted instead as part of the three (3) cubic feet limit of legal papers. Approved and current Education courses are also exempt from this limit.) |
| 3 | Newspaper (NO date limitation) |
| 3 | Magazine (NO date limitation. See note at end of attachment for nude or sexually explicit materials) |
| 20 | Personal Letter **(Limit of 10 in SHU)** |
| 1 | Cubic Foot Personal Papers (example: receipts, property forms, etc.) |
| 3 | Cubic Feet Legal Papers. (No excess unless approved by the Institution Attorney.) |
| 60 | Stamp, Postage (First class or various denominations, not to exceed value of 60 first class stamps) |

**Part 3 - COMMISSARY PERISHABLES (Must be in original packaging to retain) - See section 4, paragraph F of this supplement. D/S is prohibited from these items. Incoming inmates (returns or transfers) will also be restricted to these limits.**

| B Unit | D/E/F/G Units | *H Unit | J/K Units | SHU A/D | Item |
|---|---|---|---|---|---|
| 10 | 10 | 0 | 14 | 5 | Candy Bar (single) |
| 4 | 6 | 2 | 8 | 2 | Chips/Popcorn (package) |
| 5 | 7 | 2 | 8 | 2 | Cookies/Crackers (package) |
| 5 | 8 | 2 | 10 | 5 | Drink Packet |
| 2 | 7 | 2 | 8 | 2 | Fruit, Dried (package) |
| 10 | 10 | 2 | 10 | 5 | Fruit Juice |
| 1 | 1 | 0 | 1 | 1 | Hot Sauce |
| 7 | 7 | 7 | 7 | 7 | Kosher Meal |
| 6 | 10 | 2 | 15 | 8 | Meat/Cheese/Condiment (package) |
| 1 each | 1 each | 1 each | 1 each | 1 each | Medicine, Over-The-Counter (package) |
| 8 | 8 | 2 | 10 | 5 | Nuts/Candy (package) |
| 10 | 15 | 0 | 15 | 5 | Pastry |
| 10 | 14 | 2 | 20 | 7 | Soups/Rice |
| 1 | 1 | 1 | 1 | 1 | Sugar Cubes (box) |
| 1 each | 1 each | 1 each | 1 each | 1 each | Vitamins (bottle) |
| 6 total | 8 total | 2 total | 15 total | 8 total | Miscellaneous (anything else, including jelly, honey, peanut butter, pickles, beans, peppers, tortillas, seasoning, sauce, oatmeal, etc.) |

**\*Part 4 - RELIGIOUS ARTICLES - See section 4, paragraph H of this supplement. Religious medallions must be non-metallic. All metallic items previously in possession of an ADX inmate are authorized while inmate is housed at ADX. New arrivals permitted non-metallic only. \***

| | | | |
|---|---|---|---|
| 2 | Head Gear, Religious (Native-American Bandanna, Rastafarian Crown, Islamic Kufi or Jewish Yarmulke) | 1 | Medallion, Religious (see note above for material) |
| 1 | Incense Stick (pack) | | |

# APPROVED PROPERTY LIST FOR ALL HOUSING UNITS

**AN ASTERISK (*) DENOTES A CHANGE, ADDITION, OR CLARIFICATION IN WORDING**

| | |
|---|---|
| 8 | Pamphlet/Brochure, Religious (in addition to books outlined in Part 2) |
| 1 | Prayer Beads |
| 2 | Prayer Oil (½ or 1 ounce) |
| 1 | Prayer Rug |

**ANY ITEM NOT ON THIS LIST IS CORRECTLY ASSUMED TO BE UNAUTHORIZED**

Exhibit A-2

# APPROVED PROPERTY LIST FOR ALL HOUSING UNITS

**AN ASTERISK (*) DENOTES A CHANGE, ADDITION, OR CLARIFICATION IN WORDING**

**Part 5 - PERSONAL CLOTHING (In addition to institution issue) - See section 4, paragraphs C and J of this supplement**

| | | | |
|---|---|---|---|
| 1 | Athletic Supporter | 2 | Shoelaces (pair, 54" or less) (except D/S) |
| 1 | Cap, Baseball (white/grey only, no logo) (except D/S) | 1 | Shower Cap |
| | | 3 | Socks (pair, white only) |
| 1 | Gloves (pair, workout or work) (except D/S) | 1 | Sweat Band (except D/S) |
| 5 | Handkerchief (white only) | 2 | Sweat Pants (white/grey only) |
| 1 | Handkerchief (non-white from commissary) | 2 | Sweat Shirt (white/grey only) |
| 2 | Shorts (gym, white/grey only) | 3 | Thermals (sets, white/grey only) |
| 1 | Shoes, Shower (pair) | 5 | Undershorts (white, boxer-type) |
| 2 | Shoes, Tennis (pair, predominately white/black only) (limit one pair in SHU)* | 3 | Undershirts (crew type, white/grey only) |
| | | 3 | Undershirts (tank type, white/grey only) |

**Part 6 - MISCELLANEOUS PERSONAL PROPERTY - See section 4, paragraphs C, I, J and K of this supplement**

| | | | |
|---|---|---|---|
| 1 | Address Book | 1 | Headset (over the ear or ear bud type) |
| 1 | Aftershave | 1 | Insect Repellant |
| 1 | Bowl (plastic) | 1 | Kleenex (pack) |
| 1 | Calendar or Date Book (no metal or hard binding, current year only - prior years count as personal papers under part 2) | 10 | Lotion Packet (body) |
| | | 1 | Lotion (body) |
| | | 1 | Mouthwash |
| 1 | Conditioner, Hair | 2 | Pencil (writing) |
| 1 | Comb (plastic) | 2 | Pen (black/blue ink, no metal refill) |
| 1 | Cotton Swabs (pack) | 25 | Photo (12 per mailing, loose, 8"x10" or less, no polaroid or nude/sexually explicit) |
| 1 | Cup, Drink (institution issue or personal) | | |
| 1 | Cup, Shaker or Quart | 1 | Photo Album (full, photos less than 8"x10") (except D/S) |
| 1 | Cup, Insulated (less than 24 ounces) | | |
| 1 | Dental Picks (pack) | 1 | Plaque Rinse |
| 1 | Dentures (set) | 1 | Powder, Bath |
| 1 | Denture Bath | 2 | Shampoo |
| 1 | Denture Brush | 2 | Shaving Cream |
| 1 | Denture Cream | 2 | Soap (bar or liquid) |
| 2 | Deodorant | 1 | Soap Dish |
| 1 | Earplugs (pair) | 1 | Spoon (plastic) |
| 20 | Envelope | 1 | Sun Block (lotion) |
| 1 | Eyeglasses (no metal, includes prescription sunglasses.  See note at end.) | 1 | Toothbrush (4 inch, no case) |
| | | 2 | Toothpaste |
| 1 | Eyeglass Case (no metal) | 1 | Watch (plastic with velcro band) |
| 1 | Hairbrush (plastic) | 1 | Wedding band (plain, no stones) |
| 1 | Hair Pomade/Gel | 2 | Writing Pad |

