IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01712-RBJ-MEH

PETER GEORGACARAKOS,

    Plaintiff,

v.

WILEY, *et al.*,

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is a Third Motion for Summary Judgment filed by Defendants Bureau of Prisons, Madison, Heim, Sudlow, Fenlon, Collins and Wiley[1] [filed May 16, 2011; docket #864]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #876]. The motion is fully briefed, and the Court finds that oral argument will not materially assist the Court in its adjudication. For the reasons that follow, the Court RECOMMENDS that the motion be **granted.**[2]

---

[1] Defendants have conceded that they incorrectly identify Madison, Heim, Sudlow, Fenlon and Collins as bringing the present motion. Docket #885. Rather, the motion should be brought by Defendants BOP, Wiley, Pugh, Hood and Herschberger. *Id.* The Court perceives no negative consequence nor prejudice as a result of this error; the motion itself contains no arguments pertaining to any of the individual Defendants. Moreover, the Plaintiff has not raised the issue and, although given the opportunity to brief the issue, he failed to do so. *See* dockets #883 and 884.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States*

**BACKGROUND**

**I.      Findings of Fact**

The Court finds the following facts viewed in the light most favorable to the Plaintiff,[3] who is the non-moving party in this matter. The facts noted here constitute only those necessary for the Court's analysis of the argument(s) raised in the present motion.

1.      Plaintiff, Peter Georgacarakos, was admitted to the Control Unit at the United States Penitentiary, Administrative Maximum (ADX) on February 12, 1998. Declaration of Tomas Gomez, May 16, 2011 ("Gomez Declaration"), ¶ 3, docket #864-2.

2.      An inmate released from the Control Unit may be returned (a) to the institution from which the inmate was originally transferred; (b) to another federal or non-federal institution; or (c) into the general population of the institution which has a Control Unit. 28 C.F.R. § 541.50(b)(l) - (3).

3.      Georgacarakos was released from the Control Unit and into the general population at the ADX on April 11, 2003. Gomez Declaration, ¶ 3.

4.      The four (4) inmates the Plaintiff alleges were similarly situated to him were housed in the ADX Control Unit at approximately the same time he was. *Id.*, ¶ 6.

5.      The ADX Control Unit release dates for these four inmates were February 12, 2003 (inmate

---

*v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

[3]Typically, in the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56. *See Adams v. Dyer,* 223 F. App'x 757, 764 (10th Cir. 2007) (citing *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)). However, here, the Court notes that, while the operative pleading contains a section for execution of a declaration under penalty of perjury, the Plaintiff did not execute the declaration. *See* docket #100 at 38. Therefore, the Court will not construe the Amended Complaint as a declaration or affidavit pursuant to Fed. R. Civ. P. 56(c)(4).

number 1); March 12, 2003 (inmate Number 2); March 17, 2003 (inmate Number 3); and January 3, 2003 (inmate Number 4). *Id.*, ¶ 6.

6.     All four inmates were transferred to a United States Penitentiary, High Security institution upon release from the ADX Control Unit. Declaration of Dan Sproul, April 7, 2011 ("Sproul Declaration"), ¶ 4(a)(vii), 4(b)(vii), 4(c)(vii), and 4(d)(vii), docket #864-1.

## II.     Procedural History

Plaintiff, Peter Georgacarakos, is an inmate currently in the custody of the Federal Bureau of Prisons ("BOP") and housed at the Administrative Maximum ("ADX") facility in Florence, Colorado. Proceeding *pro se*, Plaintiff initiated this action on August 14, 2007. Docket #1. The operative pleading in this matter is the Amended Complaint filed November 28, 2007. Docket #100. In it, Plaintiff alleges seven claims against twenty-one named Defendants. However, in orders resolving two previous motions for summary judgment, Judge Krieger appears to have distilled the claims down to one remaining claim[4]: a portion of Claim Two in which Plaintiff alleges that the Defendants engaged in religious discrimination by classifying the Plaintiff's religion – Paganism – as "white supremacy" in order to justify keeping the Plaintiff at the ADX for years although they have released to lower security facilities similarly-situated prisoners with more extensive criminal histories who practice other religions (hereafter, "Claim Two").