**\*Part 7 - HOBBY CRAFT - (hobby craft is only authorized in SHU for GP inmates) - See section 4, paragraph E of this supplement**
*

| | | | |
|---|---|---|---|
| 15 | Beads, Pony (package, 6mm x 9mm) | 1 | Eraser, Art (gum) |
| 1 | Crochet Hook (h-hook, plastic) | 6 | Paint Brush, Watercolor |
| 1 | Crochet Hook (I-hook, plastic) | 12 | Paper Stump, Gray, various sizes |
| 1 | Crochet Needle (3", plastic) | 84 | Pastels (drawing pencils or sticks) |
| 1 | Drawing Board (24" x 30") | 60 | Pencil (colored, drawing) |
| 3 | Drawing Pad (50 sheets) | 36 | Watercolors, Dry Cake |
| 3 | Drawing Paper (of each color, loose sheets) | 30 | Yarn (skeins; no dark blue, black, or red) |

**HARDCOVER BOOKS**  Personally owned hardcover books <u>currently</u> in possession of the inmate <u>are authorized</u>, including those received in incoming property for inmate transfers. Subsequent books will be received in soft cover form <u>only</u> pursuant to the Institution Supplement on Incoming Publications.

**MEDICATIONS / MEDICAL SUPPLIES / EYEGLASSES**  Approved items issued by and verified with the Health Services Department only.  Excess or expired prescription medications are to be given to the Pharmacist for final determination and plainly noted on the BP-383 as such.  Eyeglasses will be handled in accordance with section 4, paragraph J of this supplement.

**NUDE / SEXUALLY EXPLICIT PUBLICATIONS**  Publications <u>currently</u> in possession of inmate <u>are authorized</u>, regardless of issue date, although still subject to possession limits.  Questionable publications should be referred to the ISM, Assistant ISM, or if after normal hours, the Shift Lieutenant.
*

## ANY ITEM NOT ON THIS LIST IS CORRECTLY ASSUMED TO BE UNAUTHORIZED

**PROPERTY RESTRICTION**   All inmates placed on a "property restriction" sanction shall be permitted only those personal hygiene items necessary to maintain proper hygiene standards: 1 toothbrush, 1 toothpaste, 1 soap, 1 shampoo.  Other items will be issued only at the discretion of the Shift Lieutenant.

**SEWING KITS / CLOTHING REPAIRS**   Sewing kits are not authorized for possession or institution issue.  The ADX laundry will make repairs (machine stitching only, no patches or alterations) to personal sweat pants, sweat shirts, gym shorts, thermal underwear and T-shirts.  Personal socks and hats cannot be repaired by the Laundry Department.  Laundry staff will make the determination whether or not clothing items are repairable.

**ANY ITEM NOT ON THIS LIST IS CORRECTLY ASSUMED TO BE UNAUTHORIZED**

Exhibit A-2

FLM 5580.06E
Attachment 2
Page 1 of 1

**ADX FLORENCE, COLORADO**
**SPECIAL HOUSING UNIT**
**PROPERTY ISSUE FORM**

_____ A/D TO D/S
_____ D/S TO A/D
_____ PROPERTY RE-ISSUE

DATE:_____

| ITEM | AMOUNT |
|------|--------|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

INMATE NAME PRINTED:_____

INMATE SIGNATURE:_____

INMATE NUMBER:_____

ISSUING STAFF:_____

**ANY ITEM NOT ON THIS LIST IS CORRECTLY ASSUMED TO BE UNAUTHORIZED**

Exhibit A-2

# ATTACHMENT 3

```
   FLMFT  531.01 *            INMATE HISTORY            *      04-16-2010
   PAGE 001       *             ADM-REL                *      11:08:45

    REG NO..: 03029-036 NAME....: GEORGACARAKOS, PETER N
    CATEGORY: ARS        FUNCTION: PRT        FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| FLM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-16-2006 1044 | CURRENT |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-16-2006 1244 | 03-16-2006 1244 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-16-2006 0930 | 03-16-2006 1244 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 03-16-2006 0830 | 03-16-2006 0830 |
| OKL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 03-13-2006 1835 | 03-16-2006 0830 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-13-2006 1935 | 03-13-2006 1935 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-13-2006 0939 | 03-13-2006 1935 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 03-13-2006 0939 | 03-13-2006 0939 |
| LEW | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 03-08-2006 1542 | 03-13-2006 0939 |
| 3-D | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-08-2006 1542 | 03-08-2006 1542 |
| 3-D | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-08-2006 0913 | 03-08-2006 1542 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 03-08-2006 0913 | 03-08-2006 0913 |
| LEW | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 03-06-2006 1604 | 03-08-2006 0913 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-06-2006 1604 | 03-06-2006 1604 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-06-2006 0835 | 03-06-2006 1604 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 03-06-2006 0735 | 03-06-2006 0735 |
| OKL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 03-02-2006 1845 | 03-06-2006 0735 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-02-2006 1945 | 03-02-2006 1945 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-02-2006 0707 | 03-02-2006 1945 |
| FLM | FED WRIT | RELEASE ON FEDERAL WRIT | 03-02-2006 0507 | 03-16-2006 1044 |
| FLM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-21-2005 1138 | 03-02-2006 0507 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-21-2005 1338 | 07-21-2005 1338 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-21-2005 1000 | 07-21-2005 1338 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 07-21-2005 0900 | 07-21-2005 0900 |
| OKL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 07-05-2005 1845 | 07-21-2005 0900 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-05-2005 1945 | 07-05-2005 1945 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-05-2005 0535 | 07-05-2005 1945 |
| FLM | FED WRIT | RELEASE ON FEDERAL WRIT | 07-05-2005 0335 | 07-21-2005 1138 |
| FLM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-21-2004 1123 | 07-05-2005 0335 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-21-2004 1323 | 05-21-2004 1323 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-21-2004 0900 | 05-21-2004 1323 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 05-21-2004 0800 | 05-21-2004 0800 |
| OKL | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 05-17-2004 2025 | 05-21-2004 0800 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-17-2004 2125 | 05-17-2004 2125 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-17-2004 0833 | 05-17-2004 2125 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 05-17-2004 0833 | 05-17-2004 0833 |
| LEW | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 05-14-2004 1415 | 05-17-2004 0833 |
| 3-D | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-14-2004 1415 | 05-14-2004 1415 |
| 3-D | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-14-2004 0835 | 05-14-2004 1415 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 05-14-2004 0835 | 05-14-2004 0835 |
| LEW | A-HLD | HOLDOVER, TEMPORARILY HOUSED | 04-19-2004 1750 | 05-14-2004 0835 |