For his Claim Two, Plaintiff seeks compensatory damages for pain and suffering in the form of "$25 per Defendant per violation per day" against Defendants Wiley, Pugh, Hood, Herschberger and the BOP. Docket #100 at 39. Plaintiff alleges Defendants "falsely classified Plaintiff's religion, Paganism, as 'White Supremacy,' kept him in solitary confinement for years while releasing similarly situated prisoners of other religions – all with worse criminal and prison histories – to

---

[4]Below, the Court addresses the issue of which claims remain pending in this case.

regular penitentiaries, based exclusively on his religion." Amended Complaint, docket #100 at 11.[5] Plaintiff claims that the prisoners released to "regular" prison facilities before him are "similarly situated and far worse prisoners of other religions [who were] treated differently than plaintiff" and that "only religious discrimination can account for the designations despite the fact that [Plaintiff's] security level is medium; i.e., 3 levels below that of the ADX." *Id.* at 12 (emphasis in original).

Defendants move for summary judgment on Plaintiff's remaining claim contending that it is barred by the statute of limitations. In the alternative, Defendants contend the Plaintiff cannot establish he is similarly situated to the four inmates with whom he seeks to compare himself, and that rational basis, as opposed to strict scrutiny, review applies demonstrating Defendants' legitimate governmental interest in assigning Plaintiff to the ADX's general population. Defendants further argue that, because Plaintiff cannot establish an equal protection claim, they are entitled to qualified immunity.

Plaintiff counters first by describing his version of the murder and accompanying criminal proceeding leading to his assignment to the Control Unit of the ADX. Plaintiff also expresses his concern that the Court has "misstated" his equal protection claim.[6] Further, Plaintiff contends that he has raised issues of material fact as to whether he is similarly situated to four "Muslim" inmates who were assigned to the Control Unit at (or about) the same time he was for committing the same crime at the same facility, and were released from the Control Unit at or about the same time as he was. In addition, Plaintiff contends the rational basis review is inapposite here because he has

---

[5]Notably, the remaining portion of Claim Two is not described as a "claim" in the Final Pretrial Order, although Defendants list their defense to the claim in the order. *See* docket #723 at 5-6.

[6]Of course, the District Court did not "misstate" Plaintiff's claim simply by paraphrasing it; however, this Court notes that it has, in this recommendation, set forth the Plaintiff's claim by quoting it directly from the Amended Complaint.

4

demonstrated "class-based discrimination." Moreover, Plaintiff asserts that his Claim One for conspiracy is timely, arguing "[t]he classification of Plaintiff's religion as 'white supremacy' and his maintenance in solitary confinement were not discrete acts, and thus did not cause the conspiracy claim to accrue, because they were reviewed and renewed every six months from 1998 to 2010, with Defendants not only refusing to correct these discriminatory acts but in fact repeatedly endorsing, reaffirming and enforcing them in every way possible." Plaintiff mentions nothing specifically about the timeliness of Claim Two.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts

5

showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

B.  Treatment of a Pro Se Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not "the proper function of the district court to assume the

role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### III.   ANALYSIS

In the present motion, Defendants argue first that Plaintiff's remaining claim for relief is barred by the statute of limitations. In the alternative, Defendants claim they are entitled to summary judgment, and the individual Defendants claim entitlement to qualified immunity, because the Plaintiff cannot demonstrate on supported facts that he was similarly situated to the four Muslim inmates with whom he seeks to compare himself. Because the Defendants' motion, as filed, raises some confusion concerning which Defendants and, thus, which claims, remain in this case, the Court will first analyze this issue. Once the Court determines which claim(s) remain in the case, the Court will proceed to determine whether such claim(s) are barred by the statute of limitations. If the Court finds that any claims are timely, the Court will proceed finally to determine whether Plaintiff has demonstrated any genuine issues of material fact that would allow such claims to proceed to trial.