```
   G0002       MORE PAGES TO FOLLOW . . .
```

Exhibit A-2

```
    FLMFT   531.01 *              INMATE HISTORY              *        04-16-2010
    PAGE 002        *                ADM-REL                 *        11:08:45

    REG NO..: 03029-036 NAME....: GEORGACARAKOS, PETER N
    CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL   ASSIGNMENT DESCRIPTION                          START DATE/TIME STOP  DATE/TIME
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL         04-19-2004 1750 04-19-2004 1750
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        04-19-2004 0845 04-19-2004 1750
OKL   HLD REMOVE HOLDOVER REMOVED                      04-19-2004 0745 04-19-2004 0745
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED          04-16-2004 1500 04-19-2004 0745
A02   RELEASE    RELEASED FROM IN-TRANSIT FACL         04-16-2004 1600 04-16-2004 1600
A02   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        04-16-2004 0651 04-16-2004 1600
FLM   FED WRIT   RELEASE ON FEDERAL WRIT               04-16-2004 0451 05-21-2004 1123
FLM   A-DES      DESIGNATED, AT ASSIGNED FACIL         02-20-2004 1147 04-16-2004 0451
A02   RELEASE    RELEASED FROM IN-TRANSIT FACL         02-20-2004 1347 02-20-2004 1347
A02   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        02-20-2004 0835 02-20-2004 1347
OKL   HLD REMOVE HOLDOVER REMOVED                      02-20-2004 0735 02-20-2004 0735
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED          02-09-2004 1745 02-20-2004 0735
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL         02-09-2004 1845 02-09-2004 1845
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        02-09-2004 0739 02-09-2004 1845
LEW   HLD REMOVE HOLDOVER REMOVED                      02-09-2004 0739 02-09-2004 0739
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          02-04-2004 1825 02-09-2004 0739
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         02-04-2004 1825 02-04-2004 1825
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        02-04-2004 0815 02-04-2004 1825
LEW   HLD REMOVE HOLDOVER REMOVED                      02-04-2004 0815 02-04-2004 0815
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          02-02-2004 1817 02-04-2004 0815
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         02-02-2004 1817 02-02-2004 1817
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        02-02-2004 0741 02-02-2004 1817
LEW   HLD REMOVE HOLDOVER REMOVED                      02-02-2004 0741 02-02-2004 0741
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          01-30-2004 1718 02-02-2004 0741
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         01-30-2004 1718 01-30-2004 1718
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        01-30-2004 0803 01-30-2004 1718
LEW   HLD REMOVE HOLDOVER REMOVED                      01-30-2004 0803 01-30-2004 0803
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          01-29-2004 1640 01-30-2004 0803
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         01-29-2004 1640 01-29-2004 1640
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        01-29-2004 0735 01-29-2004 1640
LEW   HLD REMOVE HOLDOVER REMOVED                      01-29-2004 0735 01-29-2004 0735
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          01-28-2004 1742 01-29-2004 0735
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         01-28-2004 1742 01-28-2004 1742
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        01-28-2004 0800 01-28-2004 1742
LEW   HLD REMOVE HOLDOVER REMOVED                      01-28-2004 0800 01-28-2004 0800
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          01-26-2004 1847 01-28-2004 0800
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         01-26-2004 1847 01-26-2004 1847
3-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL        01-26-2004 0926 01-26-2004 1847
LEW   HLD REMOVE HOLDOVER REMOVED                      01-26-2004 0926 01-26-2004 0926
LEW   A-HLD      HOLDOVER, TEMPORARILY HOUSED          01-23-2004 1756 01-26-2004 0926
3-D   RELEASE    RELEASED FROM IN-TRANSIT FACL         01-23-2004 1756 01-23-2004 1756


    G0002      MORE PAGES TO FOLLOW . . .
```

Exhibit A-2

```
   FLMFT   531.01 *              INMATE HISTORY              *      04-16-2010
   PAGE 003         *              ADM-REL                   *      11:08:45

     REG NO..: 03029-036 NAME....: GEORGACARAKOS, PETER N
     CATEGORY: ARS       FUNCTION: PRT        FORMAT:

   FCL     ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP  DATE/TIME
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-23-2004 0754 01-23-2004 1756
   LEW     HLD REMOVE HOLDOVER REMOVED                01-23-2004 0754 01-23-2004 0754
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-22-2004 1753 01-23-2004 0754
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-22-2004 1753 01-22-2004 1753
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-22-2004 0759 01-22-2004 1753
   LEW     HLD REMOVE HOLDOVER REMOVED                01-22-2004 0759 01-22-2004 0759
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-21-2004 1747 01-22-2004 0759
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-21-2004 1747 01-21-2004 1747
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-21-2004 0734 01-21-2004 1747
   LEW     HLD REMOVE HOLDOVER REMOVED                01-21-2004 0734 01-21-2004 0734
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-20-2004 1740 01-21-2004 0734
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-20-2004 1740 01-20-2004 1740
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-20-2004 0738 01-20-2004 1740
   LEW     HLD REMOVE HOLDOVER REMOVED                01-20-2004 0738 01-20-2004 0738
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-16-2004 1530 01-20-2004 0738
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-16-2004 1530 01-16-2004 1530
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-16-2004 0741 01-16-2004 1530
   LEW     HLD REMOVE HOLDOVER REMOVED                01-16-2004 0741 01-16-2004 0741
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-15-2004 1726 01-16-2004 0741
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-15-2004 1726 01-15-2004 1726
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-15-2004 0743 01-15-2004 1726
   LEW     HLD REMOVE HOLDOVER REMOVED                01-15-2004 0743 01-15-2004 0743
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-14-2004 1754 01-15-2004 0743
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-14-2004 1754 01-14-2004 1754
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-14-2004 0734 01-14-2004 1754
   LEW     HLD REMOVE HOLDOVER REMOVED                01-14-2004 0734 01-14-2004 0734
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-13-2004 1740 01-14-2004 0734
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-13-2004 1740 01-13-2004 1740
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-13-2004 0743 01-13-2004 1740
   LEW     HLD REMOVE HOLDOVER REMOVED                01-13-2004 0743 01-13-2004 0743
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    01-05-2004 1708 01-13-2004 0743
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  01-05-2004 1708 01-05-2004 1708
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-05-2004 0847 01-05-2004 1708
   LEW     HLD REMOVE HOLDOVER REMOVED                01-05-2004 0847 01-05-2004 0847
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    09-11-2003 1251 01-05-2004 0847
   3-D     RELEASE    RELEASED FROM IN-TRANSIT FACL  09-11-2003 1251 09-11-2003 1251
   3-D     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-11-2003 0920 09-11-2003 1251
   LEW     HLD REMOVE HOLDOVER REMOVED                09-11-2003 0920 09-11-2003 0920
   LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED    06-30-2003 2007 09-11-2003 0920
   A01     RELEASE    RELEASED FROM IN-TRANSIT FACL  06-30-2003 2007 06-30-2003 2007
   A01     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-30-2003 1030 06-30-2003 2007