#### A.   Which Claims Remain in this Case?

As mentioned above, upon initial review of the briefing on the present motion, this Court was confused as to which Defendants remain in the case and, as such, which claims remain pending. That is, it appeared to the Court that Defendants brought the motion on behalf of certain Defendants who were named in Claim One of the Amended Complaint alleging conspiracy, but the motion itself addresses only a portion of Claim Two, which alleges an equal protection violation and names different Defendants. Accordingly, the Court sought supplemental briefing from the parties seeking their positions on two issues: (1) whether the conspiracy claim remains pending in the case; and (2) which Defendants remain in the case following Judge Krieger's substantive orders. Docket #883. Plaintiff responds arguing that the conspiracy claim remains pending, but he mentions nothing about

the identity of the remaining Defendants. Docket #884. Defendants respond conceding that they brought the motion on behalf of the wrong Defendants, apologizing for the confusion, and arguing that only the equal protection claim raised in Claim Two remains pending in this case against Defendants BOP, Wiley, Herschberger, Hood and Pugh. Docket #885. Upon review of Judge Krieger's September 12, 2008, March 30, 2010 and March 16, 2011 orders, the Court must agree with Defendants.

In ruling on a motion to dismiss on September 12, 2008, Judge Krieger described the Plaintiff's first and second claims as follows: "Claim 1 ... alleges a conspiracy among the Defendants to maintain him at a security classification more restrictive than that which he is eligible for," and "Claim 2 alleges that the Defendants have discriminated against the Plaintiff on the basis of his religion, in that it has released similarly-situated inmates of other religious persuasions to lower-security facilities." Docket #284 at 23. Based upon these descriptions, Judge Krieger proceeded to adjudicate the motion to dismiss.

Subsequently, in a March 30, 2010 order on Defendants' first motion for summary judgment, Judge Krieger determined that, to bring order to somewhat confusing claims, she would identify Plaintiff's claims by grouping them into general categories. Docket #810 at 11. Accordingly, under the first set of claims characterized as "security classification claims," Judge Krieger specifically identified Plaintiff's claim that "Defendants have engaged in a conspiracy 'to maintain [him] at an institution far above his security score'" (*id.* at 11-12), then analyzed and dismissed the category of claims finding that the "Plaintiff's security classification throughout the time period at issue was consistent with the directives of the applicable BOP Program Statements and, thus ... the Plaintiff's assignment to a high security facility cannot be said to have violated any of his constitutional rights." *Id.* at 16. In addition, Judge Krieger characterized and analyzed Plaintiff's "claims relating

8

to religious discrimination." *Id.* at 17. In describing such claims, she specifically addressed and analyzed the Equal Protection portion of Claim Two (*id.* at 17-21).[7] Judge Krieger provisionally granted summary judgment to the Defendants on the Equal Protection claim (*id.* at 52), but stated that the ruling would be vacated if the undersigned were to permit additional discovery on the issue (*id.*).

Later, the undersigned did, in fact, permit limited discovery on the Equal Protection claim. Thereafter, the parties raised objections to this Court's discovery order and Defendants filed a second

motion for summary judgment. In the March 16, 2011 order resolving the objections and second summary judgment motion, Judge Krieger first noted that only three claims remain in the case, one of which is the Equal Protection claim. Docket #862 at 2. In describing that claim, Judge Krieger states, "the Court understands the Plaintiff to assert the claim as part of the Amended Complaint's (#100) second claim for relief." *Id.* at 6-7. After addressing arguments concerning the other two claims, Judge Krieger granted summary judgment as to those claims stating, "Defendants are entitled to judgment on the Plaintiff's claims relating to destruction of his personal property and his exclusion from the step-down program; *the sole remaining claim concerns whether the Plaintiff was denied Equal Protection based on his religion when other allegedly similarly-situated inmates of different religions were transferred from ADX earlier than he was.*" *Id.* at 29 (emphasis added).