   G0002       MORE PAGES TO FOLLOW . . .
```

Exhibit A-2

```
   FLMFT  531.01 *              INMATE HISTORY            *     04-16-2010
   PAGE 004         *             ADM-REL                 *     11:08:45

    REG NO..: 03029-036 NAME....: GEORGACARAKOS, PETER N
    CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL    ASSIGNMENT DESCRIPTION                       START DATE/TIME STOP  DATE/TIME
OKL    HLD REMOVE HOLDOVER REMOVED                   06-30-2003 0930 06-30-2003 0930
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED       06-26-2003 1650 06-30-2003 0930
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL      06-26-2003 1750 06-26-2003 1750
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     06-26-2003 0628 06-26-2003 1750
FLM    FED WRIT   RELEASE ON FEDERAL WRIT            06-26-2003 0428 02-20-2004 1147
FLM    A-DES      DESIGNATED, AT ASSIGNED FACIL      05-23-2002 1102 06-26-2003 0428
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL      05-23-2002 1302 05-23-2002 1302
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     05-23-2002 0900 05-23-2002 1302
OKL    HLD REMOVE HOLDOVER REMOVED                   05-23-2002 0800 05-23-2002 0800
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED       05-20-2002 1710 05-23-2002 0800
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL      05-20-2002 1810 05-20-2002 1810
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     05-20-2002 1018 05-20-2002 1810
LEW    HLD REMOVE HOLDOVER REMOVED                   05-20-2002 1018 05-20-2002 1018
LEW    A-HLD      HOLDOVER, TEMPORARILY HOUSED       03-22-2002 1132 05-20-2002 1018
3-D    RELEASE    RELEASED FROM IN-TRANSIT FACL      03-22-2002 1132 03-22-2002 1132
3-D    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     03-22-2002 0855 03-22-2002 1132
LEW    HLD REMOVE HOLDOVER REMOVED                   03-22-2002 0855 03-22-2002 0855
LEW    A-HLD      HOLDOVER, TEMPORARILY HOUSED       03-11-2002 1734 03-22-2002 0855
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL      03-11-2002 1734 03-11-2002 1734
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     03-11-2002 1000 03-11-2002 1734
OKL    HLD REMOVE HOLDOVER REMOVED                   03-11-2002 0900 03-11-2002 0900
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED       03-07-2002 1645 03-11-2002 0900
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL      03-07-2002 1745 03-07-2002 1745
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     03-07-2002 0730 03-07-2002 1745
FLM    FED WRIT   RELEASE ON FEDERAL WRIT            03-07-2002 0530 05-23-2002 1102
FLM    A-DES      DESIGNATED, AT ASSIGNED FACIL      02-12-1998 1213 03-07-2002 0530
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL      02-12-1998 1413 02-12-1998 1413
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     02-12-1998 0930 02-12-1998 1413
OKL    HLD REMOVE HOLDOVER REMOVED                   02-12-1998 0830 02-12-1998 0830
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED       02-09-1998 1810 02-12-1998 0830
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL      02-09-1998 1910 02-09-1998 1910
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     02-09-1998 0700 02-09-1998 1910
LEW    TRANSFER   TRANSFER                           02-09-1998 0700 02-09-1998 0700
LEW    A-DES      DESIGNATED, AT ASSIGNED FACIL      04-08-1996 1954 02-09-1998 0700
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL      04-08-1996 1954 04-08-1996 1954
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     04-08-1996 1952 04-08-1996 1954
ALP    TRANSFER   TRANSFER                           04-08-1996 1952 04-08-1996 1952
ALP    A-DES      DESIGNATED, AT ASSIGNED FACIL      12-22-1995 1525 04-08-1996 1952
5-T    RELEASE    RELEASED FROM IN-TRANSIT FACL      12-22-1995 1525 12-22-1995 1525
5-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL     12-20-1995 1033 12-22-1995 1525
ALP    STATE WRIT RELEASE ON STATE WRIT              12-20-1995 1033 12-22-1995 1525


   G0002       MORE PAGES TO FOLLOW . . .
```

```
    FLMFT  531.01 *              INMATE HISTORY              *      04-16-2010
    PAGE 005 OF 005 *               ADM-REL                 *      11:08:45