Thus, Judge Krieger's dismissal of the "security classification" claims including, as she

---

[7]In identifying this claim, Judge Krieger noted that the Plaintiff "also purports to assert his claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*" *Id.* at 17 n. 9. Judge Krieger neither analyzed nor ruled on such "purported" claim. *Id.* Thus, while the Plaintiff may have suggested such claim in his briefing on the motion, this Court notes that there is no indication nor suggestion in the operative pleading – that is, the Amended Complaint – that Plaintiff brings a claim in this action under RLUIPA. *See* Amended Complaint, docket #100. In fact, this Court has found no mention of such claim, by the parties or the Court, since Judge Krieger's March 30, 2010 order.

9

specifically described, Claim One for conspiracy, as well as her statements in both the March 30, 2010 and March 16, 2011 orders make clear that all claims other than the Equal Protection claim have been adjudicated and dismissed. Based upon Judge Krieger's orders and the Defendants' supplemental brief clearing up the confusion concerning the properly named Defendants, this Court concludes that the only remaining claim to be adjudicated in this case is that portion of Claim Two alleging an Equal Protection violation, as described herein.

B.  Is the Remaining Claim Barred by the Statute of Limitations?

On September 12, 2008, Judge Krieger had initially found Plaintiff's Claim Two to be untimely, but she denied the Defendants' motion to dismiss without prejudice and allowed a "timeliness defense [to] be raised with more specificity at the summary judgment stage." Docket #284 at 24, 26. At that time, Judge Krieger found "a claim that a plaintiff was subjected to discrimination as the result of a less-worthy comparator receiving a discrete act of preferential treatment accrues at the time the plaintiff learns of the preferential treatment, and is not subject to an extended limitations period under a continuing violation theory." *Id.* at 24.

Judge Krieger revisited the Defendants' statute of limitations argument concerning Claim Two again in her order dated March 16, 2011. At that time, the Defendants challenged this Court's discovery order permitting limited discovery on Plaintiff's equal protection claim. In upholding the discovery order, Judge Krieger explained:

> A *Bivens* claim accrues, and the statute of limitations begins running, on the date that a plaintiff knows or should know of the existence of a cause of the injury that is the basis of his action. For purposes of the Plaintiff's Equal Protection claim here, the Plaintiff could not have known of any unequal treatment until, at the earliest, the Muslims began being transferred out of ADX while the Plaintiff remained there.

> Thus, it is the date of the Muslims' transfer <u>from ADX</u>, not from out of the Control Unit, that is the key to any statute of limitations argument.

Docket #862 at 9-10 (citation omitted) (emphasis in original). At that time, the Defendants had provided the Court with a Declaration of Deborah A. Locke, in which she attests, "The ADX Control Unit release dates for [the Muslim] inmates are February 12, 2003; March 12, 2003; March 17, 2003; and January 3, 2003," but she mentions nothing about when the inmates were released from the ADX itself. *See id.*, ¶ 6, docket #838-1.

Here, the Defendants make clear that the four Muslim inmates were released from the ADX at the same time they were released from the Control Unit. Tomas Gomez, the ADX Control Unit Manager from September 2002 - November 2007 (during such time as the Plaintiff and four Muslim inmates were released), attests that he supervised the operation of the Unit Team for the Control Unit and sat in on the reviews by the Executive Panel of all inmates housed in the Control Unit. Gomez Declaration, ¶ 2, docket #864-2. Gomez cites 28 C.F.R. § 541.50(b)(1) - (3) stating that an inmate released from the Control Unit may be returned (a) to the institution from which the inmate was originally transferred; (b) to another federal or non-federal institution; or (c) into the general population of the institution which has a Control Unit. *Id.*, ¶ 8.

Dan Sproul, the current Control Unit Manager at the ADX, attests as to the Defendants' responses to the discovery ordered by this Court and upheld by Judge Krieger concerning Claim Two. Declaration of Dan Sproul, April 7, 2011 ("Sproul Declaration"), ¶ 4, docket #864-1. In response to Interrogatory No. 7, "whether the inmate was transferred to a lower classification status, as part of the transfer from the Control Unit," the responses for all four Muslim inmates is, "[t]he inmate was transferred to a United States Penitentiary High Security institution." *Id.*, ¶¶ 4(a)(vii), 4(b)(vii), 4(c)(vii), 4(d)(vii). According to Gomez, "[t]hese inmates demonstrated they could

function in another Bureau institution without threatening the safety of others or the orderly running of the institution." Gomez Declaration, ¶ 11, docket #864-2.