    REG NO..: 03029-036 NAME....: GEORGACARAKOS, PETER N
    CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL     ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP  DATE/TIME
ALP     A-DES      DESIGNATED, AT ASSIGNED FACIL  06-15-1995 1528 12-20-1995 1033
5-S     RELEASE    RELEASED FROM IN-TRANSIT FACL  06-15-1995 1528 06-15-1995 1528
5-S     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-15-1995 1400 06-15-1995 1528
ALM     TRANSFER   TRANSFER                       06-15-1995 1400 06-15-1995 1400
ALM     A-DES      DESIGNATED, AT ASSIGNED FACIL  03-13-1995 1014 06-15-1995 1400
ALM     ADM CHANGE RELEASE FOR ADMISSION CHANGE   03-13-1995 1013 03-13-1995 1014
ALM     A-DES      DESIGNATED, AT ASSIGNED FACIL  03-13-1995 0926 03-13-1995 1013
A01     RELEASE    RELEASED FROM IN-TRANSIT FACL  03-13-1995 0926 03-13-1995 0926
A01     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-13-1995 0720 03-13-1995 0926
LEW     TRANSFER   TRANSFER                       03-13-1995 0720 03-13-1995 0720
LEW     A-DES      DESIGNATED, AT ASSIGNED FACIL  07-02-1993 1402 03-13-1995 0720
S05     RELEASE    RELEASED FROM IN-TRANSIT FACL  07-02-1993 1402 07-02-1993 1402
S05     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-02-1993 0525 07-02-1993 1402
RBK     TRANSFER   TRANSFER                       07-02-1993 0525 07-02-1993 0525
RBK     A-DES      DESIGNATED, AT ASSIGNED FACIL  08-27-1992 1440 07-02-1993 0525
S10     RELEASE    RELEASED FROM IN-TRANSIT FACL  08-27-1992 1440 08-27-1992 1440
S10     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-27-1992 0540 08-27-1992 1440
LEW     HLD REMOVE HOLDOVER REMOVED               08-27-1992 0540 08-27-1992 0540
LEW     A-HLD      HOLDOVER, TEMPORARILY HOUSED   08-03-1992 1817 08-27-1992 0540
A01     RELEASE    RELEASED FROM IN-TRANSIT FACL  08-03-1992 1817 08-03-1992 1817
A01     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-03-1992 0730 08-03-1992 1817
ERE     HLD REMOVE HOLDOVER REMOVED               08-03-1992 0630 08-03-1992 0630
ERE     A-HLD      HOLDOVER, TEMPORARILY HOUSED   07-23-1992 2030 08-03-1992 0630
0-P     RELEASE    RELEASED FROM IN-TRANSIT FACL  07-23-1992 2130 07-23-1992 2130
0-P     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-10-1992 1030 07-23-1992 2130
CBN     ADMIN REL  ADMINISTRATIVE RELEASE         07-10-1992 1030 07-10-1992 1030
CBN     A-ADMIN    ADMINISTRATIVE ADMISSION       07-10-1992 1025 07-10-1992 1030
0-P     RELEASE    RELEASED FROM IN-TRANSIT FACL  07-10-1992 1025 07-10-1992 1025
0-P     A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-09-1992 1534 07-10-1992 1025
CBN     ADMIN REL  ADMINISTRATIVE RELEASE         07-09-1992 1534 07-09-1992 1534
CBN     A-ADMIN    ADMINISTRATIVE ADMISSION       07-09-1992 1517 07-09-1992 1534

    G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# ATTACHMENT 4

U.S. Department of Justice

Federal Bureau of Prisons

**Inmate Personal Property Record—**

**Institution:** _ADX FLORENCE_

| 1. Name: GEORGACARAKOS, PETER N. | 2. Register Number: 03094-039 | 3. Unit: F | 4. Date and Time of Inventory 3-1-06  2:45 |
|---|---|---|---|

5. Purpose of Inventory (check one that applies); Date and Time of Action: 3-1-06  2:45

a.___ Admission   b.___ Hospital   c._X_ Writ   d.___ Transfer   e.___ Detention   f.___ Release

g.___ Incoming package   h.___ Other (specify)

6. Disposition (Disp.)
D – Donated   M – Mail   S – Storage
K – Keep in Possession
C – Contraband (Attach BP-Record-102)

7. Type of Property:

| a. Personally Owned Items | | |
|---|---|---|
| # | Article | Disp. |
| ___ | Batteries | ___ |
| ___ | Belt | ___ |
| ___ | Billfold | ___ |
| ___ | Books, reading | ___ |
| | hard___, soft___ | |
| ___ | Books, religious | ___ |
| | hard___, soft___ | |
| ___ | Brassiere | ___ |
| ___ | Cap, Hat | ___ |
| ___ | Coat | ___ |
| ___ | Coins | ___ |
| ___ | Comb | ___ |
| ___ | Combination lock | ___ |
| ___ | Dress | ___ |
| ___ | Driver's license | ___ |
| ___ | Earplugs | ___ |
| ___ | Eyeglass case | ___ |
| ___ | Eyeglasses | ___ |
| ___ | Gloves | ___ |
| ___ | Hair brush/pick | ___ |
| ___ | Handkerchief | ___ |
| ___ | Jacket | ___ |
| ___ | Jogging suit | ___ |
| ___ | Legal Materials | ___ |
| ___ | Letters | ___ |
| ___ | Magazines | ___ |
| ___ | Mirror | ___ |
| ___ | Nail Clippers | ___ |
| ___ | Pant/slacks | ___ |
| ___ | Pen, ballpoint | ___ |
| ___ | Pencils | ___ |
| 2 | Personal papers | S |
| ___ | Photo album | ___ |
| ___ | Photos | ___ |

| # | Article | Disp. |
|---|---|---|
| ___ | Plastic spoon, cup | ___ |
| ___ | Playing cards | ___ |
| ___ | Purse | ___ |
| ___ | Radio (w/earplug) | ___ |
| ___ | Religious medals | ___ |
| ___ | Ring | ___ |
| ___ | Shirt/blouse | ___ |
| ___ | Shoes | ___ |
| ___ | Shoes, shower | ___ |
| ___ | Shoes, slippers | ___ |
| ___ | Shoes, tennis | ___ |
| ___ | Shorts | ___ |
| ___ | Skirt | ___ |
| ___ | Slip | ___ |
| ___ | Social security card | ___ |
| ___ | Socks | ___ |
| ___ | Socks, athletic | ___ |
| ___ | Stamps | ___ |
| ___ | Stockings | ___ |
| ___ | Sunglasses | ___ |
| ___ | Sweater | ___ |
| ___ | Sweat pants | ___ |
| ___ | Sweat shirt | ___ |
| ___ | Trophy | ___ |
| ___ | T-Shirts | ___ |
| ___ | Underwear | ___ |
| ___ | Watch/watch band | ___ |
| ___ | Wig | ___ |

| b. Hygiene, etc. | | |
|---|---|---|
| # | Article | Disp. |
| ___ | Dental floss | ___ |
| ___ | Dentures | ___ |
| ___ | Deodorant | ___ |
| ___ | Hair oil | ___ |
| ___ | Noxzema | ___ |
| ___ | Powder | ___ |
| ___ | Razor | ___ |
| ___ | Razor blades | ___ |
| ___ | Shampoo | ___ |
| ___ | Shaving lotion | ___ |
| ___ | Skin lotion | ___ |
| ___ | Soap | ___ |
| ___ | Soap dish | ___ |
| ___ | Toothbrush | ___ |
| ___ | Toothpaste | ___ |

| d. Food/Tobacco Items | | |
|---|---|---|
| # | Article | Disp. |
| ___ | Canned tobacco | ___ |
| ___ | Chewing tobacco | ___ |
| ___ | Cigarettes | ___ |
| ___ | Cigars, snuff | ___ |
| ___ | Coffeemate | ___ |
| ___ | Cold drink mix, soda | ___ |
| ___ | Fruit | ___ |
| ___ | Honey, Hi-protein | ___ |
| ___ | Instant chocolate | ___ |
| ___ | Instant coffee | ___ |
| ___ | Instant tea | ___ |
| ___ | Pipe cleaner/filters | ___ |
| ___ | Pipes | ___ |

c. ~~Hobbycrafts~~ RECESS

| # | Article | Disp. |
|---|---|---|
| 6 | Personal papers | S |

e. Miscellaneous (List any damaged property and from where it was received; e.g., U.S. Marshal)