Having determined from the unrebutted evidence presented that the four Muslim inmates were released from the ADX at the same time they were released from the Control Unit in 2003, the Court proceeds to determine whether Plaintiff raises a genuine issue of material fact concerning the statute of limitations defense.

As set forth above, the Plaintiff seeks monetary damages against the Defendants for his Equal Protection claim. As such, the claim may be brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "A *Bivens* action is subject to the limitation period for an action under Title 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras,* 484 F.3d 1236, 1238 (10th Cir. 2007) (citations omitted). In Colorado, the limitation on personal injury claims is two years. *See* Colo. Rev. Stat. §§ 13-80-102(1)(a), (g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason,* 997 F.2d 749, 750 (10th Cir. 1993) (applying § 13-80-102 to § 1983 claim).

"Although state law establishes the statute of limitations, federal law determines when plaintiffs' federal *Bivens* claims accrued." *Van Tu v. Koster,* 364 F.3d 1196, 1199 (10th Cir. 2004) (citation omitted). "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* (internal quotation marks and citation omitted); *see also Kripp v. Luton,* 466 F.3d 1171, 1175 (10th Cir. 2006) ("[F]or *Bivens* actions (the federal analogue to § 1983 claims), we

12

have held that a claimant's cause of action accrues when the claimant knew or had reason to know 'of the existence and cause of injury which is the basis for his action.'") (citation omitted). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993).

Here, the Plaintiff initiated this action on or about August 7, 2007; therefore, any *Bivens* claims accruing on or before August 7, 2005 are time-barred. Judge Krieger has found that Plaintiff's Equal Protection claim accrued when the four Muslim inmates were transferred out of the ADX. Defendants provide evidence that the dates of transfer are January 3, 2003, February 12, 2003, March 12, 2003 and March 17, 2003. Clearly, these dates are well outside the two-year statute of limitations. The Plaintiff does not identify a date or time period at which he became aware of the Muslim inmates' transfers.[8] However, even assuming the Plaintiff, who remained in the Control Unit under heightened security at the time the Muslim inmates were transferred, did not know at the time these inmates were transferred, Plaintiff himself was released from the Control Unit and placed within the ADX general population on April 11, 2003. Surely, Plaintiff would have known or discovered that the Muslim inmates were no longer at the ADX shortly after his own release from the Control Unit. Again, however, April 11, 2003 is more than two years outside the statute of limitations. Therefore, unless Plaintiff raises a genuine issue of fact concerning the equitable tolling or continuing violation doctrines, the Court must conclude that his claim is time-barred.

With respect to equitable tolling, Colorado's rules apply. *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) (citing *Hardin v. Straub,* 490 U.S. 536, 539 (1989)); *see also Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (applying state tolling rules in § 1983 cases); *Delgado-Brunet v.*

---

[8]Nor, for that matter, does the Plaintiff mention when he became aware of the inmates' religions, although based upon the investigative materials provided by the Plaintiff, it is likely he knew their identities and religions before or during the time he was housed in the Control Unit, or shortly thereafter.

*Clark*, 93 F.3d 339, 342 (7th Cir. 1996) (same, in *Bivens* case).  Colorado law allows equitable tolling where a defendant "engage[d] in fraudulent concealment of facts pertinent to the existence of a claim."  *Garrett*, 362 F.3d at 697 (quoting *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 853 n. 7 (Colo. 1992)); *see also Coit v. Zavares*, 280 F. App'x 791, 794 (10th Cir. June 10, 2008) ("an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevent the plaintiff from filing his or her claim despite diligent efforts") (quoting *Dean Witter Reynolds, Inc. v. Harman*, 911 P.2d 1094, 1099 (Colo. 1996)).  "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled."  *Id.* (quoting *Garrett*, 826 P.2d at 853).