8. Items Alleged by Inmate to Have Value Over $100.00

Description of Property | Value Alleged by Inmate

No additional item over $100.00

9. Article(s) Listed as "Mail" (M) Are to be Forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Receiving Officer: _____ 1914 _____   Date: 3-1-06   Time: 3:45

I have today reviewed the property returned to me. Signature of Inmate: _____   Reg. No.: ___   Date: ___   Time: ___

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Releasing Officer: _____   Date: 2-20-06   Time: ___

I have today reviewed the property returned to me. Signature of Inmate _____   Reg. No.: 03094-039   Date: 2-20-06   Time: ___

Original — Inmate's Central File; CC: Inmate, R & D, Special Housing

USP LVN

Previous editions not usable

BP-383(58)
October 1982

Exhibit A-2

**U.S. Department of Justice**
Federal Bureau of Prisons

**Inmate Personal Property Record—**
**Institution:** ADX FLORENCE

| 1. Name: GEORGACARAKOS, Peter N. | 2. Register Number: 03087-039 | 3. Unit: E | 4. Date and Time of Inventory 3-1-06 3:20p |
|---|---|---|---|

5. Purpose of Inventory (check one that applies): Date and Time of Action: 3-1-06 3:20p
a.___ Admission  b.___ Hospital  c.__X__ Writ  d.___ Transfer  e.___ Detention  f.___ Release
g.___ Incoming package  h.___ Other (specify)

6. Disposition (Disp.)
D – Donated      M – Mail      S – Storage
K – Keep in Possession
C – Contraband (Attach BP-Record-102)

7. Type of Property:

**a. Personally Owned Items**

| # | Article | Disp. |
|---|---|---|
| | Batteries | |
| | Belt | |
| | Billfold | |
| | Books, reading | |
| | hard___, soft___ | |
| | Books, religious | |
| | hard___, soft___ | |
| | Brassiere | |
| | Cap, Hat | |
| | Coat | |
| | Coins | |
| | Comb | |
| | Combination lock | |
| | Dress | |
| | Driver's license | |
| | Earplugs | |
| | Eyeglass case | |
| | Eyeglasses | |
| | Gloves | |
| | Hair brush/pick | |
| | Handkerchief | |
| | Jacket | |
| 18 | Jogging suit | |
| | Legal Materials | 3 |
| | Letters | |
| | Magazines | |
| | Mirror | |
| | Nail Clippers | |
| | Pant/slacks | |
| | Pen, ballpoint | |
| | Pencils | |
| | Personal papers | |
| | Photo album | |
| | Photos | |

| # | Article | Disp. |
|---|---|---|
| | Plastic spoon, cup | |
| | Playing cards | |
| | Purse | |
| | Radio (w/earplug) | |
| | Religious medals | |
| | Ring | |
| | Shirt/blouse | |
| | Shoes | |
| | Shoes, shower | |
| | Shoes, slippers | |
| | Shoes, tennis | |
| | Shorts | |
| | Skirt | |
| | Slip | |
| | Social security card | |
| | Socks | |
| | Socks, athletic | |
| | Stamps | |
| | Stockings | |
| | Sunglasses | |
| | Sweater | |
| | Sweat pants | |
| | Sweat shirt | |
| | Trophy | |
| | T-Shirts | |
| | Underwear | |
| | Watch/watch band | |
| | Wig | |

**b. Hygiene, etc.**

| # | Article | Disp. |
|---|---|---|
| | Dental floss | |
| | Dentures | |
| | Deodorant | |
| | Hair oil | |
| | Noxzema | |
| | Powder | |
| | Razor | |
| | Razor blades | |
| | Shampoo | |
| | Shaving lotion | |
| | Skin lotion | |
| | Soap | |
| | Soap dish | |
| | Toothbrush | |
| | Toothpaste | |

**c. Hobbycrafts**

| # | Article | Disp. |
|---|---|---|
| | | |

**d. Food/Tobacco Items**

| # | Article | Disp. |
|---|---|---|
| | Canned tobacco | |
| | Chewing tobacco | |
| | Cigarettes | |
| | Cigars, snuff | |
| | Coffeemate | |
| | Cold drink mix, soda | |
| | Fruit | |
| | Honey, Hi-protein | |
| | Instant chocolate | |
| | Instant coffee | |
| | Instant tea | |
| | Pipe cleaner/filters | |
| | Pipes | |

**e. Miscellaneous** (List any damaged property and from where it was received; e.g., U.S. Marshal)

8. Items Alleged by Inmate to Have Value Over $100.00
Description of Property

No individual item over $100.00

Value Alleged by Inmate

9. Article(s) Listed as "Mail" (M) Are to Be Forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Receiving Officer: _____   Date: 3-1-06   Time: 4:00p

I have today reviewed the property returned to me. Signature of Inmate: _____  Reg. No.: _____  Date: _____  Time: _____

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Releasing Officer: D. Ray _____   Date: 8-20-04   Time: 12:6p

I have today reviewed the property returned to me. Signature of Inmate _____  Reg. 03029-08  Date: 7-10-04  Time: 126

Original — Inmate's Central File; CC: Inmate, R & D, Special Housing
USP LVN

Previous editions not usable

BP-383(58)
October 1982

Exhibit A-2

**U.S. Department of Justice**

Federal Bureau of Prisons

**Inmate Personal Property Record—**

**Institution:** _ADX Florence_

| 1. Name: GEORGACARAKOS, PETER N | 2. Register Number: 03029-056 | 3. Unit: E | 4. Date and Time of Inventory 2-2-06 1:00 A |
|---|---|---|---|

5. Purpose of Inventory (check one that applies): Date and Time of Action: 2-2-06 1:00A

a.___ Admission   b.___ Hospital   c.✔ Writ   d.___ Transfer   e.___ Detention   f.___ Release

g.___ Incoming package   h.___ Other (specify)

6. Disposition (Disp.)
D – Donated   M – Mail   S – Storage
K – Keep in Possession
C – Contraband (Attach BP-Record-102)

7. Type of Property:

a. **Personally Owned Items**

| # Article | Disp. |
|---|---|
| ___ Batteries | ___ |
| ___ Belt | ___ |
| ___ Billfold | ___ |
| X Books, reading | S |
| ___ hard___ , soft___ | |
| ___ Books, religious | ___ |
| ___ hard___ , soft___ | |
| ___ Brassiere | ___ |
| ___ Cap, Hat | ___ |
| ___ Coat | ___ |
| ___ Coins | ___ |
| 1 Comb | S |
| ___ Combination lock | ___ |
| ___ Dress | ___ |
| ___ Driver's license | ___ |
| ___ Earplugs | ___ |
| 1 Eyeglass case | S |
| 1 Eyeglasses | S |
| 1 Gloves (Winter) | S |
| ___ Hair brush/pick | ___ |
| 1 Handkerchief | S |
| ___ Jacket | ___ |
| ___ Jogging suit | ___ |
| ___ Legal Materials | ___ |
| ___ Letters | ___ |
| ___ Magazines | ___ |
| ___ Mirror | ___ |
| ___ Nail Clippers | ___ |
| 2 Pant/slacks | S |
| 1 Pen, ballpoint | S |
| ___ Pencils | ___ |
| 1 Personal papers | ___ |
| 1 Photo album | S |
| 25 Photos | S |

| # Article | Disp. |
|---|---|
| ___ Plastic spoon, cup | S |
| ___ Playing cards | ___ |
| ___ Purse | ___ |
| ___ Radio (w/earplug) | ___ |
| ___ Religious medals | ___ |
| ___ Ring | ___ |
| ___ Shirt/blouse | ___ |
| ___ Shoes | ___ |
| 1 Shoes, shower | S |
| ___ Shoes, slippers | ___ |
| 1 Shoes, tennis N/6 | S |
| ___ Shorts | S |
| ___ Skirt | ___ |
| ___ Slip | ___ |
| ___ Social security card | ___ |
| 2 Socks | S |
| ___ Socks, athletic | ___ |
| ___ Stamps | ___ |
| ___ Stockings | ___ |
| ___ Sunglasses | ___ |
| ___ Sweater | ___ |
| 1 Sweat pants | S |
| 1 Sweat shirt | S |
| ___ Trophy | ___ |
| 1 T-Shirts | S |
| ___ Underwear | ___ |
| ___ Watch/watch band | ___ |
| 1 ADD book | S |
| 1 D/VA System wood | S |
| 1 Kess Head Phones (Tape) | S |

b. Hygiene, etc.

| # Article | Disp. |
|---|---|
| 1 Dental floss | S |
| ___ Dentures | ___ |
| ___ Deodorant | ___ |
| ___ Hair oil | ___ |
| ___ Noxzema | ___ |
| ___ Powder | ___ |
| ___ Razor | ___ |
| ___ Razor blades | ___ |
| ___ Shampoo | ___ |
| ___ Shaving lotion | ___ |
| ___ Skin lotion | ___ |
| ___ Soap | S |
| ___ Soap dish | S |
| ___ Toothbrush | S |
| ___ Toothpaste | S |
| 1 Chap stick | S |
| 1 Mouth wash | S |
| 1 Cotton Swabs | S |

c. Hobbycrafts

| # Article | Disp. |
|---|---|
| 6 Color Pencils | S |
| 1 Altered Sweat Pants | S |

d. Food/Tobacco Items

| # Article | Disp. |
|---|---|
| ___ Canned tobacco | ___ |
| ___ Chewing tobacco | ___ |
| ___ Cigarettes | ___ |
| ___ Cigars, snuff | ___ |
| ___ Coffeemate | ___ |
| ___ Cold drink mix, soda | ___ |
| ___ Fruit | ___ |
| ___ Honey, Hi-protein | ___ |
| ___ Instant chocolate | ___ |
| ___ Instant coffee | ___ |
| ___ Instant tea | ___ |
| ___ Pipe cleaner/filters | ___ |
| ___ Pipes | ___ |
| 1 Candy | S |

e. Miscellaneous (List any damaged property and from where it was received; e.g., U.S. Marshal)

8. Items Alleged by Inmate to Have Value Over $100.00

Description of Property — Value Alleged by Inmate

___ No individual item over $100.00

9. Article(s) Listed as "Mail" (M) Are to be Forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Receiving Officer: _____   Date: 3-2-06   Time: 1:15 pm

I have today reviewed the property returned to me. Signature of Inmate: _____   Reg. No.: _____   Date: _____   Time: _____

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies receipt of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Releasing Officer: _____   Date: 3.20.06   Time: 12 P

I have today reviewed the property returned to me. Signature of Inmate: _____   Reg. No.: 03029-056   Date: 3.20.06   Time: 12 P

Original — Inmate's Central File; CC: Inmate, R & D, Special Housing
USP LVN
Previous editions not usable
BP-383(58)
October 1982
Exhibit A-2

U.S. Department of Justice

Federal Bureau of Prisons

**Inmate Personal Property Record—**

**Institution:** ADX FLORENCE

| 1. Name: GEORGACARAKOS PETRON | 2. Register Number: 05024-036 | 3. Unit: 12 | 4. Date and Time of Inventory 2-7-06 12:50 |
|---|---|---|---|

5. Purpose of Inventory (check one that applies): Date and Time of Action: 2-7-06 12:50

a. __ Admission   b. __ Hospital   c. X Writ   d. __ Transfer   e. __ Detention   f. __ Release

g. __ Incoming package   h. __ Other (specify)

6. Disposition (Disp.)
D – Donated   M – Mail   S – Storage
K – Keep in Possession
C – Contraband (Attach BP-Record-102)

7. Type of Property:

**a. Personally Owned Items**

| # | Article | Disp. |
|---|---|---|
| | Batteries | __ |
| | Belt | __ |
| | Billfold | __ |
| | Books, reading hard __ , soft __ | __ |
| | Books, religious hard __ , soft __ | __ |
| | Brassiere | __ |
| | Cap, Hat | __ |
| | Coat | __ |
| | Coins | __ |
| | Comb | __ |
| | Combination lock | __ |
| | Dress | __ |
| | Driver's license | __ |
| | Earplugs | __ |
| | Eyeglass case | __ |
| | Eyeglasses | __ |
| | Gloves | __ |
| | Hair brush/pick | __ |
| | Handkerchief | __ |
| | Jacket | __ |
| | Jogging suit | __ |
| | Legal Materials | __ |
| | Letters | __ |
| | Magazines | __ |
| | Mirror | __ |
| | Nail Clippers | __ |
| | Pant/slacks | __ |
| | Pen, ballpoint | __ |
| | Pencils | __ |
| | Personal papers | __ |
| 4 | Photo/album 0010 | 3 # |
| | Photos | __ |

| # | Article | Disp. |
|---|---|---|
| | Plastic spoon, cup | __ |
| | Playing cards | __ |
| | Purse | __ |
| | Radio (w/earplug) | __ |
| | Religious medals | __ |
| | Ring | __ |
| | Shirt/blouse | __ |
| | Shoes | __ |
| | Shoes, shower | __ |
| | Shoes, slippers | __ |
| | Shoes, tennis | __ |
| | Shorts | __ |
| | Skirt | __ |
| | Slip | __ |
| | Social security card | __ |
| | Socks | __ |
| | Socks, athletic | __ |
| | Stamps | __ |
| | Stockings | __ |
| | Sunglasses | __ |
| | Sweater | __ |
| | Sweat pants | __ |
| | Sweat shirt | __ |
| | Trophy | __ |
| | T-Shirts | __ |
| | Underwear | __ |
| | Watch/watch band | __ |
| | Wig | __ |

**b. Hygiene, etc.**

| # | Article | Disp. |
|---|---|---|
| | Dental floss | __ |
| | Dentures | __ |
| | Deodorant | __ |
| | Hair oil | __ |
| | Noxzema | __ |
| | Powder | __ |
| | Razor | __ |
| | Razor blades | __ |
| | Shampoo | __ |
| | Shaving lotion | __ |
| | Skin lotion | __ |
| | Soap | __ |
| | Soap dish | __ |
| | Toothbrush | __ |
| | Toothpaste | __ |

**d. Food/Tobacco Items**

| # | Article | Disp. |
|---|---|---|
| | Canned tobacco | __ |
| | Chewing tobacco | __ |
| | Cigarettes | __ |
| | Cigars, snuff | __ |
| | Coffeemate | __ |
| | Cold drink mix, soda | __ |
| | Fruit | __ |
| | Honey, Hi-protein | __ |
| | Instant chocolate | __ |
| | Instant coffee | __ |
| | Instant tea | __ |
| | Pipe cleaner/filters | __ |
| | Pipes | __ |

**c. Hobby items EXCESS**

| # | Article | Disp. |
|---|---|---|
| 12 | PERSONAL PAGES | S |
| 1 | ALTERED BOOK | * |
| 17 | PAMPLATS | * |
| 14 | BOOKS | * |
| 122 | PHOTOS | M |

**e. Miscellaneous** (List any damaged property and from where it was received; e.g., U.S. Marshal)

* ITEMS
FOR TRASH
RMW   DM

8. Items Alleged by Inmate to Have Value Over $100.00

Description of Property

PICTURES: GERI BERNER
39243 U.S. HWY 19 N.
TARPON SPRINGS FL 34689

Value Alleged by Inmate

BOOKS RODY KOSONEN
P.O. BOX 8394
DANBURY, CT 0813

X No Individual item over $100.00

9. Article(s) Listed as "Mail" (M) Are to be Forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Receiving Officer: _____   Date: 2-7-06   Time: 12:50

I have today reviewed the property returned to me. Signature of Inmate: _____ Reg. No.: _____ Date: _____ Time: _____

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

Comments

Printed Name/Signature of Releasing Officer: D. Rey   Date: 2-20-06   Time: 126

I have today reviewed the property returned to me. Signature of Inmate: _____ Reg. No.: 0302036 Date: 2-20-06 Time: 126

Original — Inmate's Central File; CC: Inmate, R & D, Special Housing

USP LVN

Previous editions not usable

BP-383(58)
October 1982

Exhibit A-2

# ATTACHMENT 5

*Central file copy*

## RESPONSE TO INMATE REQUEST TO STAFF MEMBER

**Name: GEORGACARAKOS, Peter N.**

**Register Number/Unit: 03029-036 / Z**

This is in response to Your Inmate Request to Staff Member (Cop-out) dated August 14, 2006. You request that your excess property be returned to you.

A review of this matter revealed on March 2, 2006, you transferred on WRIT. When staff inventoried you property, you were found to have contraband (excess property). You returned from WRIT on March 16, 2006, and on March 20, 2006, staff notified you that you had until July 18, 2006, to provide an address and stamps if you wanted to mail your excess property home. As of July 18, 2006, you failed to provide an address or stamps for your excess property; therefore, it was destroyed.

I trust this response addresses your concerns.

R. Wiley, Warden

AUG 2 2 2006
_____
Date

Exhibit A-2

# ATTACHMENT 6

BP-S515.058   **ABANDONED INMATE PROPERTY**   CDFRM
MAY 94
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:<br>R. Wiley, Warden | FROM:<br>R. Martinez, ISO | INSTITUTION:<br>ADX, Florence |
|---|---|---|
| INMATE'S NAME<br>Georgacarakos, Peter | REGISTER NUMBER:<br>03029-039 | DATE:<br>July 18, 2006 |

The property on the attached inmate Personal Property Record form BP-383 is considered abandoned as of
_July 18, 2006_ , as a result of:
   (Date)

_____ UNAUTHORIZED PROPERTY (30 Days)       ___X___ CONTRABAND (120 Days)

_____ ESCAPE (30 Days after investigation completed)   _____ DEATH (30 Days)

_____ RELEASE (30 Days)

DISPOSITION (CHECK ONE)

_____ There is no forwarding address on file or provided by the inmate.

_____ Property has been returned as undeliverable. No alternate address available.

_____ Property returned as refused/unclaimed. Certified letter mailed _____ , to notify addressee of property mailing procedures, no response. No alternate address available.

_____ Property voluntarily abandoned.   (Escape or Release)

   X    Other  Staff inventoried the inmates property when he departed the institution

_____ for a Federal Writ.  The inmate failed to provide an address or postage to

_____ mail out excess property.

_____

_____

_____

It is requested the property be disposed of by destroying all items listed on the attached Inmate Personal Property record BP-383, or Confiscation and Distribution of Contraband Form BP-402, in accordance with the Receiving and Discharge Manual.

      (Printed or Typed Name)       Signature of ISM Staff)
          R. Wiley, Warden
APPROVED/DISAPPROVED: _____
                    (Warden Signature)        (Date)

Property Destroyed:  _7-24-06_
         (Date)     Witness   (Staff Signature/Printed)

                     Witness   (Staff Signature/Printed)

Record Copy - Central File; Copy - R & D File

(This form may be replicated via WP)        Replaces BP-515(58) of NOV 92