Here, the Plaintiff makes no argument that Defendants engaged in any fraudulent concealment of facts concerning the existence of his Equal Protection claim or wrongfully impeded his ability to bring the claim.  Further, the Plaintiff articulates and the Court perceives no "truly extraordinary circumstances" that would have prevented the Plaintiff from filing his claim within the statutory period.  Thus, the Court recommends that the District Court find the Plaintiff has failed to demonstrate the equitable tolling doctrine applies to his Claim Two.

The Tenth Circuit has not applied the continuing violations doctrine to Section 1983 or *Bivens* claims.  *See Wood v. Milyard,* 414 F. App'x 103, 106 (10th Cir. Jan. 13, 2011); *Frazier v. Jordan,* No. 06-1333, 2007 WL 60883, at *4 (10th Cir. Jan. 10, 2007), *cert. denied,* 550 U.S. 975 (2007); *McCormick v. Farrar,* 147 F. App'x 716, 719-20 (10th Cir. Aug. 30, 2005); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1169 (D. Colo. 2010).  *See also Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1513-14 (10th Cir. 1997) (doctrine does not apply to § 1981 claims).  The continuing violation doctrine, which is employed in Title VII litigation, "would permit a plaintiff to challenge incidents

14

that occurred outside of the statute of limitations if the incidents 'are sufficiently related and thereby constitute a continuing pattern' of wrongful conduct." *Fogle v. Pierson*, No. 05-cv-01211-MSK-CBS, 2008 WL 821803, at *5 (D. Colo. Mar. 26, 2008) (quoting *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994)). However, if a single, discrete act has continuing consequences, then the continuing violation doctrine does not apply. *See Fogle v. Slack*, 419 F. App'x 860, 864-65 (10th Cir. Apr. 8, 2011).

In this case, even if the continuing violations doctrine were properly applied, the Plaintiff has failed to demonstrate on supported facts that the decisions to transfer the Muslim inmates to facilities other than the ADX constitute a continuing pattern of wrongful conduct that would bring his claim within the statute of limitations. Plaintiff relies solely on his understanding that the conspiracy claim remains pending in the case, and he argues that Judge Krieger has already found such claim to be timely. As set forth above, however, Judge Krieger subsequently dismissed that claim. Construing his response liberally, Plaintiff also argues (although in the context of a conspiracy claim) that the Defendants' review and classification of the Plaintiff as a "white supremacist" every six months from 1998 to October 2010 constituted overt acts of discrimination. However, the Court understands such argument to support Plaintiff's security classification claim described in Claim One of the Amended Complaint, which was dismissed by Judge Krieger. Even if intended to support Plaintiff's Claim Two, the Court finds that any decision by Defendants to keep the Plaintiff at the ADX after the initial decision in April 2003 would be simply "continuing consequences" of the alleged discrete act of discrimination. Plaintiff's Equal Protection Claim – that the Defendants transferred four Muslim inmates to "regular" prison facilities upon their release from the Control Unit, but kept the Plaintiff at the ADX upon his release from the Control Unit – constitute discrete acts with readily ascertainable dates of occurrence and, thus, are not suitable for

application of the continuing violations doctrine.

Because the Plaintiff's Equal Protection claim is barred by the statute of limitations, the Court need not proceed to determine whether genuine issues of material fact exist as to merits of the claim. Consequently, this Court recommends that the District Court grant Defendants' motion for summary judgment on the remaining Claim Two.

## IV.   CONCLUSION

Plaintiff's remaining Equal Protection claim is brought pursuant to *Bivens* and, thus, is subject to a two-year statute of limitations. Defendant has provided the Court the factual basis for its motion and identified the documents and affidavits which reveal that there are no genuine issues concerning their statute of limitations defense. The Plaintiff has failed to respond with specific supported facts showing a genuine factual issue for trial.

Accordingly, the Court respectfully RECOMMENDS that Defendants' Third Motion for Summary Judgment [filed May 16, 2011; docket #864] be **GRANTED**, and the remaining Claim Two be dismissed.

Dated at Denver, Colorado, this 1st day of February, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge